1

**FORD & DIULIO PC**
Brendan M. Ford (SBN 224333)
2
BFord@FordDiulio.com
650 Town Center Drive, Suite 760
3
Costa Mesa, California 92626
Telephone: (714) 450-6830
4
Facsimile: (844) 437-7201

5
Attorneys for Plaintiff
FOCUS 15, LLC
6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  FOCUS 15, LLC, | Case No. |
| 12              Plaintiff, | **COMPLAINT FOR:** |
| 13          v. | **(1)   18 U.S.C § 1962(c) and § 1964 (CIVIL RICO);** |
| 14  NICO CORPORATION, a California Corporation; IAN MATTHEW | **(2)   18 U.S.C § 1962(d) and § 1964 (CIVIL RICO CONSPIRACY);** |
| 15  HANNULA, an individual; JOSEPH PHILIP HALLER, an individual; and | |
| 16  DOES 1 through 50, inclusive, | **(3)   BREACH OF CONTRACT** |
| 17              Defendants. | **(4)   MONEY HAD AND RECEIVED** |
| 18 | **(5)   UNJUST ENRICHMENT** |
| 19 | **(6)   VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200** |
| 20 | |
| 21 | |
| 22 | |
| 23 | **DEMAND FOR TRIAL BY JURY** |

24

25

26

27

28

## I.    SUMMARY OF COMPLAINT

1. Focus 15 entered into four separate written promissory notes to loan a total of $225,000.00 to Defendant NICO Corp. between February 2016 and February 2017. Defendants Hannula and Haller signed each contract as guarantors before a notary public.

2. Focus 15 has performed all of its obligations under the promissory notes by actually providing the loan amounts to Defendants.

3. In April 2017, Defendants stopped making monthly payments on each of the four promissory notes in breach of the express terms of the notes proximately causing damage to Focus 15.

4. By improperly retaining the money given by Focus 15 to Defendants, Defendants have been unjustly enriched.

## II.    PARTIES

### A.    Plaintiff

5. Plaintiff FOCUS 15, LLC. is now, and at all times mentioned in this complaint was, a New York LLC with its principal place of business in Brooklyn, New York.

### B.    Defendants

6. Defendant NICO CORPORATION is now, and at all times mentioned in this complaint was, a California Corporation with its principal place of business in San Francisco, California.

7. On information and belief, Defendant IAN MATTHEW HANNULA is an individual residing in the State of California, County of San Francisco. Hannula is the Chief Executive Officer and President of Defendant NICO Corp. and is a personal guarantor of each of the contracts breached by Defendants here.

8. On information and belief, Defendant JOSEPH PHILIP HALLER is an individual residing in the State of California, County of San Francisco. Haller is the Chief Financial Officer and Secretary of Defendant NICO Corp. and is a personal guarantor of each of the contracts breached by Defendants here.

9. The true names and capacities of Defendants referred to in this Complaint as Does 1 to 50, inclusive, and each of them, are unknown to Focus 15 at this time. Focus 15 is informed and believes that they are in some way responsible for the injury and damages incurred. Focus 15 will amend this Complaint to allege the true names and capacities of Does 1 to 50 when ascertained.

10. Focus 15 is informed and believes and alleges that at all material times each of the Defendants were the agents, servants, directors, managers or employees of the co-defendants, and in doing or omitting the things alleged in this Complaint were acting in an agency, managerial or employment capacity within the course and scope of their authorities, and their acts and conduct were with the permission and consent of the co-defendants. Focus 15 is informed and believes, and therefore alleges that all of the conduct by the individual Defendants that was outside the scope of their authority was known to, authorized and ratified by the co-defendants.

11. Focus 15 is further informed, believes, and alleges that each Defendant designated as a Doe was responsible, negligently, or in some other actionable manner, for the events and happening referred to in this Complaint, which directly or proximately caused injury and damages to Focus 15.

### III.   JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this action under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (the "RICO Act" or "RICO").

13. This Court has personal jurisdiction over all Defendants and venue is proper because all Defendants are residents of the State of California and within this judicial district. Further, the acts and practices of all Defendants described here occurred in California and within this judicial district, and this Court has jurisdiction over the controversy, which arises out of that conduct.

///

///

## IV.   FACTS

14. On February 23, 2016, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 1") in which Focus 15 agreed to loan Defendant NICO Corp. one-hundred thousand dollars ($100,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month beginning on April 1, 2016, through the maturity date on March 1, 2020. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 1 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit A**.

15. On June 1, 2016, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 2") in which Focus 15 agreed to loan Defendant NICO Corp. fifty thousand dollars ($50,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month beginning on July 1, 2016, through the maturity date on June 1, 2020. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 2 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit B**.

16. On July 31, 2016, Defendant NICO Corp. entered into a written promissory note with Golden Focus, LLC ("Note 3") in which Golden Focus agreed to loan Defendant NICO Corp. fifty thousand dollars ($50,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the fifteenth day of each month beginning on August 15, 2016 through the maturity date on August 15, 2020. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 3 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit C**.

17. On or around July 17, 2017, Golden Focus assigned Note 3 to Focus 15.

18. On February 15, 2017, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 4") in which Focus 15 agreed to loan Defendant

NICO Corp. twenty-five thousand dollars ($25,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month beginning on December 1, 2016. Defendant agreed to pay fifty percent (50%) of the loan by March 15, 2017 and the entire outstanding balance of the loan by April 15, 2017. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 4 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit D**.

19. On or around April 17, 2017, and continuing to the present, Defendants failed to make the agreed upon payments on ***any*** of the notes in breach of the express terms of the written promissory notes.

20. In fact, Defendants never had any intention to pay back these loans.

21. Defendants' acts of entering into the promissory notes and accepting the loan proceeds constituted a fraudulent scheme to accept funds with no intention of paying them back.

## FIRST CAUSE OF ACTION
## Civil RICO 18 U.S.C. § 1962(c) and 1964
### (Against All Defendants)

22. Focus 15 incorporates by reference the allegations in paragraphs 1-21 of this Complaint as though fully set forth here.

23. Defendants formed an enterprise, NICO Corp., and association-in-fact enterprise with the meaning of 18 U.S.C. § 1961(4) (the "Enterprise")

24. The Enterprise is an ongoing organization of Defendants NICO Corp., Hannula, and Haller associated for common and shared purposes, including: (a) conceiving and planning a fraudulent scheme to enter into promissory notes with Focus 15 and accepting the funds with no intention of paying them back, as described in paragraphs 14-21; and (b) taking overt acts to enter into the promissory notes and accept funds with no intention of paying them back.

