MARC R. STIMPERT (SBN 283964)
ANDREW C. MCCLELLAND (SBN 261060)
LUNSKI & STIMPERT LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
TEL: (415) 426-3525
FAX: (415) 426-3424

Attorney for Defendants/Counter-Complainants/Third-Party Complainants
NICO CORPORATION, IAN MATTHEW HANNULA and JOSEPH PHILIP
HALLER

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC;<br><br>Plaintiff,<br><br>v.<br><br>NICO CORPORATION, et al.;<br><br>Defendants. | Case No. 21-CV-01493<br><br>DEFENDANTS' FIRST AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT FOR: |
| NICO CORPORATION, a California Corporation, IAN MATTHEW HANNULA, an individual, and JOSEPH PHILIP HALLER, an individual;<br><br>Counter/Third Party Complainants,<br><br>v.<br><br>FOCUS 15, LLC, a New York Limited Liability Company; ELIZABETH SALEN, an individual; DENISE CASSANO, an individual; MAURIZIO DONADI, an individual; ADVANCED ACCOUNTING SOLUTIONS, a Massachusetts Corporation; and ROES 1-50, inclusive;<br><br>Counter/Third Party Defendants | 1) FRAUD/DECEIT<br>2) NEGLIGENT MISREPRESENTATION<br>3) BREACH OF FIDUCIARY DUTY<br>4) NEGLIGENCE<br>5) NEGLIGENCE PER SE<br>6) INDEMNITY<br>7) CONTRIBUTION<br>8) DECLARATORY RELIEF<br>9) CIVIL RICO |

COME NOW Defendants and Counter/Third Party Claimants Nico Corporation ("Nico"), Ian Matthew Hannula ("Hannula"), and Joseph Philip Haller ("Haller") (hereinafter, collectively, "Defendants") and hereby answer Plaintiff's Complaint and admit, deny and allege as follows:

**ANSWER**

1. Answering Paragraph 1 of Plaintiff's Complaint, Defendants admit that they signed various promissory notes but deny liability pursuant to said documents. The remainder of the allegations in this paragraph call for a legal conclusion for which no response is required.

2. Answering Paragraph 2 of Plaintiff's Complaint, Defendants admit that Plaintiff transferred certain monies to Nico, but deny that Plaintiff performed all of its obligations under the promissory notes.

3. Answering Paragraph 3, Defendants admit that they eventually stopped making payments pursuant to said promissory notes.  As to the remainder of the factual allegations in this paragraph, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations. This paragraph also makes allegations that call for a legal conclusion, for which no response is required.

4. Answering Paragraph 4, Defendants deny said allegations. This paragraph also makes allegations that call for a legal conclusion, for which no response is required.

5. Answering Paragraph 5, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations.

6. Answering Paragraph 6, Defendants admit said allegations.

7. Answering Paragraph 7, Defendants admit that Defendant Hannula resides in San Francisco, California and is President and CEO of Defendant Nico.  This paragraph also makes allegations that call for a legal conclusion, for which no response is required.

8. Answering Paragraph 8, Defendants admit that Defendant Haller resides in San Francisco, California and is Secretary and CFO of Defendant Nico.  This paragraph also makes allegations that call for a legal conclusion, for which no response is required.

///

9. Answering Paragraph 9, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations.

10. Answering Paragraph 10, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations.

11. Answering Paragraph 11, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations.

12. Answering Paragraph 12, his paragraph makes allegations that call for a legal conclusion, for which no response is required.

13. Answering Paragraph 13, this paragraph makes allegations that call for a legal conclusion, for which no response is required.

14. Answering Paragraph 14, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

15. Answering Paragraph 15, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

16. Answering Paragraph 16, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

17. Answering Paragraph 17, Defendants lack information or belief sufficient to admit or deny said allegations, and on that basis deny said allegations.

18. Answering Paragraph 18, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

19. Answering Paragraph 19, Defendants admit that they eventually stopped making payments pursuant to said promissory notes.  This paragraph also makes allegations that call for a legal conclusion, for which no response is required.

20. Answering Paragraph 20, Defendants deny said allegations.

21. Answering Paragraph 21, this paragraph also makes allegations that call for a legal conclusion, for which no response is required.

22. Answering Paragraph 22, this paragraph characterizes the Complaint, for which no response is required.

23. Answering Paragraph 23, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

24. Answering Paragraph 24, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

25. Answering Paragraph 25, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

26. Answering Paragraph 26, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.  Defendants deny remaining allegations.

