United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC,<br><br>     Plaintiff,<br><br> v.<br><br>NICO CORPORATION, et al.,<br><br>     Defendants. | Case No.  21-cv-01493-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS DEFENDANTS' SECOND AMENDED THIRD-PARTY COMPLAINT; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket Nos. 42, 44, 47 |

## I.   INTRODUCTION

Plaintiff Focus 15, LLC and Defendant NICO Corp. entered into four promissory notes between 2016 and 2017 for $225,000 in total.  Ian Hannula, Joseph Haller, and Maurizio Donadi each had ownership of NICO Corp. under a partnership agreement.  When NICO Corp. failed to repay its loans, Focus 15 sued NICO Corp., Hannula, and Haller (collectively "Defendants"), asserting Civil RICO, breach of contract, money had and received, unjust enrichment, and unfair competition claims.  Defendants subsequently filed a Third-Party Complaint against Donadi and NICO Corp.'s bookkeeper and accountant, Denise Cassano and Advanced Accounting Solutions, Inc. ("AAS").  Defendants seek indemnity, contribution, and declaratory relief against the third-party defendants.

Pending before the Court is Donadi, Cassano, and AAS's motions to dismiss Defendants' Second Amended Third-Party Complaint ("SATPC"), as well as Defendants' motion for judgment on the pleadings.

## II.   FACTUAL & PROCEDURAL BACKGROUND

A.   Focus 15's Complaint

Focus 15 alleges in the Complaint that NICO Corp. entered into four promissory notes in which Focus 15 loaned NICO Corp. a total of $225,000 as follows:

1. On February 23, 2016, NICO Corp. entered into a written promissory note with Focus 15 in which Focus 15 agreed to loan NICO Corp. hundred thousand dollars ($100,000.00).  Docket No. 1 ("Complaint") at 3.  NICO Corp. agreed to make payments on the note each month beginning on April 1, 2016, through the maturity date on March 1, 2020.  *Id.*

2. On June 1, 2016, NICO Corp. entered into a second written promissory note in which Focus 15 agreed to loan NICO Corp. fifty thousand dollars ($50,000.00).  *Id.* NICO Corp. agreed to make payments each month beginning on July 1, 2016, through the maturity date on June 1, 2020.  *Id.*

3. On July 31, 2016, NICO Corp. entered into a written promissory note with Golden Focus, LLC for fifty thousand dollars ($50,000.00).  *Id.*  NICO Corp. agreed to make payments each month beginning on August 15, 2016, through the maturity date on August 15, 2020.  *Id.*  On or around July 17, 2017, Golden Focus assigned the note to Focus 15.  *Id.*

4. On February 15, 2017, NICO Corp. entered into a written promissory note with Focus 15, in which Focus 15 agreed to loan NICO Corp. twenty-five thousand dollars ($25,000.00).  NICO Corp. agreed to make payments each month beginning on December 1, 2016.  *Id.* at 3–4.  NICO Corp. also agreed to pay fifty percent (50%) of the loan by March 15, 2017, and the entire outstanding balance of the loan by April 15, 2017.  *Id.* at 4.

Hannula and Haller signed a guaranty for each of the promissory notes.  *Id.* at 3–4. According to Focus 15, Defendants failed to make payments on any of the notes and never intended to pay these loans back.  *Id.* at 4.  Focus 15 alleges that Defendants' acts of entering into these promissory notes and accepting the loan proceeds with no intention of paying them back

1   constitute a fraudulent scheme.  *Id.*

2   B.      Defendants' Third-Party Complaint

3           On September 27, 2021, Defendants filed the SATPC against Cassano, AAS, and Donadi

4   as follows:

5           In 2016, Hannula, Haller, and Donadi entered into an agreement in which Donadi would

6   invest $100,000.00 into NICO Corp. in exchange for a 30% partnership share ("Nico Partnership

7   Agreement").  Docket No. 41 ("SATPC") at 13–14.  The Nico Partnership Agreement stated that

8   each partner's ownership share would be Hannula (35%), Haller (35%), and Donadi (30%).  *Id.*

9   Donadi then recommended that Cassano, his financial advisor and the Chief Executive Officer,

10  President, Treasurer, Secretary, and Director of AAS, take over the finances of NICO Corp. in the

11  position of Chief Financial Officer.  *Id.* at 13–14.  Cassano thereafter convinced Hannula, Haller,

12  and Donadi to take out a series of loans from Focus 15 between 2016 and 2017.  *Id.*  Hannula,

13  Haller, and Donadi all signed personal guarantees of said loans with respect to the 2016 loans, and

14  Hannula and Haller signed a personal guarantee with regards to the 2017 loan.  *Id.*

15                          **III.      LEGAL STANDARD**

16  A.      Motion to Dismiss

17          Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

18  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

19  complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R.

20  Civ. P. 12(b)(6).  To overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss after the Supreme

21  Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v.*

22  *Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . .

23  suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d

24  1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and

25  construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

26  *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

27  complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

28  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

United States District Court
Northern District of California

effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.  <u>Motion for Judgment on the Pleadings</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rules 12(c) analog" because the motions are "functionally identical."  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, when considering a Rule 12(c) motion, a district court "must accept the facts as pled by the nonmovant."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011).  The district court then must apply the *Iqbal* standard to determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief."  *Id.* at 1054 & n.4 (citing *Iqbal*, 556 U.S. at 662).