25.     All Defendants through the Enterprise engaged in and continue to engage

in a pattern of racketeering activity comprised on the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

26. The Enterprise engaged in or affected interstate commerce because Focus 15 is a New York LLC and its managing member resides in California. Further, Defendants made use of interstate wires and mail to transfer the proceeds of the loans.

27. Each fraudulent singing of each promissory notes and fraudulent acceptance of funds constitutes a separate violation and predicate act.

28. Each Defendant in this action has engaged in two or more predicate acts as detailed above.

29. Each Defendant agreed to conduct, and did conduct or participate in, the Enterprise's affairs through a pattern of racketeering activity. Defendants intended their activity to obtain ill-gotten proceeds. Defendants intended their activity to injure Plaintiff Focus 15 in its financial interests.

30. The predicate acts described here are related because they were committed using the same or similar methods and conduct, targeted the same or similar victims, involved the same or similar participants, and were performed for the same or similar purposes. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The predicate acts described here are continuous, occurring from 2015 until the present. That time period represents close-ended continuity. *Id.*

31. By executing the scheme to extort Focus 15, as described above, all Defendants have participated in the scheme to extort Focus 15.

32. Defendants' pattern of racketeering activity damaged Focus 15 in the amount of $225,000 of improperly obtained loan proceeds that Defendants have not paid back and in an amount to be proven at trial for legal costs associated with Defendants' fraudulent scheme to accept funds with no intention of paying them back.

///

///

///

**SECOND CAUSE OF ACTION**

**Civil RICO Conspiracy 18 U.S.C. § 1962(d) and 1964**

**(Against Defendants)**

33. Focus 15 incorporates by reference the allegations in paragraphs 1-32 of this Complaint as though fully set forth here.

34. All Defendants conspired to engage in a pattern of racketeering activity comprised on the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Defendants each agreed to facilitate all or some of the predicate acts described in paragraphs 14-21 here. That agreement is manifest by their knowing participation in or support of the predicate acts identified here.

35. By planning and executing the scheme to extort Focus 15, as described above, all Defendants have participated in the scheme to extort Focus 15.

36. As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff Focus 15 has been injured in its business and property as described above.

37. Defendants' pattern of racketeering activity damaged Focus 15 in the amount of $225,000 of improperly obtained loan proceeds that Defendants have not paid back and in an amount to be proven at trial for legal costs associated with Defendants' fraudulent scheme to accept funds with no intention of paying them back.

**THIRD CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

38. Focus 15 incorporates by reference the allegations in paragraphs 1-37 of this Complaint as though fully set forth here.

39. Between February 2016 and February 2017, Defendant entered into four promissory notes and guaranties with Focus 15 and Golden Focus (Note 3 was assigned by Golden Focus to Focus 15 on or around July 17,2017) totaling $225,000.00.

40. Under the express terms of the promissory notes, Defendants had an obligation to pay Focus 15 monthly payments to repay each of the four notes totaling $225,000 with eight percent (8%) interest.

41. Focus 15 performed all of its obligations under the notes by providing Defendants the sum of each loan, totaling $225,000.00, and compensation for the Guaranties.

42. In or around April 2017, Defendant breached the promissory notes by refusing to make payments under the express terms of the notes.

43. As a proximate cause of Defendants' breach, Focus 15 was damaged in an amount to proven at trial.

44. The express terms of each note allow for the recovery of attorneys' fees, costs and expenses to enforce the Note.

## FOURTH CAUSE OF ACTION

### Money Had and Received

### (Against All Defendants)

45. Focus 15 incorporates by reference the allegations in paragraphs 1-44 of this Complaint as though fully set forth here.

46. Between February 2016 and February 2017, Focus 15, and through an assigned note from Golden Focus, loaned a total amount of $225,000.00 to Defendants. The money loaned belonged to Focus 15 subject to the terms of repayment of the notes.

47. Defendants received and benefited from the receipt of the money. Since approximately April 2017, Defendants have refused to make any further payments on the notes.

48. Under the principles of equity and good conscience, Defendants should not be permitted to keep Focus 15's money loaned to Defendants by Focus 15.

///

///

///

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment**

**(Against All Defendants)**

49. Focus 15 incorporates by reference the allegations in paragraphs 1-48 of this Complaint as though fully set forth here.

50. Between February 2016 and February 2017, Focus 15, and through an assigned note from Golden Focus, loaned a total amount of $225,000.00 to Defendants. The money loaned belonged to Focus 15 subject to the terms of repayment of the notes.

51. Defendants were enriched by the loans at the expense of Focus 15.

52. Defendants have retained the enrichment after failing to make agreed upon payments under the express terms of the notes.

53. Focus 15 seeks to recover the amount loaned to Defendants plus eight percent (8%).

54. It is against the principles of equity and good conscience to permit Defendants to retain what Focus 15 seeks to recover.

**SIXTH CAUSE OF ACTION**

**Violation of Business and Professions Code § 17200**

**(Against All Defendants)**

55. Focus 15 incorporates by reference the allegations in paragraphs 1-54 of this Complaint as though fully set forth here.

56. California Business & Professions Code section 17200 prohibits any unlawful, unfair, and fraudulent business practice.

57. Defendants violated section 17200 but engaging in the unlawful act or practice of entering into promissory notes and obtaining loan proceeds with no intention of ever paying them back.