27. Answering Paragraph 27, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

28. Answering Paragraph 28, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

29. Answering Paragraph 29, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

30. Answering Paragraph 30, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

31. Answering Paragraph 31, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

32. Answering Paragraph 32, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

33. Answering Paragraph 33, this paragraph characterizes the Complaint, for which no response is required.

34. Answering Paragraph 34, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

35. Answering Paragraph 35, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

///

36. Answering Paragraph 36, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required. Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

37. Answering Paragraph 37, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

38. Answering Paragraph 38, this paragraph characterizes the Complaint, for which no response is required.

39. Answering Paragraph 39, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required. Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

40. Answering Paragraph 40, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

41. Answering Paragraph 41, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required. Defendants deny that Plaintiff performed all of its obligations under the promissory notes.

42. Answering Paragraph 42, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

43. Answering Paragraph 43, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.  Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

44. Answering Paragraph 44, this paragraph characterizes the contents of a document which speaks for itself, for which no response is required.

45. Answering Paragraph 45, this paragraph characterizes the Complaint, for which no response is required.

///

46. Answering Paragraph 46, this paragraph characterizes the Complaint and the contents of documents and makes allegations that call for a legal conclusion, for which no response is required. Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

47. Answering Paragraph 47, Defendants deny said allegations.

48. Answering Paragraph 48, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

49. Answering Paragraph 49, this paragraph characterizes the Complaint, for which no response is required.

50. Answering Paragraph 50, this paragraph characterizes the Complaint and the contents of documents and makes allegations that call for a legal conclusion, for which no response is required. Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

51. Answering Paragraph 51, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

52. Answering Paragraph 52, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

53. Answering Paragraph 53, this paragraph characterizes the Complaint, for which no response is required.

54. Answering Paragraph 54, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

55. Answering Paragraph 55, this paragraph characterizes the Complaint, for which no response is required.

56. Answering Paragraph 56, this paragraph characterizes a code section, for which no response is required.

57. Answering Paragraph 57, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.

///

58. Answering Paragraph 58, this paragraph characterizes the Complaint and makes allegations that call for a legal conclusion, for which no response is required.  Defendants lack information or belief sufficient to admit or deny remaining allegations, and on that basis deny said allegations.

**FIRST AFFIRMATIVE DEFENSE**

The answering Defendants allege that the Complaint and each and every cause of action stated therein fails to state facts sufficient to constitute a cause of action, or any cause of action, as against this answering Defendant.

**SECOND AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that if Plaintiff herein suffered or sustained any loss, injury, damage or detriment, the same was directly and proximately caused and contributed to by conduct, acts, omissions, activities, carelessness, recklessness negligence and/or intentional conduct of the said Plaintiff, thereby completely or partially barring Plaintiff' recovery herein, in accordance with the law of comparative negligence.

**THIRD AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that they not legally responsible in any fashion with respect to damages and injuries claimed by the Plaintiff in the Complaint; however, if this answering Defendants are subjected to any liability to the Plaintiff or any cross-complainant herein, it will be due, in whole or in part, to the acts, omissions, activities, carelessness, recklessness negligence and/or intentional conduct of others; wherefore, any recovery obtained by Plaintiff or any cross-complainant herein against the answering Defendants should be reduced in proportion to the respective negligence and fault and legal responsibility of all other parties, persons and entities, their agents, servants and employees who contributed to and/or caused any such injury and/or damages, in accordance with the law of comparative negligence; the liability of the answering Defendants, if any, is limited in direct proportion to the percentage of fault actually attributed to this answering Defendants.

///

**FOURTH AFFIRMATIVE DEFENSE**

The answering Defendants are not legally responsible for the acts and/or omissions of those Defendants named herein as doe or roe Defendant.

**FIFTH AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believes and thereon allege that the Complaint and each and every cause of action contained therein is barred by the Statute of Limitations.

**SIXTH AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that as to each alleged cause of action, Plaintiff has failed, refused and neglected to take reasonable steps to mitigate its alleged damages, if any, thus barring or diminishing Plaintiff's recovery herein.

**SEVENTH AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that Plaintiff unreasonably delayed the filing of his Complaint and the notification of the answering Defendants of the alleged damages for the causes of action alleged against them, all of which has unduly and severely prejudiced the answering Defendants in their defense of the action, thereby barring or diminishing Plaintiff' recovery herein under the doctrine of estoppel.

**EIGHTH AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that Plaintiff unreasonably delayed the filing of its Complaint and the notification of the answering Defendants of the alleged damages for the causes of action alleged against him, all of which has unduly and severely prejudiced this answering Defendants in their defense of the action, thereby barring or diminishing Plaintiff' recovery herein under the doctrine of waiver.

**NINTH AFFIRMATIVE DEFENSE**

The answering Defendants are informed and believe and thereon allege that Plaintiff unreasonably delayed the filing of her Complaint and the notification of the answering Defendants of the alleged damages for the causes of action alleged against them, all of which has unduly and severely prejudiced the answering Defendants in their defense of the action, thereby barring or diminishing Plaintiff' recovery herein under the doctrine of laches.