## IV.   <u>DISCUSSION</u>

A.  <u>AAS & Cassano's Motion to Dismiss Defendants' SATPC</u>

AAS and Cassano dispute Focus 15's representation that NICO Corp. made no payments.  *See* Docket No. 42.  Defendants have since conferred with Focus 15's counsel, who clarified that payments were made prior to April 2017, as represented by AAS and Cassano.  Docket No. 48 at 2.  As such, Defendants do not object to the dismissal of the claims against Cassano and AAS.  *Id.*

Accordingly, the Court **GRANTS** AAS and Cassano's motion to dismiss without prejudice.

///

///

///

///

4

United States District Court
Northern District of California

B.   Donadi's Motion to Dismiss Defendants' SATPC

1.   Indemnity and Contribution

a.   Lack of Money Judgment

Donadi argues that because a money judgment has not yet been rendered in this action, Defendants cannot assert a right of contribution and indemnification against him.  Docket No. 44 ("MTD") at 8.  Donadi cites *Sullins*, in which the court specifically required a judgment or a settlement prior to a claim of equitable indemnity or contribution.  *Id.* (citing *Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010)).

However, courts have distinguished *Sullins* when Federal Rule of Civil Procedure 14(a) applies.  For example, in *Mehta v. Medovich*, the defendant filed a cross-complaint for equitable indemnification and contribution under Rule 14.  No. 18-CV-04373-RS, 2019 WL 7841861, at *1 (N.D. Cal. Apr. 29, 2019).  The cross-defendants moved to dismiss the case and argued that the defendant's claim for contribution was premature because no judgment had yet been entered against him.  *Id.* at *2.  The *Mehta* court disagreed and concluded:

> Under the doctrine of equitable contribution, a tortfeasor may seek to distribute the damages for which he or she is liable equally among all tortfeasors.  A defendant may seek contribution from a third-party even though the defendant's claim is purely inchoate—i.e., has not yet accrued under the governing substantive law.  Indeed, Rule 14(a) expressly allows a defendant to file a third-party complaint against a non-party "who is or may be liable to it for all or part of the claim against it."

*Id.* at *3 (internal quotation marks and citations omitted); *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241-42 (D. Nev. 2008) ("Rule 14(a) is, in effect, a recognition that where procedurally it is possible to bring all related liability and indemnity or contribution claims in a single action, the interests involved are sufficiently concrete to permit accelerated adjudication of the inchoate claims."); *see also Tan v. Quick Box, LLC*, No. 3:20-CV-01082-H-DEB, 2021 WL 2473948, at *5 (S.D. Cal. June 16, 2021) ("The . . . Defendants argue that California courts have held that a claim for contribution may not be asserted absent the existence of a joint obligation or money judgment . . . But the Ninth Circuit has clearly held that "a claim for equitable indemnity or contribution can be properly made in the same proceeding that initially determines liability.")

1    (citing *Hoffman v. May*, 313 Fed. Appx. 955, 958 (9th Cir. 2009).

2          Other courts that discussed this issue in the context of subject-matter jurisdiction and

3    standing also explained:

> To dismiss [the third-party plaintiff's] claims here for lack of
> subject-matter jurisdiction would contravene the purpose of Rule 14,
> which "is to promote judicial efficiency by eliminating the necessity
> for the defendant to bring a separate action against a third individual
> who may be secondarily or derivatively liable to the defendant for
> all or part of the plaintiff's original claim."  Dismissing these claims
> now, only to later require [the third-party plaintiff] to open a new
> case, re-serve the same third-party defendants, and obtain responses
> from third-party defendants, would be wasteful.  Under these
> circumstances, the court finds [the third-party plaintiff's] equitable-
> contribution and related claims sufficiently concrete to satisfy article
> III's ripeness requirement.

11   *Hallam v. Gemini Ins. Co.*, No. 12-CV-2442-CAB (JLB), 2015 WL 11237479, at *3 (S.D. Cal.

12   Apr. 8, 2015) (citing *Sw. Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir.

13   1986)); *see also Kormylo v. Forever Resorts, LLC*, No. 13-CV-511 JM WVG, 2015 WL 106379,

14   at *5 (S.D. Cal. Jan. 6, 2015) ("The court . . . concludes that the indemnity claims against the

15   [third-party defendants] are sufficiently ripe for adjudication because they were brought pursuant

16   to Federal Rule of Civil Procedure 14(a), although they have not yet accrued under California

17   law.").

18          In *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), the Supreme Court held that federal

19   courts must apply state substantive law and federal procedural law.  The Supreme Court thereafter

20   clarified the *Erie* doctrine's application to the Federal Rules of Civil Procedure in *Hanna v.*

21   *Plumer*, holding that a federal procedural rule controls regardless of any contravening state law

22   unless the Rule in question transgresses the Enabling Act or constitutional restrictions.  *See* 380

23   U.S. 460, 464, 471 (1965) ("The *Erie* rule has never been invoked to void a Federal Rule.").

24   Federal Rule of Civil Procedure 14 allows the Court to bring all related liability and indemnity or

25   contribution claims in a single action, and because it does not "abridge, enlarge or modify any

26   substantive right" in violation of the Enabling Act.  28 U.S.C. § 2072, it controls here.  Rule 14

27   allows the Court to consider the Defendants' equitable indemnification and contribution claims at

28   this time.  Thus, the Court declines to dismiss Defendants' claims against Donadi's for lack of a

United States District Court
Northern District of California

United States District Court
Northern District of California

1    money judgment.