58. As a result of Defendants' conduct, Focus 15 suffered harm, as described above.

///

## **PRAYER FOR RELIEF**:

WHEREFORE, Focus 15 prays for judgment in its favor and against Defendants, jointly and severally, and requests that this Court award Focus 15 the following:

A.      An award of compensatory damages in an amount to be determined at trial;

B.      An award of threefold damages sustained by Focus 15 under RICO, 18 U.S.C. § 1964(c);

C.      An award of costs and reasonable attorney fees and expenses incurred by Focus 15 in connection with this action under 18 U.S.C. § 1964(c);

D.      Pre-judgment and post-judgment interest on the above damage awards;

E.      An order adjudging all Defendants jointly and severally liable, as the law allows, under each cause of action asserted by Focus 15 and for all damages awarded against any Defendant;

F.      Such other relief as this Court may deem just.


Dated:  February 26, 2021              **FORD & DIULIO PC**

By: _____
Brendan M. Ford

Attorneys for Plaintiff
FOCUS 15, LLC

1

## **JURY TRIAL DEMAND**

2      Plaintiff Focus 15, LLC demands a trial by jury.

3

4   Dated:  February 26, 2021                    FORD & DIULIO PC

5

6                                          By:

7                                              Brendan M. Ford

8                                              Attorneys for Plaintiff
                                               FOCUS 15, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# NOTE

Feb. 23, 2016                              New York, New York

## 1. BORROWER'S PROMISE TO PAY

In return for a loan received, the Borrower promises to pay **ONE HUNDRED THOUSAND DOLLARS ($100,000.00)** plus interest to the order of **FOCUS 15, LLC** (hereinafter referred to as the "Note Holder").  Borrower will make all payments under this Note in the form of cash, check or money order.  Borrower understands that the Note Holder may transfer this Note.

## 2. INTEREST

Interest at the annual rate of **8.0%** and compounded annually will be charged on unpaid principal until the full amount of principal has been paid.  The interest rate required by this Section 2 is the rate payable both before and after any default described in Section 6(b) of this Notce.

## 3. PAYMENTS

The Borrower will make payments on the **1st** day of each month beginning **April 1, 2016**.  Payments from **April 1, 2016** through and including **March 1, 2017** will be of interest only, each in the amount of **SIX HUNDRED SIXTY-SIX DOLLARS AND SIXTY-SIX CENTS ($666.66)**.  Beginning on **April 1, 2017**, payments will be of interest and principal, each in the amount of **THREE THOUSAND ONE HUNDRED THIRTY-THREE DOLLARS AND SIXTY-FOUR CENTS ($3,133.64).**  The Borrower will make these payments every month until the entire balance of principal and interest and any other charges described below that the Borrower may owe under this Note are paid in full.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.  If on **March 1, 2020**, which is called the "Maturity Date", the Borrower still owes amounts under this Note, the Borrower will pay those amounts in full on that date.  The required payment will be sent to the Note Holder in care of **Advanced Accounting Solutions, Inc.** at **23 Middle Street, Suite 302, Newburyport, Massachusetts 01950** unless written notice to the contrary is given by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

Borrower will have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "Prepayment".  When a Prepayment is made, notice to that effect will be given to the Note Holder in writing.  A payment may not be designated as a Prepayment if the Borrower is in arrears on any amount due under the Note.

Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use designated Prepayments to reduce the amount of Principal that due under this Note.  The Note Holder shall first apply any designated Prepayment to reduce the principal amount of the Note and only then to accrued and unpaid interest.  If the Borrower makes a partial Prepayment, there will be no changes in the Maturity Date unless the Note Holder agrees in writing to such change, but there will be a change in the monthly payment amount and the Note Holder will provide notice of the new amount to the Borrower.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any interest or principal by the end of fifteen (15) calendar days after the date it is due, the Borrower will pay a late charge to the Note Holder. The amount of this charge will be 2.00% of the overdue payment.

**(B) Default**
The Borrower will be in default if the full amount of interest or principal is not paid on the date it is due.

**(C) Payment of Note Holder's Costs and Expenses**
The Note Holder will have the right to be paid back by the Borrower for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**6. GIVING OF NOTICES**
Unless otherwise required by law, any notice that must be given to the Borrower under this Note will be given by delivering it or by mailing it by first class mail to the Borrower at **2535 Third Street, San Francisco, California 94107** or at a different address if the Borrower gives the Note Holder notice of a different address.

**7. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**8. WAIVERS**
The Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**9. GOVERNING LAW**
This Note shall be governed and construed in accordance with the laws of New York State.

Dated:  _2 - 23 - 16_
      February   , 2016

NICO CORPORATION, Borrower

By: Ian Dennula, President

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of SAN FRANCISCO )

On 2·23·2016 before me, LYNNE YORK GUEDEZ, NOTARY PUBLIC

*Date* — *Here Insert Name and Title of the Officer*

personally appeared IAN MATTHEW HANNULA

*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

LYNNE YORK GUEDEZ
Commission # 2069089
Notary Public - California
San Francisco County
My Comm. Expires Jun 18, 2018

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

*Signature of Notary Public*

*Place Notary Seal Above*

──────────── **OPTIONAL** ────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: NOTE

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Document Date: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

## GUARANTY

GUARANTEE, given by IAN HANNULA, residing at 2535 Third Street, San Francisco, California 94107, JOE HALLER, residing at 2535 Third Street, San Francisco, California 94107, and MAURIZIO DONADI, residing at 9346 Readcrest Drive, Beverly Hills, California 90210, ("Guarantors"), to FOCUS 15, LLC, c/o Advanced Accounting Solutions, Inc., 23 Middle Street, Suite 302, Newburyport, Massachusetts 01950 ("Lender").

### WITNESSETH:

WHEREAS, concurrently herewith the Lender is loaning the sum of One Hundred Thousand Dollars ($100,000.00) as evidenced by a Promissory Note to NICO CORPORATION having an address at 2535 Third Street, San Francisco, California 94107 ("Maker"), of even date herewith made by Maker to Lender (the "Note"); and

WHEREAS, in order to induce the Lender to make said loan, the Guarantors have agreed to Guaranty payment of the Note.

NOW THEREFORE, in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. The Guarantors do each hereby unconditionally guaranty to the Lender the due and punctual payment of all principal and interest evidenced by the Note and all extensions, renewals or refinancings thereof, whenever due and payable, and all expenses of collection of the Note and of enforcement of the Guaranty, including reasonable attorneys' fees (collectively referred to herein as the "Obligations").

2. This Guaranty is irrevocable, continuing, indivisible and unconditional and, except as otherwise provided herein, may be proceeded upon immediately after failure by the Maker to pay any of the Obligations, without any prior action or proceeding against the Maker. The Guarantors hereby consent to and waive notice of the following, none of which shall affect, change or discharge the liability of the Guarantors hereunder: (a) any change in the terms of any agreement between the Maker and the Lender; and (b) the acceptance, alteration, release or substitution by the Lender of any security for the Obligations, whether provided by the Guarantors or any other person.