1

## TENTH AFFIRMATIVE DEFENSE

2   As a separate defense to each alleged cause of action, the answering Defendants deny any

3   wrongdoing, but allege that, in any event, Plaintiff is barred from any recovery for the acts alleged

4   in the Complaint because Plaintiff were *in pari delicto*.

5

## ELEVENTH AFFIRMATIVE DEFENSE

6   By virtue of Plaintiff's unlawful, immoral, careless, negligent and other wrongful conduct,

7   Plaintiff should be barred from recovering against this answering Defendant by the equitable doctrine

8   of unclean hands.

9

## TWELVTH AFFIRMATIVE DEFENSE

10   The answering Defendants are informed and believe and on that basis allege that Plaintiff has

11   failed to join all necessary and indispensable parties to this lawsuit.

12

## THIRTEENTH AFFIRMATIVE DEFENSE

13   The answering Defendants are informed and believe and thereon allege that at no time

14   mentioned herein did Plaintiff, his agents, servants, representative, or predecessors in interest,

15   reasonably rely on the alleged promises or representations allegedly made by the answering

16   Defendants in connection with the claims which are the subject of this litigation.

17

## FOURTEENTH AFFIRMATIVE DEFENSE

18   The answering Defendants are informed and believe and thereon allege that the damages

19   claimed by Plaintiff in the Complaint are speculative.

20

## FIFTEENTH AFFIRMATIVE DEFENSE

21   The answering Defendants are informed and believe and thereon allege that Plaintiff has

22   waived recovery against the answering Defendants with regard to each and every purported cause of

23   action set forth in the Complaint.

24

## SIXTEENTH AFFIRMATIVE DEFENSE

25   The answering Defendants are informed and believe and thereon allege that Plaintiff

26   consented to the acts and omissions complained of in the Complaint.

27   ///

28   ///

9

### SEVENTEENTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that no sufficient intent of this answering Defendant is alleged for commission of the violations alleged in the Complaint.

### EIGHTEENTH AFFIRMATIVE DEFENSE

This answering Defendants are informed and believes and thereon allege that Plaintiff lacks standing to assert the claims alleged in the Complaint.

### NINETEENTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that the answering Defendants have committed no act or omission which caused any damage to Plaintiff.

### TWENTIETH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that any contract between or respecting answering Defendant referred to in the Complaint was ever formed, such that there is no privity of contract between Plaintiff and this answering Defendant.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon alleges that Plaintiff is, or was, guilty of fraud in connection with the contracts referred to in the Complaint such that Plaintiff is not entitled to relief thereunder.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that the consideration for any contract referred to in the Complaint has failed.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that the consideration for any contract referred to in the Complaint was not just or reasonable and Plaintiff should be barred from recovery.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that the consideration for any contract referred to in the Complaint is inadequate.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that the conditions to any liability of this answering Defendant have failed, and Plaintiff is not entitled to any relief requested in the Complaint on file herein.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that Plaintiff has failed to fully perform any contract referred to in the Complaint, and accordingly, Plaintiff is not legally entitled to place the answering Defendants in default with regard thereto.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that Plaintiff has materially breached any contract referred to in the Complaint, thereby relieving the answering Defendants from any further performance thereof.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon allege that Plaintiff has waived, elected to ignore, or are estopped to rely on any tardy performance by the answering Defendants of any term or condition on their part to be performed with regard to any contract alleged in the Complaint.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

The answering Defendants are informed and believe and thereon alleges that Plaintiff has waived, elected to ignore, or is estopped to rely on any breach by the answering Defendants of any contract referred to in the Complaint.

## THIRTIETH AFFIRMATIVE DEFENSE

This answering Defendants are informed and believe and thereon allege that Plaintiff has prevented the answering Defendants from performing the terms and conditions of any contract referred to in the Complaint.

///

///

///

### THIRTY-FIRST AFFIRMATIVE DEFENSE

The answering Defendants alleges that this Court lacks personal and subject matter jurisdiction over the Defendants.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

The answering Defendants alleges that the relief requested by Plaintiff, should be barred, modified, reduced, changed, offset or setoff to reflect sums and liabilities owed to this Defendant by Plaintiff.

### THIRTY- THIRD AFFIRMATIVE DEFENSE

The answering Defendants presently have insufficient knowledge or information upon which to form a belief as to whether it may have additional, yet unasserted, affirmative defenses to the Complaint, and therefore reserve the right to assert additional affirmative defenses in the event discovery indicates it would be appropriate to do so.