2          2.     <u>Failure to State a Cause of Action</u>

3             a.     <u>Contribution</u>

According to Donadi, Defendants fail to plead any factual allegations indicating "what Donadi did that makes him share liability for Defendants' failure to pay Focus 15. To the contrary, . . . Donadi did nothing wrong." MTD at 9. However, Defendants correctly state that in "a circumstance in which all limited partners execute guaranties of a partnership debt and there is no other express agreement concerning rights of contribution, equity requires the proportionate obligation for contribution to be based upon the ownership interest of the various guarantors." *Jans v. Nelson*, 83 Cal. App. 4th 848, 859, 100 Cal. Rptr. 2d 106, 114 (2000). Defendants allege in the SATPC that Donadi has a 30% partnership share of NICO Corp. and that he is a personal guarantor on the 2016 promissory notes. SATPC at 14, 18. Thus, Defendants sufficiently state a claim, and the Court **DENIES** Donadi's motion to dismiss for the contribution claim.

             b.     <u>Indemnity</u>

There are two types of indemnity: express and equitable indemnity. *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1157, 202 P.3d 1115, 1119 (2009). Express indemnity arises out of express contractual language. *Id.* Equitable indemnity requires no contractual relationship and is "premised on a joint legal obligation to another for damages" and "subject to allocation of fault principles[.]" *C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700, 256 Cal. Rptr. 3d 806, 816 (2019) (citing *Prince*, 45 Cal. 4th 1151). Parties agree that "[t]he elements of a cause of action for [equitable] indemnity are[:] (1) a showing of fault on the part of the indemnitor, and (2) resulting damages to the indemnitee for which the indemnitor is . . . equally responsible." *Bailey v. Safeway, Inc.*, 199 Cal. App. 4th 206, 217, 131 Cal. Rptr. 3d 41 (2011); Docket No. 64 ("MTD Opp'n") at 4 (citing *Expressions at Rancho Niguel Ass'n v. Ahmanson Devs., Inc.*, 86 Cal. App. 4th 1135, 1139, 103 Cal. Rptr. 2d 895 (2001)); MTD at 6.

Donadi argues that Defendants fail to make a prima-facie showing for equitable indemnity because the SATPC does not allege any wrongdoing on Donadi's part in Focus 15's failure to pay NICO Corp. MTD at 7, 15; Docket No. 49 ("MTD Reply") at 5. In response, Defendants cite

several cases to argue that "California courts have long recognized a right to indemnity and contribution between co-sureties or co-guarantors of a loan obligation." MTD Opp'n at 4. However, the cases cited by Defendants only discuss contribution and not indemnity. To the contrary, California courts generally find that a mere breach of contract is insufficient for an equitable indemnity claim. A California appellate court explained:

> [The plaintiff] asserts that no "predicate' common law tort" is required to support its claim for equitable indemnity against defendants.
> . . .
>
> One factor is necessary, however. With limited exception,[1] there must be some basis for tort liability against the proposed indemnitor.
> . . .
>
> [The plaintiff] alleges defendants breached their duties [to the defendant] by failing to comply with the terms of their contracts. This is not a cognizable claim on which to base equitable indemnity. A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. Instead, [c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies. The only allegations of defendants' misconduct are based on their alleged breach of contract . . . This is an improper attempt to recast a breach of contract cause of action as a tort claim . . . Without any action sounding in tort, there is no basis for a finding of potential joint and several liability on the part of defendants, thereby precluding a claim for equitable indemnity.

*BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 853, 14 Cal. Rptr. 3d 721, 723–24 (2004) (internal quotation marks and citation omitted).

District courts applying California law also recognize that an equitable indemnity claim based merely on a breach of contract is insufficient. For example, a court explained:

> [The defendant] has provided no authority allowing tort damages [under equitable indemnity] for negligent breach of contract where the wronged party had a direct contractual relationship with the party alleged to have breached . . . the California Supreme Court[] instruct[ed] that 'mere negligent breach of contract' does not give rise to tort liability . . . To establish tort liability supporting equitable indemnity, [the defendant] must show that [the third-party

---

[1] These exceptions apply only to specific contexts and are explicitly distinguished by the courts. *See, e.g.*, *Travelers Indem. Co. of Connecticut v. Navigators Specialty Ins. Co.*, 70 Cal. App. 5th 341, 362, 285 Cal. Rptr. 3d 289, 307 (2021) (equitable indemnity claims may be brought in lawsuits between insurance carriers).

United States District Court
Northern District of California

1          defendant] owed [the plaintiff] a duty "completely independent of
        the contract."

2  *Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co.*, No. 14-CV-00930-JCS, 2014 WL

3  4364393, at \*5 (N.D. Cal. Aug. 29, 2014) (citing *Erlich v. Menezes*, 21 Cal.4th 543, 552 (1999));

4  *see also Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis,*

5  *Inc.*, 491 F. Supp. 3d 506, 519 (N.D. Cal. 2020); *Dongguan Beibei Toys Indus. Co. v.*

6  *Underground Toys USA, LLC*, No. CV-1904993-DSFJPRX, 2020 WL 2065034, at \*4 (C.D. Cal.