3. The Guarantors hereby expressly waive the following: (a) acceptance and notice of acceptance of the Guaranty by Lender; (b) notice of extension of time of the payment of, or renewal or alteration of the terms and conditions of, any Obligations; (c) notice of any demand for payment, notice of default or nonpayment as to any Obligations; (d) all other notices to which the Guarantors might otherwise be entitled in connection with the Guaranty or the Obligations of the Maker hereby guarantied; and (e) trial by jury and the right thereto in any action or proceeding of any kind or nature, arising on, under or by reason of, or relating in any way to, the Guaranty or the Obligations.

4. The Guarantors have not and will not set up or claim any defense, counterclaim, setoff or other

objection of any kind to the suit, action or proceeding at law, in equity, or otherwise, or to any demand or claim that may be instituted or made under and by virtue of the Guaranty. All remedies of the Lender by reason of or under the Guaranty are separate and cumulative remedies, and it is agreed that no one of such remedies shall be deemed in exclusion of any other remedies available to the Lender.

5. The Guarantors each represent and warrant that the Guarantors have full power and authority to execute, deliver and perform this Guaranty, and that neither the execution, delivery nor performance of the Guaranty will violate any law or regulation, or any order or decree of any court or governmental authority, or will conflict with, or result in the breach of, or constitute a default under, any agreement or other instrument to which either Guarantor is a party or by which either Guarantor may be bound, or will result in the creation or imposition of any lien, claim or encumbrance upon any property of each Guarantor.

6. This Guaranty may not be changed or terminated orally.

7. This Guaranty shall be construed in accordance with, and governed by, the laws of the State of New York. No invalidity, irregularity, illegality or unenforceability of any Obligation shall affect, impair or be a defense to the enforceability of the Guaranty.

8. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

9. Each Guarantor hereby represents that he has not been known by any other names, married or single, during the past ten years.

10. Each Guarantor further represents that there are no Judgments, Federal Tax Liens, Parking Violation Judgments, Environmental Control Board Liens, Environmental Control Fire Liens, Transit Adjudication Liens, or any other liens against your him in any jurisdiction and that he is not a defendant in any pending litigation and has no knowledge or notice of any threatened lawsuit not yet commenced as of the date hereof.

IN WITNESS WHEREOF, each Guarantor has given and executed the Guaranty on the date first above written.

_____
IAN HANNULA

_____
JOE HALLER

_____
MAURIZIO DONADI

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of SAN FRANCISCO                    )

On 2.23.2016 before me, LYNNE YORK GUEDEZ, NOTARY PUBLIC
_____Date_____                                    Here Insert Name and Title of the Officer

personally appeared         JOSEPH PHILIP HALLER
_____
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Notary seal: LYNNE YORK GUEDEZ / Commission # 2069069 / Notary Public - California / San Francisco County / My Comm. Expires Jun 18, 2018]

Signature _____
                                    Signature of Notary Public

Place Notary Seal Above

———————————————— OPTIONAL ————————————————
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: GUARANTY _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California          )

County of _SAN FRANCISCO_    )

On _2.23.2016_ before me, _LYNNE YORK GUEDEZ, NOTARY PUBLIC_
    Date                          Here Insert Name and Title of the Officer

personally appeared _IAN MATTEW HANDULA_
                                Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LYNNE YORK GUEDEZ
Commission # 2069089
Notary Public - California
San Francisco County
My Comm. Expires Jun 18, 2018

Signature _____
                    Signature of Notary Public

Place Notary Seal Above

---

**———— OPTIONAL ————**

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _GUARANTY_      Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____ Los Angeles _____ )

On _02/29/ 2016_ before me, Allen Boghozian, a Notary Public
(insert name and title of the officer)

personally appeared _Maurizio Donadi_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   **(Seal)**

ALLEN BOGHOZIAN
Commission # 2122935
Notary Public - California
Los Angeles County
My Comm. Expires Aug 10, 2019

# EXHIBIT B

# NOTE

_June 1, 2016_                           <u>New York, New York</u>

## 1. BORROWER'S PROMISE TO PAY

In return for a loan received, the Borrower promises to pay **FIFTY THOUSAND DOLLARS ($50,000.00)** plus interest to the order of **FOCUS 15, LLC** (hereinafter referred to as the "Note Holder"). Borrower will make all payments under this Note in the form of cash, check or money order. Borrower understands that the Note Holder may transfer this Note.

## 2. INTEREST

Interest at the annual rate of **8.0%** and compounded annually will be charged on unpaid principal until the full amount of principal has been paid. The interest rate required by this Section 2 is the rate payable both before and after any default described in Section 6(b) of this Notce.

## 3. PAYMENTS

The Borrower will make payments on the **1st** day of each month beginning **July 1, 2016**. Payments from **July 1, 2016** through and including **June 30, 2017** will be of interest only, each in the amount of **THREE HUNDRED THIRTY-THREE DOLLARS AND THIRTY-THREE CENTS ($333.33)**. Beginning on **July 1, 2017**, payments will be of interest and principal, each in the amount of **ONE THOUSAND FIVE HUNDRED SIXTY-SIX DOLLARS AND EIGHTY-TWO CENTS ($1,566.82)**. The Borrower will make these payments every month until the entire balance of principal and interest and any other charges described below that the Borrower may owe under this Note are paid in full. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **June 1, 2020**, which is called the "Maturity Date", the Borrower still owes amounts under this Note, the Borrower will pay those amounts in full on that date. The required payment will be sent to the Note Holder in care of **Advanced Accounting Solutions, Inc.** at **23 Middle Street, Suite 302, Newburyport, Massachusetts 01950** unless written notice to the contrary is given by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

Borrower will have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment". When a Prepayment is made, notice to that effect will be given to the Note Holder in writing. A payment may not be designated as a Prepayment if the Borrower is in arrears on any amount due under the Note.

Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use designated Prepayments to reduce the amount of Principal that due under this Note. The Note Holder shall first apply any designated Prepayment to reduce the principal amount of the Note and only then to accrued and unpaid interest. If the Borrower makes a partial Prepayment, there will be no changes in the Maturity Date unless the Note Holder agrees in writing to such change, but there will be a change in the monthly payment amount and the Note Holder will provide notice of the new amount to the Borrower.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any interest or principal by the end of fifteen (15) calendar days after the date it is due, the Borrower will pay a late charge to the Note Holder.  The amount of this charge will be 2.00% of the overdue payment.