### COUNTER-CLAIMS & THIRD PARTY COMPLAINT

### SUMMARY OF CASE

1.     Third-Party Defendants Elizabeth Salen and Denise Cassano conspired to extort and defraud Defendants.

2.     Third-Party Defendant Maurizio Donadi, a former friend and business partner of Defendants, as well as an equity partner of Nico and co-signer of the promissory notes in question, introduced Defendants Hannula and Haller to Cassano.

3.     Cassano, who was surreptitiously working in concert with Salen, proceeded to use pressure tactics, fraud and manipulation to gain financial and legal control over Nico, to intentionally destabilize the company, and to deceive and pressure Defendants into signing promissory notes with personal guarantees (purportedly obligating Defendants to Focus 15), to embezzle a portion of the funds from Nico while further destabilizing the company and further attempting to further take advantage of Defendants, and once the schemes became known to vacate the company.

4.     Cassano held herself out to Defendant as being independent of Focus 15 and Salen. Unbeknownst to Defendants, Cassano was actually working in concert with Salen and Focus 15,

apparently with the assistance of Donadi, as part of their scheme to defraud Defendants.  Cassano and Salen are long-time business partners.  Cassano did not inform Defendant of her relationship with Salen or of the conflict of interest.  Cassano and Salen used Focus 15, as well as Cassano's corporate entity Advanced Accounting Solutions, as fronts for their fraudulent schemes.

5.      Defendant have since learned that Cassano and Salen appear to have conspired to defraud a number of other similarly situated individuals and companies, playing nearly identical roles and using similar deception, pressure and manipulation.  Upon information and belief, Cassano is also involved in and guilty of additional fraud, dishonest and unethical practices with regard to vulnerable financial investors under her charge.  Defendants are only two of Cassano and Salen's many victims.

## **PARTIES**

6.      Counter-Claimants and Third-Party Complainants Ian Hannula and Joseph Haller are partners, residents of San Francisco, and principals of Nico Corporation.

7.      Plaintiff Focus 15, LLC, is a New York Limited Liability Company.

8.      Third-Party Defendant Elizabeth Salen is a resident of Brooklyn, New York, and principal managing member of Focus15.

9.      Third-Party Defendant Denise Cassano is a resident of the state of Massachusetts, and principal of Third-Party Defendant Advanced Accounting Solutions, Inc.

10.     Third-Party Defendant Advanced Accounting Solutions, Inc., is a Massachusetts Corporation with a principal place of business in Massachusetts but doing business in the State of California.

11.     Third Party Defendant Maurizio Donadi is a California resident, shareholder in Nico Corporation, and co-signer and personal guarantor on the promissory notes in question, the fact that Focus 15 has not sued him in this case notwithstanding.

12.     The true names or capacities, whether individual, associate, corporate, or otherwise of Third-Party Defendants charged in this Complaint as ROES 1 through 50, inclusive, and each of them, are unknown to Defendants, who therefore sues said Third-Party Defendants by such fictitious names.

As soon as their respective true names are capacities have been ascertained, Defendants and Cross-Complainants will amend this Third-Party Complaint to show the same.

13. Defendants and Third-Party Complainants are informed and believe, and on that basis allege, that each of the fictitiously named Third-Party ROE Defendants is responsible in some manner for the occurrences herein alleged and that the injuries herein alleged were caused, directly and/or proximately, by each of said Third-Party Defendants acts or omissions. Cross-Complainants will amend this Third-Party Complaint to show the same.

14. Defendants and Third-Party Complainants are further informed and believe, and on that basis alleges, that at all times herein mentioned, the Plaintiff and each of the Third-Party Defendants was the agent of each of the other and was acting within the course and scope of such agency in acting or failing to act as hereinafter set forth.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. In 2015, Hannula and Haller approached Donadi, who had previously worked as an advisor for one of Ian Hannula's companies, for investment in Ian Hannula and Joseph Haller's company, Nico Corporation.

16. Donadi told Hannula and Haller that he would invest $100,000.00 into Nico in exchange for a 30% partnership share of Nico (hereinafter "Nico Partnership Agreement").

17. On or about September 18, 2015, Donadi introduced Hannula and Haller to Cassano and stated that Cassano had been Donadi's trusted financial adviser for 17 years and that she would draft the Nico Partnership Agreement.

18. Cassano is the Chief Executive Officer (CEO), President, Treasurer, Secretary and Director of Third-Party Defendant Advanced Accounting Solutions, Inc. (hereinafter "AAS").

19. Donadi recommended to Hannula and Haller that Cassano take over the finances of Nico.

20. On or about January 11, 2016, Cassano e-mailed Hannula, Haller and Donadi a final version of the Nico Partnership Agreement which was subsequently signed by all parties.