7  Mar. 2, 2020) (dismissing an equitable indemnity claim because the amended complaint alleged

8  the existence of a contract but failed to allege a joint tort liability).

9         Here, Defendants' sole allegation in support of this claim is that Donadi was "in some way

10  tortiously responsible for causing the occurrence of events and happenings."  MTD at 7 (citing

11  SATPC at 17).  The claim here is based solely on the fact that Donadi was a co-guarantor.  The

12  allegation of tortious wrongdoing is a conclusory statement and does not satisfy the *Twombly* and

13  *Iqbal* standard.  Accordingly, the Court **GRANTS** Donadi's motion to dismiss the indemnity

14  claim.

15                c.     Declaratory Relief

16         Donadi asks the Court to deny Defendants' cause of action for declaratory relief because

17  the indemnity and contribution claims fail.  Because the Court declines to dismiss Defendants'

18  contribution claim, the Court also **DENIES** to dismiss this cause of action.

19  C.    Donadi's Motion to Dismiss Defendants' SATPC

20           1.    Judicial Notice

21  Focus 15 seeks judicial notice of the following documents as exhibits of public record:

22  1.     Exhibit 1: Defendants' SATPC

23  2.     Exhibit 2: State court complaint filed in the San Francisco Superior Court case

24               "*Jonathan Neil & Associates, Inc., v. Nico Corporation [et al.]*"  Case number:

25               CGC-18-571639.

26  Docket No. 52 at 1–2.

27         Rule 12(b)(6) and Rule 12(c) motions are generally confined to the four corners of the

28  complaint and any materials it incorporates, and a district court generally may not consider

United States District Court
Northern District of California

materials outside the pleadings.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

If such materials are presented to the court and not excluded, the motion must be treated as a

motion for summary judgment under Rule 56.  *Knoles v. Teva Pharms. USA, Inc.*, No. 17-CV-

06580-BLF, 2019 WL 295258, at *1 (N.D. Cal. Jan. 23, 2019) (citing Fed. R. Civ. P. 12(d)).  A

district court may consider the following materials without converting a Rule 12(c) motion to a

Rule 56 motion: "(1) exhibits to the nonmoving party's pleading, (2) documents that are referred to

in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially

noticed."  *Id.* (citing *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007)).

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to

reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the

trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy

cannot reasonably be questioned."  Fed. R. Evid. 201.  Specifically, "[courts] may take judicial

notice of undisputed matters of public record, . . . including documents on file in federal or state

courts."  *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Lee*, 250 F.3d at

690; *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803, n.2 (9th Cir. 2002)).  However, "[j]ust because

the document itself is susceptible to judicial notice does not mean that every assertion of fact

within that document is judicially noticeable for its truth . . . a court cannot take judicial notice of

disputed facts contained in such public records."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

988, 999 (9th Cir. 2018).

Defendants do not object to judicial notice of Exhibit 1 but object to Exhibit 2 because

while "a court may take judicial notice of the existence of filings in cases within its own court or

in sister courts[,]" it "may not take judicial notice of the truth (or lack thereof) of the contents of

those filings."  Docket No. 55 at 1–2 (citing *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d

234 (S.D.N.Y. 2002)).  Exhibit 2 is a complaint in *Jonathan Neil & Associates, Inc., v. Nico

Corporation*—a state action against NICO Corp.  The plaintiff in *Jonathan Neil* similarly alleged

that NICO Corp. took out multiple loans and did not pay back any portion of them.  Docket No. 51

("MJOP Opp'n") at 9.  Using this information, Focus 15 attempts to draw an inference that

Defendants did not intend to pay back its loans because Defendants have done the same to other

1   lenders in the past.  *Id.* at 8.

2       Whether "Defendants similarly took out multiple loans and did not pay back any portion of

3   the loans" as Focus 15 contends, are facts that can reasonably be disputed.  Therefore, this fact

4   cannot be judicially noticeable for its truth.  However, as discussed above, a court may take

5   judicial notice of a document without taking judicial notice of reasonably disputed facts contained

6   in the document.  *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 964 (N.D. Cal. 2017)

7   (taking judicial notice of an amended complaint in a different action "not for the truth of the facts

8   recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over

9   its authenticity").  Accordingly, this court **GRANTS** Donadi's motion to judicially notice Exhibit

10  1 and 2.  Specifically, the Court takes judicial notice of the existence of a complaint with similar

11  factual allegations, but not for the truth its contents.

12          2.      RICO (First and Second Causes of Action)

13      Focus 15 asserts RICO claims under 18 U.S.C. § 1962(c) and (d).  Under § 1962(c), it is

14  unlawful for a "person employed by or associated with any enterprise . . . to conduct or participate

15  . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18

16  U.S.C. § 1962(c).  "Under § 1962(d), it is unlawful for a person to conspire to violate, e.g.,

17  subsection (c) above."  *Id.*  To recover under Section 1962(c), a plaintiff must prove: (1) conduct,

18  (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"),

19  (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation.