**(B) Default**
The Borrower will be in default if the full amount of interest or principal is not paid on the date it is due.

**(C) Payment of Note Holder's Costs and Expenses**
The Note Holder will have the right to be paid back by the Borrower for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**6.  GIVING OF NOTICES**
Unless otherwise required by law, any notice that must be given to the Borrower under this Note will be given by delivering it or by mailing it by first class mail to the Borrower at **2535 Third Street, San Francisco, California 94107** or at a different address if the Borrower gives the Note Holder notice of a different address.

**7.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**8.  WAIVERS**
The Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**9.  GOVERNING LAW**
This Note shall be governed and construed in accordance with the laws of New York State.

Dated: _____

~~May~~   , 2016
JUNE  1,

NICO CORPORATION, Borrower

By: Ian Kannula, President

## GUARANTY

GUARANTEE, given by IAN HANNULA, residing at 2535 Third Street, San Francisco, California 94107, JOE HALLER, residing at 2535 Third Street, San Francisco, California 94107, and MAURIZIO DONADI, residing at 9346 Readcrest Drive, Beverly Hills, California 90210, ("Guarantors"), to FOCUS 15, LLC, c/o Advanced Accounting Solutions, Inc., 23 Middle Street, Suite 302, Newburyport, Massachusetts 01950 ("Lender").

### WITNESSETH:

WHEREAS, concurrently herewith the Lender is loaning the sum of Fifty Thousand Dollars ($50,000.00) as evidenced by a Promissory Note to NICO CORPORATION having an address at 2535 Third Street, San Francisco, California 94107 ("Maker"), of even date herewith made by Maker to Lender (the "Note"); and

WHEREAS, in order to induce the Lender to make said loan, the Guarantors have agreed to Guaranty payment of the Note.

NOW THEREFORE, in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. The Guarantors do each hereby unconditionally guaranty to the Lender the due and punctual payment of all principal and interest evidenced by the Note and all extensions, renewals or refinancings thereof, whenever due and payable, and all expenses of collection of the Note and of enforcement of the Guaranty, including reasonable attorneys' fees (collectively referred to herein as the "Obligations").

2. This Guaranty is irrevocable, continuing, indivisible and unconditional and, except as otherwise provided herein, may be proceeded upon immediately after failure by the Maker to pay any of the Obligations, without any prior action or proceeding against the Maker. The Guarantors hereby consent to and waive notice of the following, none of which shall affect, change or discharge the liability of the Guarantors hereunder: (a) any change in the terms of any agreement between the Maker and the Lender; and (b) the acceptance, alteration, release or substitution by the Lender of any security for the Obligations, whether provided by the Guarantors or any other person.

3. The Guarantors hereby expressly waive the following: (a) acceptance and notice of acceptance of the Guaranty by Lender; (b) notice of extension of time of the payment of, or renewal or alteration of the terms and conditions of, any Obligations; (c) notice of any demand for payment, notice of default or nonpayment as to any Obligations; (d) all other notices to which the Guarantors might otherwise be entitled in connection with the Guaranty or the Obligations of the Maker hereby guarantied; and (e) trial by jury and the right thereto in any action or proceeding of any kind or nature, arising on, under or by reason of, or relating in any way to, the Guaranty or the Obligations.

4. The Guarantors have not and will not set up or claim any defense, counterclaim, setoff or other

objection of any kind to the suit, action or proceeding at law, in equity, or otherwise, or to any demand or claim that may be instituted or made under and by virtue of the Guaranty. All remedies of the Lender by reason of or under the Guaranty are separate and cumulative remedies, and it is agreed that no one of such remedies shall be deemed in exclusion of any other remedies available to the Lender.

5. The Guarantors each represent and warrant that the Guarantors have full power and authority to execute, deliver and perform this Guaranty, and that neither the execution, delivery nor performance of the Guaranty will violate any law or regulation, or any order or decree of any court or governmental authority, or will conflict with, or result in the breach of, or constitute a default under, any agreement or other instrument to which either Guarantor is a party or by which either Guarantor may be bound, or will result in the creation or imposition of any lien, claim or encumbrance upon any property of each Guarantor.

6. This Guaranty may not be changed or terminated orally.

7. This Guaranty shall be construed in accordance with, and governed by, the laws of the State of New York. No invalidity, irregularity, illegality or unenforceability of any Obligation shall affect, impair or be a defense to the enforceability of the Guaranty.

8. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

9. Each Guarantor hereby represents that he has not been known by any other names, married or single, during the past ten years.

10. Each Guarantor further represents that there are no Judgments, Federal Tax Liens, Parking Violation Judgments, Environmental Control Board Liens, Environmental Control Fire Liens, Transit Adjudication Liens, or any other liens against your him in any jurisdiction and that he is not a defendant in any pending litigation and has no knowledge or notice of any threatened lawsuit not yet commenced as of the date hereof.

IN WITNESS WHEREOF, each Guarantor has given and executed the Guaranty on the date first above written.

_____
IAN MANNULA

_____
JOE HALLER

_____
MAURIZIO DONADI

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California

County of _____ Los Angeles _____ )

On _May, 26th, 2016_ before me, _Allen Boghozian, a Notary Public_

(insert name and title of the officer)

personally appeared _Maurizio Donadi_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    **(Seal)**

> **ALLEN BOGHOZIAN**
> Commission # 2122935
> Notary Public - California
> Los Angeles County
> My Comm. Expires Aug 10, 2019

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of SAN FRANCISCO

On 06.01.2016 before me, Ray DONOVAN HENRY, NOTARY PUBLIC

**Date**

Here Insert Name and Title of the Officer

personally appeared AN ANNULA

& OE HALLER

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TROY DONOVAN HENRY
Commission # 2067575
Notary Public - California
San Francisco County
My Comm. Expires May 9, 2018

Signature _____

*Signature of Notary Public*

*Place Notary Seal Above*

---

**OPTIONAL**

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual ☐ Attorney in Fact

☐ Trustee ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Partner — ☐ Limited ☐ General

☐ Individual ☐ Attorney in Fact

☐ Trustee ☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

# EXHIBIT C

# NOTE

July 31, 2016                    New York, New York

## 1. BORROWER'S PROMISE TO PAY

In return for a loan received, the Borrower promises to pay **FIFTY THOUSAND DOLLARS** **($50,000.00)** plus interest to the order of **GOLDEN FOCUS, LLC** (hereinafter referred to as the "Note Holder"). Borrower will make all payments under this Note in the form of cash, check or money order. Borrower understands that the Note Holder may transfer this Note.