///

21.     The Nico Partnership Agreement stated that each partner's ownership share of Nico will be Ian Hannula (35%), Joseph Haller (35%), and Maurizio Donadi (30%).

22.     One of the immediate goals of the partnership was to secure funding for Nico.  Cassano represented to Hannula and Haller that she would secure funding and investment for Nico.  Specifically, Cassano represented to Hannula and Haller that she could raise money for Nico and guide the company to financial success.  Cassano also represented that she would be able to take over bookkeeping and accounting for Nico, and act as its Chief Financial Officer ("CFO").  Donadi and Cassano then used pressure and persuasion to convince Hannula and Haller to give Cassano financial control of Nico.  On or about February 6, 2016, Cassano, through AAS, made Nico her client, took over the bookkeeping and accounting for Nico and became the CFO of Nico.

23.     Upon becoming CFO of Nico and taking control of Nico's finances, Cassano engaged in a pattern of false statements, pressure tactics, self-dealing, and other actions which destabilized Nico.  Cassano's actions included undermining long-term relationships with Nico vendors, using AAS vendors which did not provide the necessary services, threating Nico employees and otherwise causing operational dysfunction, sabotaging other potential investors in Nico, concealing and misleading Hannula and Haller as to the financial condition of Nico, and mismanaging Nico funds, including directly embezzling funds from Nico.

24.     Cassano used her deception, pressure, and the destabilized state of Nico that she caused to pressure Defendants into signing promissory notes with personal guarantees.  Cassano falsely represented to Hannula and Haller that she had investors who wished to become equity partners in Nico, but that before that could happen, Nico necessarily had to take loans at a high interest rate, and to personally guarantee said loans.  Specifically, Cassano pressured Hannula and Haller to sign promissory notes from Focus 15, whom she introduced to Hannula and Haller, while simultaneously discouraging or preventing funding from other sources.

25.     Cassano presented Focus 15 and Salen as being unaffiliated with Cassano and AAS.  At all times, Cassano acted as the sole intermediary between Hannula and Haller on the one hand and Salen on the other, and even took actions to actively prevent Hannula and Haller from actually meeting with or talking to Salen, their repeated request to do so notwithstanding.  What Hannula and

Haller did not know at that time was that Cassano was actually long-term business partners with Salen, was secretly working as an agent for Focus 15, and was apparently working with Salen to undermine Nico and pressure Hannula and Haller into signing the promissory notes and personal guarantees.

26.     Neither Cassano nor Salen informed Hannula or Haller of Cassano's direct affiliation with Salen and Focus 15 and resulting conflict of interest.  Had Hannula and Haller knew of Cassano's conflict of interest and relationship with Salen and Focus 15, then they would never have signed the promissory notes, and would never have given Cassano the legal leverage that she possessed as CFO in charge of Nico's finances.

27.     Cassano and Salen also used their long-standing relationship with Donadi to further pressure Hannula and Haller.  Donadi actively pressured Hannula and Haller to trust Cassano's judgment and do what she told them to do.  What Hannula and Haller did not know at the time was that Donadi also had a personal business relationship with not only Cassano but also with Salen. Donadi did not disclose this conflict of interest to Hannula and Haller.

28.     But-for Cassano's lies, manipulations, pressure tactics, and destabilization of Nico, Hannula and Haller would not have signed the promissory notes and personal guarantees at issue in this case.  Upon information and belief, Salen was an active participant in these schemes, which were also aided by Donadi's actions.

29.     Cassano subsequently used these promissory notes as leverage to further pressure and threaten Hannula and Haller, in an effort to take additional control of Nico.  Cassano also aggressively pressured Hannula and Haller to sign a new promissory note with Focus 15, purporting to consolidate the four previous notes but with more onerous terms including a stipulated judgment with a 24% interest rate, and also seeking to remove Donadi from the loans.  Cassano misrepresented the terms and conditions of this new anticipated promissory note, as the promissory note drafted by Cassano included terms and conditions which were contrary to those purported by Cassano.  Upon information and belief, Cassano was actively working with Salen and Donadi in her efforts to gain further control of Nico, conduct further self-dealing, and further pressure the Defendants to sign even more onerous promissory notes.  In August of 2017, Cassano threatened Ian Hannula that she would "come after

him" and "tear him down" if he did not sign the new consolidated promissory note.  At that point, Hannula and Haller became uncomfortable with the entire situation and terminated their business relationship with Cassano.

**FIRST CAUSE OF ACTION**
**(Fraud/Deceit)**
**(Against Focus 15, Cassano, Salen and AAS)**

30.    Cross-Complainants reallege and incorporate by reference the allegations contained within paragraphs 1 to 29, as stated herein.