20  *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

21              a.      Racketeering Activity (Predicate Acts)

22      Focus 15 bases its RICO claims on mail and wire fraud under 18 U.S.C. §§ 1341,

23  1343.  Complaint at 6; 18 U.S.C. § 1961.  Sections 1341 and 1343 prohibit "any scheme or artifice

24  to defraud, or for obtaining money or property by means of false or fraudulent pretenses,

25  representations, or promises."  18 U.S.C. §§ 1341, 1343.  "The mail and wire fraud statutes are

26  identical except for the particular method used to disseminate the fraud, and contain three

27  elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in

28  furtherance of that scheme, and (C) the specific intent to defraud."  *Eclectic Properties East, LLC*,

United States District Court
Northern District of California

751 F.3d at 997.  The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," even if the mailing itself "contain[s] no false information."  *Id.* at 715; *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *6 (S.D. Cal. Apr. 23, 2020) (citing *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (internal quotation marks omitted)).

Further, predicate acts involving fraud for civil RICO claims must be pleaded with particularity as required by Rule 9(b).  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004).  However, a showing of the defendants' state of mind only requires general allegations, and specific intent can be established "by examining the scheme itself."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007); *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984). Therefore, "[t]he only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself[,]" and such allegations "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme."  *Odom*, 486 F.3d at 554; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (internal quotation marks and citations omitted).

Defendants argue that Focus 15 fails to satisfy Rule 9(b)'s heightened pleading standard. Defendants further argue that Focus 15 fails to establish specific intent to defraud because Defendants did make payments between March 2016 and March 2017, and this shows Defendants' intent to pay the loans back.  Docket No. 54 ("MJOP Reply") at 3; Docket No. 47 ("MJOP") at 5–6.  Defendants also contend that Focus 15's allegations do not qualify as "racketeering activity" under the RICO Act and amount to a mere "breach of contract, [which,] in and of itself, is not a predicate act triggering the RICO statute[.]"  MJOP at 3–4.

Focus 15's allegations amount to a mere series of breaches of contracts and fail to allege fraud with particularity.  *See Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) ("[An alleged scheme to induce the plaintiff into entering a contract is] not the type[] of activit[y] that RICO was intended to eliminate.  Any other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' . . . to constitute 'racketeering activity.'"); *River City Markets, Inc. v.*

United States District Court
Northern District of California

1   *Fleming Foods W., Inc.*, 960 F.2d 1458, 1464–65 (9th Cir. 1992) ("a pattern of breach of contract

2   activity . . . even when embellished by the familiar 'racketeering,' is not sufficient to establish a

3   violation of RICO.").  The only paragraph in the Complaint that alludes to fraud is the following

4   sentence: "Defendants never had any intention to pay back these loans.  Defendants' acts of

5   entering into the promissory notes and accepting the loan proceeds constituted a fraudulent

6   scheme to accept funds with no intention of paying them back."  Complaint at 4.  This single

7   assertion that Defendants loaned money with no intention of paying them back is conclusory and

8   insufficient to alleged fraud with particularity, especially since the March 2016 and March 2017

9   loans were paid back.[2]  Thus, the claim fails to establish a RICO activity.

10                          b.    Pattern of Racketeering Activity

11          The pattern element requires that there "be at least two acts of racketeering activity within

12   ten years of one another."  18 U.S.C. § 1962(c).  The predicate acts must: (1) be related, and (2)

13   amount to or pose a threat of continued criminal activity.  *Turner v. Cook*, 362 F.3d 1219, 1229

14   (9th Cir. 2004).  The continuity requirement aims "at eliminating RICO actions against

15   perpetrators of isolated or sporadic acts" and is satisfied if plaintiffs allege either a "past conduct

16   that by its nature projects into the future with a threat of repetition, i.e., open-ended continuity[,]"

17   or "a series of related predicates extending over a substantial period of time, i.e., closed-ended

18   continuity[.]  *Metaxas v. Lee*, 503 F. Supp. 3d 923, 941 (N.D. Cal. 2020) (citing *Sun Sav. & Loan

19   Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987)); *Howard v. Am. Online Inc.*, 208 F.3d 741,

20   749 (9th Cir. 2000).  "A substantial period of time" for closed-ended continuity is more than "a

21   few weeks or months."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989).

22   While duration is an important factor in determining whether closed-ended continuity is satisfied,

23   the Ninth Circuit has declined to adopt bright-line rules based on the temporal length of a scheme.

24

25   [2] Focus 15 also argues that a reasonable inference can be made that Defendants did not intend to
26   pay back the loans because Defendants have done the same to other lenders in the past.  Focus 15
     references Exhibit 2 to argue that the similarities between the *Jonathan Neil* case and the current
27   action shows "a modus operandi of borrowing money from unsuspecting lenders with no intention
     of paying it back" beyond a simple breach of contract case.  *Id.* at 8–9.  However, while the Court
28   may take judicial notice to the extent that a similar allegation exists, it may not consider these
     disputed facts as true for the purpose of this motion.

*See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995).  Furthermore, in determining closed-ended continuity, "courts in this Circuit often consider: (1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries."  *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1012 (C.D. Cal. 2020) (citations omitted).  Courts have therefore held that "'a single alleged fraud with a single victim' does not constitute a closed-ended pattern of racketeering activity."  *Id.* (citing *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987); *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559 SW, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) ("A single plan with a singular purpose and effect does not constitute a [closed-ended] 'pattern' of racketeering activity.")).