## 2. INTEREST

Interest at the annual rate of **8.0%** and compounded annually will be charged on unpaid principal until the full amount of principal has been paid. The interest rate required by this Section 2 is the rate payable both before and after any default described in Section 6(b) of this Notce.

## 3. PAYMENTS

The Borrower will make payments on the **15th** day of each month beginning **August 15, 2016**. Payments from **August 15, 2016** through and including **August 14, 2017** will be of interest only, each in the amount of **THREE HUNDRED THIRTY-THREE DOLLARS AND THIRTY-THREE CENTS ($333.33)**. Beginning on **August 15, 2017**, payments will be of interest and principal, each in the amount of **ONE THOUSAND FIVE HUNDRED SIXTY-SIX DOLLARS AND EIGHTY-TWO CENTS ($1,566.82)**. The Borrower will make these payments every month until the entire balance of principal and interest and any other charges described below that the Borrower may owe under this Note are paid in full. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **August 15, 2020**, which is called the "Maturity Date", the Borrower still owes amounts under this Note, the Borrower will pay those amounts in full on that date. The required payment will be sent to the Note Holder in care of **Advanced Accounting Solutions, Inc.** at **23 Middle Street, Suite 302, Newburyport, Massachusetts 01950** unless written notice to the contrary is given by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

Borrower will have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment". When a Prepayment is made, notice to that effect will be given to the Note Holder in writing. A payment may not be designated as a Prepayment if the Borrower is in arrears on any amount due under the Note.

Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use designated Prepayments to reduce the amount of Principal that due under this Note. The Note Holder shall first apply any designated Prepayment to reduce the principal amount of the Note and only then to accrued and unpaid interest. If the Borrower makes a partial Prepayment, there will be no changes in the Maturity Date unless the Note Holder agrees in writing to such change, but there will be a change in the monthly payment amount and the Note Holder will provide notice of he new amount to the Borrower.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED
## (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any interest or principal by the end of fifteen (15) calendar days after the date it is due, the Borrower will pay a late charge to the Note Holder. The amount of this charge will be 2.00% of the overdue payment.

**(B) Default**
The Borrower will be in default if the full amount of interest or principal is not paid on the date it is due.

**(C) Payment of Note Holder's Costs and Expenses**
The Note Holder will have the right to be paid back by the Borrower for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**6. GIVING OF NOTICES**
Unless otherwise required by law, any notice that must be given to the Borrower under this Note will be given by delivering it or by mailing it by first class mail to the Borrower at **2535 Third Street, San Francisco, California 94107** or at a different address if the Borrower gives the Note Holder notice of a different address.

**7. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**8. WAIVERS**
The Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**9. GOVERNING LAW**
This Note shall be governed and construed in accordance with the laws of New York State.

Dated: _July 31st 2016_
       July 31st, 2016

NICO CORPORATION, Borrower

By: Ian Hammond, President

## GUARANTY

GUARANTEE, given by IAN HANNULA, residing at 2535 Third Street, San Francisco, California 94107, JOE HALLER, residing at 2535 Third Street, San Francisco, California 94107, and MAURIZIO DONADI, residing at 9346 Readcrest Drive, Beverly Hills, California 90210, ("Guarantors"), to GOLDEN FOCUS, LLC, c/o Advanced Accounting Solutions, Inc., 23 Middle Street, Suite 302, Newburyport, Massachusetts 01950 ("Lender").

### W I T N E S S E T H:

WHEREAS, concurrently herewith the Lender is loaning the sum of Fifty Thousand Dollars ($50,000.00) as evidenced by a Promissory Note to NICO CORPORATION having an address at 2535 Third Street, San Francisco, California 94107 ("Maker"), of even date herewith made by Maker to Lender (the "Note"); and

WHEREAS, in order to induce the Lender to make said loan, the Guarantors have agreed to Guaranty payment of the Note.

NOW THEREFORE, in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. The Guarantors do each hereby unconditionally guaranty to the Lender the due and punctual payment of all principal and interest evidenced by the Note and all extensions, renewals or refinancings thereof, whenever due and payable, and all expenses of collection of the Note and of enforcement of the Guaranty, including reasonable attorneys' fees (collectively referred to herein as the "Obligations").

2. This Guaranty is irrevocable, continuing, indivisible and unconditional and, except as otherwise provided herein, may be proceeded upon immediately after failure by the Maker to pay any of the Obligations, without any prior action or proceeding against the Maker. The Guarantors hereby consent to and waive notice of the following, none of which shall affect, change or discharge the liability of the Guarantors hereunder: (a) any change in the terms of any agreement between the Maker and the Lender; and (b) the acceptance, alteration, release or substitution by the Lender of any security for the Obligations, whether provided by the Guarantors or any other person.

3. The Guarantors hereby expressly waive the following: (a) acceptance and notice of acceptance of the Guaranty by Lender; (b) notice of extension of time of the payment of, or renewal or alteration of the terms and conditions of, any Obligations; (c) notice of any demand for payment, notice of default or nonpayment as to any Obligations; (d) all other notices to which the Guarantors might otherwise be entitled in connection with the Guaranty or the Obligations of the Maker hereby guarantied; and (e) trial by jury and the right thereto in any action or proceeding of any kind or nature, arising on, under or by reason of, or relating in any way to, the Guaranty or the Obligations.

4. The Guarantors have not and will not set up or claim any defense, counterclaim, setoff or other objection of any kind to the suit, action or proceeding at law, in equity, or otherwise, or to any demand or claim that may be instituted or made under and by virtue of the Guaranty.  All remedies of the Lender by reason of or under the Guaranty are separate and cumulative remedies, and it is agreed that no one of such remedies shall be deemed in exclusion of any other remedies available to the Lender.

5. The Guarantors each represent and warrant that the Guarantors have full power and authority to execute, deliver and perform this Guaranty, and that neither the execution, delivery nor performance of the Guaranty will violate any law or regulation, or any order or decree of any court or governmental authority, or will conflict with, or result in the breach of, or constitute a default under, any agreement or other instrument to which either Guarantor is a party or by which either Guarantor may be bound, or will result in the creation or imposition of any lien, claim or encumbrance upon any property of each Guarantor.