31.    The tort of fraud (deceit) occurs when a person knowingly makes a false statement to another or suppresses facts and information that they have a duty to disclose in a manner which is likely to mislead another, with the intent to induce the person to act in reliance thereon.  (California Civil Code §§1709-1710).  Victims of fraud may be entitled to compensatory damages, damages for emotional distress, and/or punitive damages.  (California Civil Code §§ 1709, 1734).

32.    Cassano, as an individual and on behalf of AAS, and acting as an agent for Salen and Focus 15, made false statements and representations to Defendants about her qualifications, about her ability to procure financing for Nico, about her actions in Nico and the financial condition of Nico, and about her relationship with Focus 15 and Salen.  Cassano also failed to disclose and actively suppressed the true nature of her relationship with Salen and Focus 15 and the conflict of interest created thereby.

33.    Salen, as an individual and on behalf of Focus 15, failed to disclose and worked with Cassano to suppress the true nature of Cassano's relationship with Salen and Focus 15 and the conflict of interest created thereby.

34.    Cassano and Salen knew that said statements, representations, and lack of disclosures were false and misleading.

35.    Cassano and Salen made said statements, representations, and lack of disclosures for the purpose of deceiving Defendants, so as to gain financial control of Nico and pressure Defendants into executing onerous promissory notes with personal guarantees, thereby to potentially exposing their personal assets.

36.     Defendants relied on Cassano, as an individual and on behalf of AAS, and upon Salen, as an individual and on behalf of Focus 15, to be truthful about their intentions and the nature of their relationship.

37.     Defendants' reliance on the false statements, misrepresentations and lack of disclosure of Cassano and Salen were justified and reasonable, and induced Defendants into signing promissory notes with Focus 15.  Had Defendants known about Cassano's conflict of interest, they would never hare agreed to sign said promissory notes, nor would they have given Cassano power over Nico's finances, thereby allowing Cassano to embezzle Nico funds and otherwise harm Nico.

38.     Cassano and Salen's false statements and representations and suppression of information are the direct and proximate cause of actual economic harm to Defendants.

39.     Defendants have suffered emotional distress as a direct and proximate result of the fraud perpetrated by Cassano and Salen, on behalf of themselves and Focus 15/AAS.  As a result, Defendants are entitled to compensatory damages, punitive damages, and damages for emotional distress.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
### (Against Focus 15, Cassano, and AAS)

40.     Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 39, as stated herein.

41.     The tort of negligent misrepresentation occurs when a person makes an assertion as a fact of something that is not true and without reasonable grounds for believing the assertion to be true, with the intent to induce that person to act in reliance on the assertion.  (California Civil Code §§1709-1710(2)).  Persons harmed by negligent misrepresentation may be entitled to compensatory damages.  (California Civil Code §1709).

42.     Cassano, as an individual and on behalf of AAS, and acting as an agent for Focus 15, made false statements and representations to Defendants about her qualifications, about her ability to procure financing for Nico, about her actions in Nico and the financial condition of Nico, and about her relationship with Focus 15 and Salen.

///

43. Cassano made these false statements and representations without reasonable grounds for believing that they were true, and with the intent to induce Defendants to act in reliance on them.

44. Defendants did, in fact, reasonably and justifiably act in reliance upon these false statements and representations in giving Cassano power over Nico's finances, which resulted in serious harm to Nico, and when signing various promissory notes with Focus 15. But-for Cassano's false statements and representations, Defendants would never have become involved with Cassano or Focus 15, and certainly never would have signed the promissory notes.

45. Cassano, acting as an individual and on behalf of AAS and Focus 15 are the direct and proximate cause of actual financial harm to Defendants, entitling Defendants to compensatory damages.

**THIRD CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Against Cassano and AAS)**

46. Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 45, as stated herein.

47. As the CFO of Nico and President of AAS, Cassano was required to perform all of her duties in good faith, in a manner she believed to be in the best interests of Nico and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. Corporate officers stand in fiduciary relationship to their corporations. (*Bancroft-Whitney Co. v. Glen* (1966) 64 Cal.2d 327, 345).

48. In taking the actions described above, Cassano did not exercise the care required of an officer when she secured onerous promissory notes between Nico and Focus 15, did not disclose the conflict of interest between Nico and herself and Focus 15, caused operational disfunction in Nico, sabotaged growth in Nico, threatened Ian Hannula and Joseph Haller, mismanaged and embezzled Nico funds, and otherwise made decisions and took actions that harmed Nico.

49. As a proximate result of the acts of Cassano as herein described, Defendants have been damaged in such sums as will be demonstrated at trial according to proof.

///

1

2

3

**FOURTH CAUSE OF ACTION**
**(Negligence)**
**(Against Cassano and AAS)**

4        50.      Defendants reallege and incorporate by reference the allegations contained within

5    paragraphs 1 to 49, as stated herein.