Because Focus 15 does not allege conduct that is likely to continue into the future, there is no open-ended continuity.  Thus, only closed-ended continuity is at issue.  Focus 15 contends that the conduct spans from 2015 to the present, including all the dates of the missed payments.  MJOP Opp'n at 7.  Defendants argue that the predicate acts occurred upon signing the promissory notes on February 23, 2016, June 1, 2016, July 31, 2016, and February 15, 2017, which spans a period of less than twelve months.  MJOP at 6.

Focus 15 fails to establish closed-ended continuity.  It only alleges a single scheme against a single victim that occurred within a year.  "[C]ourts routinely find that alleged racketeering activity lasting less than a year does not constitute a closed-ended pattern."  *Barsky v. Spiegel Acct. Corp.*, No. 14-CV-04957-TEH, 2015 WL 580574, at *6 (N.D. Cal. Feb. 11, 2015) (citing *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir.2004); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir.1992); *Orlosky v. Merill*, No. 317CV01701BTMWVG, 2017 WL 7362747, at *2, n.1 (S.D. Cal. Sept. 6, 2017); *Allwaste*, 65 F.3d at 1528.  Although the Ninth Circuit has suggested that a period "as short as thirteen months" may establish closed-ended continuity, *Allwaste, Inc.*, 65 F.3d at 1528, courts have distinguished *Allwaste* because it involved more than a single victim.  *Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2021 WL 2400979, at *8 (N.D. Cal. June 11, 2021) (finding that a single victim and a single goal of a scheme cuts against a finding of closed-ended continuity and emphasizing that "longevity is only one piece of

the puzzle"); *see also Metaxas*, 503 F. Supp. 3d at 941 (citing *Wollersheim*, 971 F.2d at 365–67 ("[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity.")).

Focus 15 asserts a single victim in this case, and the alleged scheme lasted less than one year. Although four contracts were breached, this was "[a] single plan with a singular purpose and effect" that "does not constitute a closed-ended pattern of racketeering activity." *NSI Tech. Servs. Corp.*, 1996 WL 263646, at \*3. Indeed, Focus 15 argues in its opposition brief that Defendants made payments until March 2017 "to create the appearance that Defendants were going to pay back the loans" and to "entice Focus 15 to make [the] other [three] loans to Defendants." MJOP Opp'n at 7–8. According to Focus 15, Defendants ceased paying any amount on the loans upon receiving the $225,000. *Id.* This argument confirms that Defendants' conduct was essentially a single plan or scheme which employed four related contracts. Accordingly, the RICO claim fails the continuity requirement.

For the foregoing reasons, Focus 15's RICO allegations fail to establish both a RICO activity and the continuity requirement, either of which would warrant dismissal of the RICO claims on their own. Thus, the Court GRANTS dismissal of Focus 15's RICO claims.

### 3.   Money Had and Received & Unjust Enrichment (Fourth and Fifth Causes of Action)

The parties dispute the application of the statute of limitations. The Court first considers whether California's "continuing violation doctrine" applies. The continuing violation doctrine "aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192, 292 P.3d 871, 875 (2013) (citations omitted).

Focus 15 seeks to apply the continuing violation doctrine and argues that the statute of limitations did not begin to run until 2020, when the full repayment of the promissory notes became due. MJOP Opp'n at 10–11. According to Focus 15, each month Defendants failed to make payments constituted a separate injury, and Focus 15 suffered its final injury when

United States District Court
Northern District of California

1    Defendants failed to pay back the loans in full on their maturity dates.  *Id.* at 11–12.

2         Defendants argue that the statute of limitations began to run in April 2017, when payments

3    to Focus 15 ceased.  Reply at 6.  Defendants also argue that the continuing violation doctrine has

4    been used almost exclusively in the context of employment discrimination claims and that they are

5    unaware of any case in which the continuing violation doctrine was applied to a quasi-contract

6    cause of action.[3]  Reply at 5.

7         Assuming that the doctrine can be applied to causes of action for money had and received

8    and unjust enrichment, it would not apply here.  "[T]he continuing violation doctrine is

9    inapplicable where a complaint identifies 'a series of discrete, independently actionable alleged

10   wrongs[;] rather, it applies in cases where a 'wrongful course of conduct became apparent[] only

11   through the accumulation of a series of harms[.]'"  *Tawfik v. JPMorgan Chase Bank, N.A.*, No. 20-

12   CV-02946-JSC, 2020 WL 5074398, at *5 (N.D. Cal. Aug. 26, 2020) (citing *Aryeh*, 55 Cal. 4th at

13   1198) (finding the doctrine inapplicable because a series of monthly overcharges constituted a

14   "discrete, independently actionable" wrong and because the wrongful course of conduct was "not

15   made apparent . . . only through an accumulation of overcharges—a single overcharge on its own

16   revealed [the defendant's] wrongful conduct"); *see also Wu v. Sunrider Corp.*, No. 17-4825 DSF

17   (SSX), 2018 WL 6266577, at *7 (C.D. Cal. May 22, 2018), *aff'd*, 793 F. App'x 507 (9th Cir.

18   2019) ("Nothing in Plaintiff's opposition warrants application of the continuing violation doctrine.

19   This is not a case in which a wrongful course of conduct became apparent only through the

20   accumulation of a series of harms.") (citing *Aryeh*, 292 P.3d at 879).  Here, each failure to pay

21   constituted an independent actionable wrong.  Therefore, the continuing violation doctrine does

22   not apply.