6. This Guaranty may not be changed or terminated orally.

7. This Guaranty shall be construed in accordance with, and governed by, the laws of the State of New York.  No invalidity, irregularity, illegality or unenforceability of any Obligation shall affect, impair or be a defense to the enforceability of the Guaranty.

8. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

9. Each Guarantor hereby represents that he has not been known by any other names, married or single, during the past ten years.

10. Each Guarantor further represents that there are no Judgments, Federal Tax Liens, Parking Violation Judgments, Environmental Control Board Liens, Environmental Control Fire Liens, Transit Adjudication Liens, or any other liens against your him in any jurisdiction and that he is not a defendant in any pending litigation and has no knowledge or notice of any threatened lawsuit not yet commenced as of the date hereof.

IN WITNESS WHEREOF, each Guarantor has given and executed the Guaranty on the date first above written.

_____
IAN FANNULA

_____
JOE HALLER

_____
MAURIZIO DONADI

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of SAN FRANCISCO _____ }

On 07. 15. 2016 _____ before me, Ray DONOVAN HENRY, NOTARY PUBLIC
(Here insert name and title of the officer)

personally appeared IAN HANNULA + JOE HALLER,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TROY DONOVAN HENRY
Commission # 2067575
Notary Public - California
San Francisco County
My Comm. Expires May 9, 2018

_____
Notary Public Signature                    (Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

**CAPACITY CLAIMED BY THE SIGNER**
☐ Individual (s)
☐ Corporate Officer
    _____
    (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM
This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Los Angeles _____ )

On _July, 26, 2016_ before me, Allen Boghozian, a Notary Public _____

(insert name and title of the officer)

personally appeared _____ Maurizio Donadi _____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    **(Seal)**

ALLEN BOGHOZIAN
Commission # 2122935
Notary Public - California
Los Angeles County
My Comm. Expires Aug 10, 2019

# EXHIBIT D

# NOTE

<u>February 15, 2017</u>     <u>New York, New York</u>

## 1. BORROWER'S PROMISE TO PAY
In return for a loan received, the Borrower promises to pay **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)** plus interest to the order of **FOCUS 15, LLC** (hereinafter referred to as the "Note Holder"). Borrower will make all payments under this Note in the form of cash, check or money order. Borrower understands that the Note Holder may transfer this Note.

## 2. INTEREST
Interest at the annual rate of **8.0%** and compounded annually will be charged on unpaid principal until the full amount of principal has been paid. The interest rate required by this Section 2 is the rate payable both before and after any default described in Section 6(b) of this Note.

## 3. PAYMENTS
The Borrower will make payments on the **1st** day of each month beginning **December 1, 2016**. Payments will be of interest only, each in the amount of **ONE HUNDRED SIXTY-SIX DOLLARS AND SIXTY-SEVEN CENTS ($166.67)**. The Borrower will make these payments every month until the entire balance of principal and interest and any other charges described below that the Borrower may owe under this Note are paid in full. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **March 15, 2017**, which is called the "Preliminary Maturity Date", the Borrower still owes amounts under this Note, the Borrower will pay **fifty percent (50%)** of those amounts on that date. If on **April 15, 2017**, which is called the "Final Maturity Date", the Borrower still owes amounts under this Note, the Borrower will pay **the total** of those amount on that date. The required payments will be sent to the Note Holder in care of **Advanced Accounting Solutions, Inc.** at **23 Middle Street, Suite 302, Newburyport, Massachusetts 01950** unless written notice to the contrary is given by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY
Borrower will have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment". When a Prepayment is made, notice to that effect will be given to the Note Holder in writing. A payment may not be designated as a Prepayment if the Borrower is in arrears on any amount due under the Note.

Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use designated Prepayments to reduce the amount of Principal that due under this Note. The Note Holder shall first apply any designated Prepayment to reduce the principal amount of the Note and only then to accrued and unpaid interest. If the Borrower makes a partial Prepayment, there will be no changes in the Maturity Date unless the Note Holder agrees in writing to such change, but there will be a change in the monthly payment amount and the Note Holder will provide notice of the new amount to the Borrower.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any interest or principal by the end of

fifteen (15) calendar days after the date it is due, the Borrower will pay a late charge to the Note Holder. The amount of this charge will be 2.00% of the overdue payment.

### (B) Default
The Borrower will be in default if the full amount of interest or principal is not paid on the date it is due.

### (C) Payment of Note Holder's Costs and Expenses
The Note Holder will have the right to be paid back by the Borrower for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 6. GIVING OF NOTICES
Unless otherwise required by law, any notice that must be given to the Borrower under this Note will be given by delivering it or by mailing it by first class mail to the Borrower at **2535 Third Street, San Francisco, California 94107** or at a different address if the Borrower gives the Note Holder notice of a different address.

### 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 8. WAIVERS
The Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 9. GOVERNING LAW
This Note shall be governed and construed in accordance with the laws of New York State.

Dated: February 15, 2017

NICO CORPORATION, Borrower

By: Ian Hannula, President

# LOAN AGREEMENT

<u>PARTIES</u>:  This LOAN AGREEMENT is made this 14th day of February 2017 between NICO CORPORATION ("the Borrower") and FOCUS 15, LLC ("the Lender").

<u>NOTE</u>: Borrower has signed a promissory note ("the Note"), payable to the order of the Lender in the principal sum of $25,000.00 with interest as described in the Note.

<u>AGREEMENTS</u>: In consideration for the Lender making the Loan evidenced by the Note, the Borrower agrees as follows:

1. The funds received from the Lender shall be segregated in a Special Account set up for the purpose of holding funds loaned by the Lender and shall not be comingled with other funds of the Borrower.
2. The funds received from the Lender shall not be used for the purpose of paying usual and customary monthly operating expenses of the Borrower but shall be used exclusively for purposes that contribute directly to the growth of Nico Corporation.
3. No single debit from the Special Account in excess of Five Hundred Dollars ($500.00) and no series of debits occurring in a period of five (5) consecutive business days that cumulatively exceed Five Hundred Dollars ($500.00) shall be made without the express written approval of Denise Cassano of Advanced Accounting Solutions.  Such approval may be given via email originating from dcassano@aasinc.com.