6        51.      As the CFO of Nico and President of AAS, Cassano and AAS had a duty to use

7    reasonable care in the management of the corporate affairs of Nico.

8        52.      In taking the actions described above, Cassano did not exercise reasonable care with

9    respect to her corporate duties, in that she secured promissory notes between Nico and her client

10   Focus 15, did not disclose the conflict of interest between Nico and Focus 15, caused operational

11   disfunction, sabotaged growth, threatened Ian Hannula and Joseph Haller, mismanaged and

12   embezzled funds, and took other actions that harmed Nico.

13       53.      As a proximate result of the acts of Cassano and AAS, herein-above described, Nico

14   has been damaged financially and continues to be damaged financially in such sums as will be

15   demonstrated at trial according to proof.

16

17

18

**FIFTH CAUSE OF ACTION**
**(Negligence Per Se)**
**(Against Cassano and AAS)**

19       54.      Defendants reallege and incorporate by reference the allegations contained within

20   paragraphs 1 to 53, as stated herein.

21       55.      At all times relevant to this litigation, there was in effect California Corporations Code

22   Section 1500 which requires corporations to keep "adequate and correct books and records."

23       56.      As CFO of Nico and President of AAS, Cassano and AAS violated California

24   Corporations Code Section 1500 in that they kept incomplete and inadequate corporate financial

25   records and refused Defendants' requests to inspect corporate records.

26       57.      In taking the actions described above Cassano and AAS did not exercise reasonable

27   care with respect to their corporate duties, in that Cassano secured promissory notes between Nico

28   and her client Focus 15, did not disclose the conflict of interest between Nico and Focus 15, caused

operational disfunction, sabotaged growth, threatened Ian Hannula and Joseph Haller, mismanaged and embezzled funds, and made decisions that harmed Nico.

58.     As a proximate result of the above-described statutory violation, Nico has been damaged financially and continues to be damaged financially in such sums as will be demonstrated at trial according to proof.

**SIXTH CAUSE OF ACTION**
**(Indemnity)**
**(Against Focus 15 and All Third-Party Defendants)**

59.     Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 58, as stated herein.

60.     Defendants are informed and believes and thereon alleges that Focus 15 and all Third-Party Defendants, and each of them, were in some way torturously responsible for causing the occurrence of events and happenings herein referred to, including the damages, if any, accruing to Defendants, and are directly responsible to indemnity Defendants and to hold Defendants harmless for any and such obligations.

61.     By reason of the foregoing allegations, if Plaintiff recovers judgment against Defendants, then Defendants are entitled to a judgment, over and against the parties stated herein, and each of them, for their fair share of Plaintiff's Judgment.

**SEVENTH CAUSE OF ACTION**
**(Contribution)**
**(Against Focus 15 and All Third-Party Defendants)**

62.     Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 61, as stated herein.

63.     By reason of the foregoing allegations, Defendants will be damaged to the extent that they must pay any sum, or any sum in excess of a proportionate amount of their liability, if any, as assessed by the trier of fact.

64.     Accordingly, if Defendants are held liable for any part of the claims asserted against them in Plaintiff's Complaint, then Defendants are entitled to equitable contribution by the parties

stated herein, and each of them, proportionate to each of said parties' share of liability because they are being jointly and severally liable under the promissory notes.

65.     Consistent with the foregoing, Third-Party Defendant Maurizio Donadi is a 30% equity owner of Nico, and also a co-signer and personal guarantor on the promissory notes at issue in this case, and as such an indispensable party in this case.  To the extent that Defendants are held liable for said damages pursuant to said promissory note(s), then Donadi is also jointly and severally liable. Upon information and belief, Donadi was not named as a Defendant by Focus 15 due to the supporting role that he played in the aforementioned fraudulent schemes.

## EIGHTH CAUSE OF ACTION
### (Declaratory Relief)
### (Against All Cross-Defendants)

66.     Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 65, as stated herein.

67.     A dispute has arisen and an actual controversy now exists between the Defendants and the other parties in this case, and each of them, concerning their respective rights and duties, in that Defendants contend that they are entitled to indemnity from said parties, and each of them, by virtue of the theory of equitable indemnity. Defendants are informed and believe and thereon allege that said parties, and each of them, oppose and deny the above contentions and contend that Defendants are not entitled to indemnity or contribution from any of said parties named herein.

75.     A declaration of rights is necessary and appropriate at this time so that Defendants may ascertain their rights and duties, because no adequate remedy, other than as prayed for, exists by which the rights of the parties may be determined.