23

24   _____

25   [3] Defendants also attempt to argue that unlike a breach of contract claim, the gravamen of the
     money had and received and unjust enrichment claims is the receipt or retention of money;
     therefore, the statute of limitations began to run when Defendants purportedly intended to retain
26   the money loaned—i.e., when payments stopped on or about April 2017.  Reply at 5–6.  However,
     Defendants cite no case law for the proposition that the application of the statute of limitations
27   would differ for these causes of action.  To the contrary, because the underlying basis for the
     unjust enrichment and money had and received claims is the contract, Focus 15 had no reason to
28   suspect any unjust enrichment until there was actually a breach of contract.  Thus, the discovery of
     these causes of action aligns with the breach of contract, making this argument unpersuasive.

16

United States District Court
Northern District of California

1    However, a different doctrine applies to this case – the doctrine of continuous accrual.

2    "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each

3    triggering its own limitations period, such that a suit for relief may be partially time-barred as to

4    older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal. 4th

5    at 1192, 292 P.3d at 875–76.  Continuous accrual applies when there is a continuing or recurring

6    obligation.  *Id.* at 1199, 292 P.3d at 880 ("When an obligation or liability arises on a recurring

7    basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations

8    period.") (citation omitted).  "Accordingly, California courts have held that disputes regarding

9    monthly billing and payments qualify for continuous accrual, with each month triggering a new

10   limitations period." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104–05 (C.D. Cal. 2016) (citing

11   *Tsemetzin v. Coast Fed. Sav. & Loan Assn.*, 57 Cal. App. 4th 1334, 1344, 67 Cal. Rptr. 2d 726

12   (1997) (periodic monthly rent payments owed were a recurring obligation); *Armstrong Petroleum*

13   *Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388–89, 11 Cal. Rptr. 3d 412 (2004)

14   (monthly payments on a gas and oil lease created a recurring obligation)).  "However, unlike the

15   continuing violation doctrine, which renders an entire course of conduct actionable, the theory of

16   continuous accrual supports recovery only for damages arising from those breaches falling within

17   the limitations period[,] . . . limit[ing] the amount of retroactive relief a plaintiff or petitioner can

18   obtain to the benefits or obligations which came due within the limitations period." *Aryeh*, 55 Cal.

19   4th at 1199, 292 P.3d at 880 (citation omitted). Therefore, the theory of continuous accrual "would

20   permit [Focus 15] to sue, but only for those discrete acts occurring within the [relevant limitations

21   period] immediately preceding the filing of [its] suit." *Id.* at 1199–200, 292 P.3d at 881.

22   The statute of limitations for a money had and received claim is two years.  Cal. Civ. Proc.

23   Code § 339 (statute of limitations for an action upon a contract, obligation, or liability not founded

24   upon an instrument of writing); *Warren v. Lawler*, 343 F.2d 351, 360 (9th Cir. 1965) (concluding

25   that the theory of money had and received is subject to the two-year statute of limitations period

26   set forth in Cal. Code. Civ. Proc. § 339(1)).  Despite the existence of a written contract, courts

27   apply the two-year statute of limitations under a quasi-contract theory rather than the four-year

28

statute for written contracts for money had and received claims.[4]  *Rhodeman v. Ocwen Loan Servicing, LLC*, No. ED-CV-182363-JGBKKX, 2019 WL 5955368, at *8 (C.D. Cal. Nov. 12, 2019) (citing *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1188 (C.D. Cal. 2017) (holding that a claim for money had and received is subject to a two-year statute of limitations under Cal. Civ. Code § 339(1) because it is essentially an action on an implied contract).  The applicability of Cal. Civ. Code § 339(1) is also not disputed by Focus 15.  Accordingly, any non-payments within the two years of the filing of the complaint on March 17, 2021, are actionable.  Claims for money had and received for non-payments prior to March 17, 2019 are barred by the statute of limitations.

On the other hand, the statute of limitations for an unjust enrichment claim "is based on the underlying wrong."  *Duke Gerstel Shearer, LLP v. Pursiano*, No. D060374, 2012 WL 4712102, at *5 (Cal. Ct. App. Oct. 4, 2012).  When a claim for unjust enrichment is founded on a quasi-contract theory, courts apply Cal. Civ. Proc. Code § 339(1) to impose a two-year limitations period.  *See Corbrus, LLC v. 8th Bridge Cap., Inc.*, No. 19-CV-10182-CASAFMX, 2021 WL 2781811, at *8 (C.D. Cal. July 1, 2021) (citing *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 721 n.5 (1979)).  On the other hand, a claim for unjust enrichment on the ground of fraud is subject to a three-year limitations period pursuant to Cal. Civ. Proc. Code § 338(d).  *Id.* (citing *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 347, 84 Cal. Rptr. 3d 38, 50 (2008)).  An unjust enrichment claim deriving from a written contract is subject to a 4-year statute of limitations under Cal. Civ. Proc. Code § 337.  *See Joseph v. Am. Gen. Life Ins. Co.*, 495 F. Supp. 3d 953, 962 (S.D. Cal. 2020), *aff'd*, No. 20-56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021) (citing Cal. Civ. Proc. Code § 337) (finding that an unjust enrichment claim deriving from an insurance policy was subject to a 4-year statute of limitations);

---

[4] While this may seem to imply that the court is applying both an implied contract theory for the money had and received claim and a written contract theory for the breach of contract claim, the *Rhodeman* case subsequently explained that a plaintiff may not bring both of these claims at the same time.  *Id.*  The implied contract theory requires a "total failure of consideration"—i.e., nothing of value has been received under the contract.  *Id.*  After establishing the statute of limitations, the *Rhodeman* court discussed the merits of the claim, analyzed the numerous contracts under the money had and received claim, and precluded those that did not constitute a "total failure of consideration."  *Id.*

United States District Court
Northern District of California

1    *see also Sumaron v. Int'l Longshoremen's & Warehousemen's Union*, 450 F. Supp. 1026, 1028

2    (C.D. Cal. 1978).