<u>DEFAULT</u>: Any action taken by the Borrower, whether by an officer, agent or employee, that violates of one of the above Agreements shall constitute a Default of this Loan Agreement.  In the event of a Default, the Lender shall at its sole and exclusive option, without notifying the Borrower of such default, without the Note, without notice of protest and without demanding payment of the Note, which are hereby all expressly waived, will have the right to demand the entire unpaid principal balance and interest to become immediately due and payable, and Lender will have the right to use any legal means to enforce its interest.

<u>BOOKS AND RECORDS</u>: The Borrower shall keep accurate books and records relating to the use of the funds received from the Lender and agrees to furnish accurate copies of such books and records to the Lender within ten (10) days of the Lender's written request.

1

REIMBURSEMENTS FOR EXPENSES: The Borrower shall reimburse the Lender for all costs and expenses (including but not limited to reasonable attorney's fees) incurred in enforcing the terms of this Agreement and shall be payable to the Lender by the Borrower, on demand.

DISTRIBUTION OF CAPITAL: The Lender will have the right to receive any distributions of capital from the Corporation, and shall apply any such distributions to reduce the amount that the Borrower owes the Lender.

USURY: If the law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from the Borrower which exceed permitted limits will be refunded to the Borrower. The Lender may choose to make this refund by reducing the principal the Borrower owes under the Note or by making a direct payment to the Borrower. If a refund reduces principal, the reduction will be treated as a partial repayment.

SUCCESSORS AND ASSIGNS: All of the Borrower's rights and obligations under this Agreement, and all of the Lender's rights and obligations under this Agreement, shall bind and benefit their respective distributees, legal representatives, successors, heirs and assigns.

APPLICABLE LAW: This Agreement is governed by the laws of the State of New York. If any provision in this Loan Agreement is found to be invalid, the remainder of this Agreement will still be binding and effective.

CAPTIONS: Captions are used in this Agreement only as a matter of convenience and do not define or describe the intent of any provision.

The Borrower has signed this Loan Agreement on the date above written.

NICO CORPORATION, Borrower                FOCUS 15, LLC, Lender


By: Ian Hannula, President                By: Elizabeth J. Salen,
                                          Managing Member

2

## GUARANTY

GUARANTEE, given by IAN HANNULA, residing at 2535 Third Street, San Francisco, California 94107 and JOE HALLER, residing at 2535 Third Street, San Francisco, California 94107, ("Guarantors"), to FOCUS 15, LLC, c/o Advanced Accounting Solutions, Inc., 23 Middle Street, Suite 302, Newburyport, Massachusetts 01950 ("Lender").

### W I T N E S S E T H:

WHEREAS, concurrently herewith the Lender is loaning the sum of Twenty-Five Thousand Dollars ($25,000.00) as evidenced by a Promissory Note to NICO CORPORATION having an address at 2535 Third Street, San Francisco, California 94107 ("Maker"), of even date herewith made by Maker to Lender (the "Note"); and

WHEREAS, in order to induce the Lender to make said loan, the Guarantors have agreed to Guaranty payment of the Note.

NOW THEREFORE, in consideration of Ten Dollars, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. The Guarantors do each hereby unconditionally guaranty to the Lender the due and punctual payment of all principal and interest evidenced by the Note and all extensions, renewals or refinancings thereof, whenever due and payable, and all expenses of collection of the Note and of enforcement of the Guaranty, including reasonable attorneys' fees (collectively referred to herein as the "Obligations").

2. This Guaranty is irrevocable, continuing, indivisible and unconditional and, except as otherwise provided herein, may be proceeded upon immediately after failure by the Maker to pay any of the Obligations, without any prior action or proceeding against the Maker.   The Guarantors hereby consent to and waive notice of the following, none of which shall affect, change or discharge the liability of the Guarantors hereunder: (a) any change in the terms of any agreement between the Maker and the Lender; and (b) the acceptance, alteration, release or substitution by the Lender of any security for the Obligations, whether provided by the Guarantors or any other person.

3. The Guarantors hereby expressly waive the following: (a) acceptance and notice of acceptance of the Guaranty by Lender; (b) notice of extension of time of the payment of, or renewal or alteration of the terms and conditions of, any Obligations; (c) notice of any demand for payment, notice of default or nonpayment as to any Obligations; (d) all other notices to which the Guarantors might otherwise be entitled in connection with the Guaranty or the Obligations of the Maker hereby guarantied; and (e) trial by jury and the right thereto in any action or proceeding of any kind or nature, arising on, under or by reason of, or relating in any way to, the Guaranty or the Obligations.

4. The Guarantors have not and will not set up or claim any defense, counterclaim, setoff or other objection of any kind to the suit, action or proceeding at law, in equity, or otherwise, or to any

demand or claim that may be instituted or made under and by virtue of the Guaranty. All remedies of the Lender by reason of or under the Guaranty are separate and cumulative remedies, and it is agreed that no one of such remedies shall be deemed in exclusion of any other remedies available to the Lender.

5. The Guarantors each represent and warrant that the Guarantors have full power and authority to execute, deliver and perform this Guaranty, and that neither the execution, delivery nor performance of the Guaranty will violate any law or regulation, or any order or decree of any court or governmental authority, or will conflict with, or result in the breach of, or constitute a default under, any agreement or other instrument to which either Guarantor is a party or by which either Guarantor may be bound, or will result in the creation or imposition of any lien, claim or encumbrance upon any property of each Guarantor.

6. This Guaranty may not be changed or terminated orally.

7. This Guaranty shall be construed in accordance with, and governed by, the laws of the State of New York. No invalidity, irregularity, illegality or unenforceability of any Obligation shall affect, impair or be a defense to the enforceability of the Guaranty.

8. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

9. Each Guarantor hereby represents that he has not been known by any other names, married or single, during the past ten years.

10. Each Guarantor further represents that there are no Judgments, Federal Tax Liens, Parking Violation Judgments, Environmental Control Board Liens, Environmental Control Fire Liens, Transit Adjudication Liens, or any other liens against your him in any jurisdiction and that he is not a defendant in any pending litigation and has no knowledge or notice of any threatened lawsuit not yet commenced as of the date hereof.

IN WITNESS WHEREOF, each Guarantor has given and executed the Guaranty on the date first above written.

_____
IAN HANNULA

_____
JOE HALLER