## NINTH CAUSE OF ACTION
### (Civil RICO)
### (Against Focus 15, Cassano, Salen, and AAS)

66.     Defendants reallege and incorporate by reference the allegations contained within paragraphs 1 to 65, as stated herein.

///

22

FIRST AMENDED ANSWER, COUNTERCLAIMS AND THIRD PARTY COMPLAINT

67.     Cassano and Salen, both individually and on behalf of Focus 15 and AAS, formed an enterprise within the meaning of 18 U.S.C. § 1961(4).  Said enterprise is ongoing, for the shared and common purpose of engaging in fraudulent and extortionate schemes against multiple persons and entities, including the Defendants.  Said schemes include 1) Cassano inserting herself into small, vulnerable companies and gaining financial control of said company; 2) Cassano using fraudulent and extortionate means to destabilize and embezzle money from said company; 3) Cassano and Salen actively concealing the their enterprise and the nature of their relationship from the company and its principals; 4) Cassano using fraudulent and extortionate means to pressure said company into taking unnecessary and onerous loans from Focus 15, with personal guarantees from the company's principals, so as to expose the principals to personal liability; 5) Cassano and Salen using said loans to further extort and steal from said company, or else collect the personal assets of the principals.

68.     In furtherance of their enterprise against Defendants, Cassano and Salen engaged in a pattern (more than two acts) of racketeering activity comprised of the predicate acts of extortionate credit transactions (18 U.S.C. §§ 891-894), extortion pursuant to California law (CA Penal Code § 518), extortion under federal law (18 U.S.C. § 1951), and wire fraud (18 U.S.C. § 1343).  Cassano and Salen agreed upon and continuously engaged in said pattern of racketeering activity to effectuate the illegal purposes of the enterprise as against the Defendants, as described herein.

69.     The enterprise engaged in and affected interstate commerce, in that Salen and Focus 15 are operating out of New York, Cassano and AAS are operating out of Massachusetts, and the Defendant victims were operating a business engaged in interstate commerce from California.

70.     Cassano and Salen also conspired to engage in the aforementioned pattern of racketeering activity, with each agreeing to specific roles so as to facilitate the predicate acts stated above.

71.     As a direct and proximate result of Cassano and Salen's pattern of racketeering activities against the Defendants, and their agreement and conspiracy to commit the same, Defendants have been injured in their business and property, and as such Defendants are entitled to an award of treble damages, costs and attorney fees, in an amount to be determined at trial.

///

## **PRAYER FOR RELIEF**

WHEREFORE, Defendants pray for judgment against Focus 15 and Third-Party Defendants as follows:

1.       For compensatory damages, as may be determined at trial;

2.       For punitive damages;

3.       For general damages.

4.       For treble damages

5.       For costs and attorney fees

6.       For declaratory relief and judgment for indemnification and contribution.

3.       For such other and further relief as the court deems just and proper.

Dated:  June 25, 2021                         LUNSKI & STIMPERT LLP


By:   /s/ Marc R. Stimpert       
     MARC R. STIMPERT
     Attorneys for Defendants
     NICO CORPORATION, IAN MATTHEW
     HANNULA, and JOSEPH PHILIP HALLER

**PROOF OF SERVICE**
***Focus 15, LLC v. NICO Corporation, et al.***
***Case No. 21-cv-01493-EMC***

I declare as follows:

I am employed by the law office of Lunski & Stimpert LLP, located at 201 Spear Street, Suite 1100, San Francisco, CA 94105, and am over the age of 18 years and am not a party to the within titled cause.  On the date last appearing below, I served the following document(s):

1.   DEFENDANTS' FIRST AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

on the parties, through their attorneys of record by placing true and correct copies thereof:

☐   **By First Class Mail.** I served the documents by enclosing them in a sealed envelope and:

1.   **Depositing** the sealed envelope with the United States Postal Service, with the postage fully prepaid.
2.   **Placing** the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐   **By Facsimile transmission.**  Based on an agreement of the parties to accept service by facsimile transmission, I faxed the documents to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached.

☒   **By Overnight Delivery**.  I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐   **By Messenger Service.**  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and proving them to a professional messenger service for service.  (A declaration by the messenger must accompany this Proof of Service.)

☒   **By e-mail or electronic transmission.**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed this date, July 7, 2021, at San Francisco, California.

/s/ Andrew C. McClelland
Andrew C. McClelland

---

PROOF OF SERVICE                                     Case No. **21-cv-01493-EMC**

## SERVICE LIST

Brendan M. Ford, Esq.
Tyler E. Sanchez, Esq.
Ford & Diulio, P.C.
650 Town Center Dr., Suite 760
Costa Mesa, CA 92626

Tel:    714.450.6830
E-mail:  bford@forddiulio.com

***Attorneys for Plaintiff Focus 15, LLC***