3         In this case, Focus 15 asserts causes of action for RICO, breach of contract, money had and

4    received, and unjust enrichment.  Because Focus 15 does not sufficiently allege a fraud claim, and

5    its RICO claims fail to state a claim, the three-year statute of limitations does not apply.  Indeed,

6    no allegations of fraud or RICO are discussed in the unjust enrichment section of the Complaint.

7    Complaint at 8.

8         The paragraph in Focus 15's complaint relating to the unjust enrichment cause of action

9    reads as follows:

10   > Between February 2016 and February 2017, Focus 15, and through
     > an assigned note from Golden Focus, loaned a total amount of
11   > $225,000.00 to Defendants.  The money loaned belonged to Focus
     > 15 subject to the terms of repayment of the notes.
12

13   > Defendants were enriched by the loans at the expense of Focus 15.
     > Defendants have retained the enrichment after failing to make
14   > agreed upon payments under the express terms of the notes.

15   > Focus 15 seeks to recover the amount loaned to Defendants plus [the
     > interest rate].
16
     > It is against the principles of equity and good conscience to permit
17   > Defendants to retain what Focus 15 seeks to recover.

18   Complaint at 8.  These allegations sound in breach of contract.  In fact, the allegations are

19   specifically based on the written contracts (promissory notes) and Defendants' failure to pay

20   "under the express terms of the notes."  *Id.* at 8.  Accordingly, the 4-year statute of limitations

21   applies to the unjust enrichment claim, and any payments within four years of the Complaint filed

22   on March 17, 2021 are not barred by the statute of limitations.  Because no conduct falls outside

23   the relevant 4-year period, this cause of action is unaffected by the statute of limitations.

24        4.   California's Business and Professions Code § 17200 (Sixth Cause of Action)

25        Defendants argue that this cause of action is barred by: (1) the statute of limitations, and

26   (2) failing to plead the required elements of the cause of action.  MJOP at 8.  California's Business

27   and Professions Code § 17200 requires that a cause of action be filed "within four years after the

28   cause of action accrued."  Bus. & Prof. Code § 17208.  As discussed above, while the continuing

*United States District Court*
*Northern District of California*

1  violation doctrine is inapplicable, the continuing accrual theory would allow Focus 15 to recover

2  the unpaid obligations within four years prior to the filing of this action.  Because payments

3  stopped in April 2017 and the action was filed in March 2021, the statute of limitations does not

4  bar this cause of action.

5  However, this claim is problematic for a more fundamental reason.  California's Business

6  and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or

7  practice."  "The requirement of pleading fraud with particularity [under Federal Rules of Civil

8  Procedure 9(b)] applies to each of the three prongs, where the claims are based on a unified course

9  of fraudulent conduct."  *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256 (N.D. Cal. 2014) (citations

10  omitted); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("It is well-settled that

11  the Federal Rules of Civil Procedure apply in federal court, irrespective of . . . whether the

12  substantive law at issue is state or federal.") (internal quotation marks and citations omitted).  As

13  discussed above, Focus 15 has failed to sufficiently plead a fraud or RICO claim.  It has only

14  sufficiently pled claims based on breach of contract.  This does not provide a basis for a case of

15  action under § 17200.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1151,

16  63 P.3d 937 (2003) (reiterating that "the UCL is not an all-purpose substitute for a tort or contract

17  action") (internal quotation marks and citations omitted).

18  Accordingly, the Court **GRANTS** Defendants' motion to dismiss this cause of action.

19  ## V.   <u>CONCLUSION</u>

20  For the foregoing reasons, the Court **GRANTS in PART** Donadi's motion to dismiss

21  Defendants' SATPC for the indemnity cause of action for failure to sufficiently allege a tort

22  liability.  The Court **DENIES** Donadi's motion to dismiss the contribution cause of action as well

23  as the declaratory relief cause of action premised on the contribution claim.

24  The Court **GRANTS** AAS and Cassano's motion to dismiss as agreed by the parties.

25  ///

26  ///

27  ///

28  ///

20

1    The Court **GRANTS** Defendants' motion for judgment on the pleadings for the RICO and

2    California Business and Professions Code causes of action and **DENIES** the motion for the

3    Money Had and Received and Unjust Enrichment causes of action, except that the money had and

4    received claim is partially barred by the 2-year statute of limitations.

5    This order disposes of Docket Nos. 42, 44, and 47.

6

7    **IT IS SO ORDERED**.

8

9    Dated: January 28, 2022

10

11    _____

12    EDWARD M. CHEN
     United States District Judge