**FORD & DIULIO PC**
Brendan M. Ford (Bar No. 224333)
BFord@FordDiulio.com
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Telephone: (714) 450-6830

Attorney for Plaintiff FOCUS 15, LLC
and Third-Party Defendant MAURIZIO DONADI

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NICO CORPORATION, a California Corporation; IAN MATTHEW HANNULA, an individual; JOSEPH PHILIP HALLER, an individual; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 3:21-cv-01493-EMC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **18 U.S.C § 1962(c) and § 1964 (CIVIL RICO);**<br><br>(2) **18 U.S.C § 1962(d) and § 1964 (CIVIL RICO CONSPIRACY);**<br><br>(3) **BREACH OF CONTRACT**<br><br>(4) **MONEY HAD AND RECEIVED**<br><br>(5) **UNJUST ENRICHMENT**<br><br>(6) **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**<br><br>**DEMAND FOR TRIAL BY JURY** |

**FIRST AMENDED COMPLAINT**

## I. SUMMARY OF COMPLAINT

1. Focus 15 entered into four separate written promissory notes to loan a total of $225,000.00 to Defendant NICO Corp. between February 2016 and February 2017. Defendants Hannula and Haller signed each contract as guarantors before a notary public.

2. Focus 15 has performed all of its obligations under the promissory notes by actually providing the loan amounts to Defendants.

3. In April 2017, Defendants stopped making monthly payments on each of the four promissory notes in breach of the express terms of the notes proximately causing damage to Focus 15.

4. Defendants did not pay a single penny of the principal of any of the loans.

5. Defendants had no intention of paying back the principal on any of the loans.

6. Defendants' failure to pay back the loans is not unique to Focus 15 as Defendants have a history of defrauding creditors into making loans and not paying them back.

7. By improperly retaining the money given by Focus 15 to Defendants, Defendants have been unjustly enriched.

## II. PARTIES

### A. Plaintiff

8. Plaintiff FOCUS 15, LLC. is now, and at all times mentioned in this complaint was, a New York LLC with its principal place of business in Brooklyn, New York.

### B. Defendants

9. Defendant NICO CORPORATION is now, and at all times mentioned in this complaint was, a California Corporation with its principal place of business in San Francisco, California.

10. On information and belief, Defendant IAN MATTHEW HANNULA is an individual residing in the State of California, County of San Francisco. Hannula is the Chief Executive Officer and President of Defendant NICO Corp. and is a personal guarantor of each of the contracts breached by Defendants here.

11. On information and belief, Defendant JOSEPH PHILIP HALLER is an individual residing in the State of California, County of San Francisco. Haller is the Chief Financial Officer and Secretary of Defendant NICO Corp. and is a personal guarantor of each of the contracts breached by Defendants here.

12. The true names and capacities of Defendants referred to in this Complaint as Does 1 to 50, inclusive, and each of them, are unknown to Focus 15 at this time. Focus 15 is informed and believes that they are in some way responsible for the injury and damages incurred. Focus 15 will amend this Complaint to allege the true names and capacities of Does 1 to 50 when ascertained.

13. Focus 15 is informed and believes and alleges that at all material times each of the Defendants were the agents, servants, directors, managers or employees of the co-defendants, and in doing or omitting the things alleged in this Complaint were acting in an agency, managerial or employment capacity within the course and scope of their authorities, and their acts and conduct were with the permission and consent of the co-defendants. Focus 15 is informed and believes, and therefore alleges that all of the conduct by the individual Defendants that was outside the scope of their authority was known to, authorized and ratified by the co-defendants.

14. Focus 15 is further informed, believes, and alleges that each Defendant designated as a Doe was responsible, negligently, or in some other actionable manner, for the events and happening referred to in this Complaint, which directly or proximately caused injury and damages to Focus 15.

### III.   JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this action under the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (the "RICO Act" or "RICO").

16. This Court also has diversity jurisdiction over this action because at the time the lawsuit was initiated Focus 15 was a New York limited liability company with its principal place of business in Brooklyn, New York, and all Defendants were residents

of the state of California. Defendants Hannula and Haller reside in San Francisco, California. Defendant NICO is a California Corporation with its principal place of business in the state of California. *See Grupo Dataflux v. Atlas Global, L.P.*, 541 U.S. 567, 570-571 (2004) [Discussing jurisdiction based on diversity is determined at the time the action was brought]. As a result, the diversity of citizenship requirement has been met. In addition, the amount in controversy requirement has been met because Defendants obtained loans totaling $225,000 which is over $75,000.

17. This Court has personal jurisdiction over all Defendants and venue is proper because all Defendants are residents of the State of California and within this judicial district. Further, the acts and practices of all Defendants described here occurred in California and within this judicial district, and this Court has jurisdiction over the controversy, which arises out of that conduct.

## IV.   FACTS

18. On February 23, 2016, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 1") in which Focus 15 agreed to loan Defendant NICO Corp. one-hundred thousand dollars ($100,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month beginning on April 1, 2016, through the maturity date on March 1, 2020. Payments from April 1, 2016 through March 1, 2017 were interest only payments, each in the amount of $666.66. Beginning April 1, 2017, payment would be interest and principal, each in the amount of $3,133.64. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 1 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit A**.

19. On June 1, 2016, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 2") in which Focus 15 agreed to loan Defendant NICO Corp. fifty thousand dollars ($50,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month

beginning on July 1, 2016, through the maturity date on June 1, 2020. Payments from July 1, 2016 through June 30, 2017 were interest only payments, each in the amount of $333.33. Beginning June 30, 2017, payments would be interest and principal, each in the amount of $1,566.82. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 2 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit B**.

20. On July 31, 2016, Defendant NICO Corp. entered into a written promissory note with Golden Focus, LLC ("Note 3") in which Golden Focus agreed to loan Defendant NICO Corp. fifty thousand dollars ($50,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the fifteenth day of each month beginning on August 15, 2016 through the maturity date on August 15, 2020. Payments from August 15, 2016 through and including August 14, 2017 were interest only payments, each in the amount of $333.33. Beginning August 15, 2017, payments would be of interest and principal, each in the amount of $1,566.82. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 3 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit C**.

21. On or around July 17, 2017, Golden Focus assigned Note 3 to Focus 15.

22. On February 15, 2017, Defendant NICO Corp. entered into a written promissory note with Focus 15 ("Note 4") in which Focus 15 agreed to loan Defendant NICO Corp. twenty-five thousand dollars ($25,000.00). Defendant NICO Corp. agreed to repay the note subject to eight percent (8%) interest and to make payments on the first day of each month beginning on December 1, 2016. Defendant agreed to pay fifty percent (50%) of the loan by March 15, 2017 and the entire outstanding balance of the loan by April 15, 2017. Defendants Hannula and Haller signed a Guaranty of the note in exchange for ten dollars ($10.00). A true and correct copy of the Note 4 written agreement signed by Defendants and notarized in San Francisco County is attached as **Exhibit D**.

23. On or around April 17, 2017, when the first principal payment on Note 1 became due, Defendants failed to make the agreed upon payments.

24. Defendants have not made a single payment towards the principal on **any** of the notes in breach of the express terms of the written promissory notes.

25. In fact, Defendants never had any intention to pay back these loans.

26. On information and belief, Defendants borrowed money and/or obtained services from at least ten other creditors which Defendants did not pay back:

27. On information and belief, Defendants entered into an agreement with an individual named Hugo Ortega to do production for NICO Corp.'s clothing. The production agreement was for $48,000. Hugo Ortega produced NICO Corp.'s clothing per the terms of the agreement. However, sometime after Hugo produced and delivered the clothing to NICO Corp., one of Defendants' employees, Sherri Lane, received a call from one of Hugo Ortega's employees indicating the Hugo Ortega had not been paid and sought payment from Defendants. Defendants refused and did not pay Hugo Ortega.

28. On information and belief, on or about September 15, 2016, Defendants obtained a $600,000 loan from an individual named Evan Williams. In exchange, Evan Williams was to obtain 3% equity in the company after a second round of loans. Defendants did not pay back the loan. Defendants told one of their employees not to worry about paying back the loan because it was allegedly not in writing. Subsequently, Defendants approached Evan Williams to obtain a second loan which Evan William's declined.

29. On information and belief, on or about November 19, 2012, Defendants obtained a $20,000 loan from an individual named Wendy Dewalt at an 8% interest. The loan was to be paid back by March 15, 2013. Defendants did not pay back the loan. Defendants knew the loan had not been repaid and intentionally waited for the statute of limitations to run to avoid any liability to Wendy Dewalt.

30. On information and belief, Defendants obtained a $32,000 loan from an individual named David Pierce. Defendants did not pay back the loan. Defendants did not

1  intend to pay back that loan because Defendants sought to determine their exposure to
2  liability if there was no written agreement.

3        31. On information and belief, Defendants obtained a $22,000 loan from one of
4  their employees named Sherri Lane. The loan originated from Defendants' failure to pay
5  Sherri Lane wages owed to her. On information and belief, Defendants entered into an
6  agreement with Sherri Lane to turn the wages owed to her into a loan. Defendants did not
7  pay Sherri Lane.

8        32. On information and belief, Defendants entered into an agreement with a
9  company named MH Architects to do work at NICO Corp. MH Architects performed the
10 work. The work performed by MH Architects totaled $5,000. Defendants did not pay for
11 the work performed.

12       33. On information and belief, Defendants took out two loans from Bank of the
13 West:

14     (a) On or about February 11, 2009, Defendants executed a promissory note with
15 Bank of the West for a $150,000 loan. On information and belief, the promissory note
16 was secured by a personal guaranty signed by Defendants and NICO Corps. property.
17 Defendants agreed to make monthly payments on this loan. On or about August 28, 2014,
18 Defendants executed a change in terms of the February agreement decreasing their credit
19 limit to $75,000. On information and belief, Bank of the West assigned its interest in the
20 sums due to a company known as Jonathan Neil & Associates, Inc. Defendants were sued
21 in the California Superior Court because Defendants failed and refused to pay back
22 $73,000 owed.

23     (b) On or about August 28, 2014, Defendants executed another promissory note
24 with Bank of the West in the amount of $61,506.64. On information and belief, the
25 promissory note was secured by a personal guaranty signed by Defendants and NICO
26 Corps. property. Defendants agreed to make monthly payments on this loan. On
27 information and belief, Bank of the West assigned its interest in the sums due to a
28

company to Jonathan Neil & Associates, Inc. Defendants were sued in the California Superior Court because Defendants failed and refused to pay back the $18,000 owed.

34. On information and belief, Defendants also obtained loans from other institutions and did not repay those loans. The loans include but are not limited to a $50,000 loan from Wells Fargo Bank, a $75,000 loan from an entity known as Little Leo Ltd., and $170,000 loan from an entity known as First Tennessee.

35. In total, Defendants borrowed approximately $1,300,000 from at least eleven (11) creditors, including Focus 15, and did not pay back a single penny.

36. Defendants actions of obtaining loans from eleven (11) different creditors and not paying them back constitutes a pattern to defraud creditors by inducing them to make loans when Defendants did not intend to pay them back. **FIRST CAUSE OF ACTION**

**Civil RICO 18 U.S.C. § 1962(c) and 1964**

**(Against All Defendants)**

37. Focus 15 incorporates by reference the allegations in paragraphs 1-36 of this Complaint as though fully set forth here.

38. Defendants formed an enterprise, NICO Corp., and association-in-fact enterprise with the meaning of 18 U.S.C. § 1961(4) (the "Enterprise")

39. The Enterprise is an ongoing organization of Defendants NICO Corp., Hannula, and Haller associated for common and shared purposes, including: (a) conceiving and planning a fraudulent scheme to induce at least eleven (11) creditors, including Focus 15, to make loans that Defendants had no intention of paying back, as described in paragraphs 18-36; and (b) taking overt acts to enter into agreements to obtain loans and accept funds with no intention of paying them back.40. Defendants acts of obtaining loans from at least eleven (11) creditors, including Focus 15, and not paying them back constitutes a pattern because Defendants have a practice of defrauding unsuspecting creditors by inducing them to make loans that Defendants do not intend to pay back. Defendants have engaged in this pattern from at least 2012 through present.

41. All Defendants through the Enterprise engaged in and continue to engage in a pattern of racketeering activity comprised on the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

42. Defendants made false representations to every creditor, including Focus 15, that the loans would be paid back.

43. Defendants knew or had reason to know their representations were false because Defendants did not intend to repay the loans. Examples abound:

(a) Defendants induced Focus 15 to make multiple loans and did not repay the principal on any of the loans. Defendants refused to pay back the loans when Focus 15 attempted to negotiate a repayment of the loans.

(b) Defendants knew they had not repaid the Wendy Dewalt loan and intentionally waited for the statute of limitations to expire to avoid any liability to Wendy Dewalt.

(c) Defendants knew they had not repaid the David Pierce loan and attempted to determine their exposure to liability to David Pierce if there was no written agreement.

(d) Defendants knew they had not repaid the Evan Williams loan and told one of their employees not to worry about paying the loan back because the loan was allegedly not in writing.

(e) Defendants knew Hugo Ortega had not been paid for his work because Sherri Lane received a call from one of Hugo Ortega's employees asking that Defendants pay Hugo Ortega and Defendants refused to pay.

(f) Defendants knew they had not repaid the $91,000 they spent using the Bank of the West lines of credit and refused to pay it back. Defendants were sued in San Francisco Superior Court because they refused to repay the $91,000.

44. The creditors, including Focus 15, did not know Defendants' representations were false because the creditors made the loans in good faith. The creditors did not have any reason to suspect that Defendants had no intention of paying back the loans.

45. Defendants intended to induce each creditor to make the loans by making

- 8 -
**COMPLAINT**

promises Defendants knew they would not keep. Defendants promised every creditor that the loans would be paid back but Defendants reneged on that promise.

46. The Enterprise engaged in or affected interstate commerce because Focus 15 is a New York LLC and its managing member resides in California. Further, Defendants made use of interstate wires and mail to transfer the proceeds of the loans.

47. Each fraudulent inducement to obtain the loans and fraudulent acceptance of funds from each creditor, including Focus 15, constitutes a separate violation and predicate act.

48. Each Defendant in this action has engaged in two or more predicate acts as detailed above.

49. Each Defendant agreed to conduct, and did conduct or participate in, the Enterprise's affairs through a pattern of racketeering activity. Defendants intended their activity to obtain ill-gotten proceeds. Defendants intended their activity to injure Plaintiff Focus 15 in its financial interests.

50. The predicate acts described here are related because they were committed using the same or similar methods and conduct, targeted the same or similar victims, involved the same or similar participants, and were performed for the same or similar purposes. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The predicate acts described here are continuous, occurring from 2012 until the present. That time period represents close-ended continuity. *Id.*

51. By executing the scheme to extort Focus 15, as described above, all Defendants have participated in the scheme to extort Focus 15.

52. Defendants' pattern of racketeering activity damaged Focus 15 in the amount of $225,000 of improperly obtained loan proceeds that Defendants have not paid back and in an amount to be proven at trial for legal costs associated with Defendants' fraudulent scheme to accept funds with no intention of paying them back.

## SECOND CAUSE OF ACTION

## Civil RICO Conspiracy 18 U.S.C. § 1962(d) and 1964

## (Against Defendants)

53. Focus 15 incorporates by reference the allegations in paragraphs 1-52 of this Complaint as though fully set forth here.

54. All Defendants conspired to engage in a pattern of racketeering activity comprised on the predicate acts of mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). Defendants each agreed to facilitate all or some of the predicate acts described in paragraphs 18-36 here. That agreement is manifest by their knowing participation in or support of the predicate acts identified here.

55. By planning and executing the scheme to extort Focus 15, as described above, all Defendants have participated in the scheme to extort Focus 15.

56. As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff Focus 15 has been injured in its business and property as described above.

57. Defendants' pattern of racketeering activity damaged Focus 15 in the amount of $225,000 of improperly obtained loan proceeds that Defendants have not paid back and in an amount to be proven at trial for legal costs associated with Defendants' fraudulent scheme to accept funds with no intention of paying them back.

## THIRD CAUSE OF ACTION

## Breach of Contract

## (Against All Defendants)

58. Focus 15 incorporates by reference the allegations in paragraphs 1-57 of this Complaint as though fully set forth here.

59. Between February 2016 and February 2017, Defendant entered into four promissory notes and guaranties with Focus 15 and Golden Focus (Note 3 was assigned by Golden Focus to Focus 15 on or around July 17,2017) totaling $225,000.00.

- 10 -
COMPLAINT

60. Under the express terms of the promissory notes, Defendants had an obligation to pay Focus 15 monthly payments to repay each of the four notes totaling $225,000 with eight percent (8%) interest.

61. Focus 15 performed all of its obligations under the notes by providing Defendants the sum of each loan, totaling $225,000.00, and compensation for the Guaranties.

62. In or around April 2017, Defendant breached the promissory notes by refusing to make payments under the express terms of the notes.

63. As a proximate cause of Defendants' breach, Focus 15 was damaged in an amount to proven at trial.

64. The express terms of each note allow for the recovery of attorneys' fees, costs and expenses to enforce the Note.

## FOURTH CAUSE OF ACTION
## Money Had and Received
## (Against All Defendants)

65. Focus 15 incorporates by reference the allegations in paragraphs 1-64 of this Complaint as though fully set forth here.

66. Between February 2016 and February 2017, Focus 15, and through an assigned note from Golden Focus, loaned a total amount of $225,000.00 to Defendants. The money loaned belonged to Focus 15 subject to the terms of repayment of the notes.

67. Defendants received and benefited from the receipt of the money. Since approximately April 2017, Defendants have refused to make any further payments on the notes.

68. Under the principles of equity and good conscience, Defendants should not be permitted to keep Focus 15's money loaned to Defendants by Focus 15.

## FIFTH CAUSE OF ACTION

## Unjust Enrichment

## (Against All Defendants)

69. Focus 15 incorporates by reference the allegations in paragraphs 1-68 of this Complaint as though fully set forth here.

70. Between February 2016 and February 2017, Focus 15, and through an assigned note from Golden Focus, loaned a total amount of $225,000.00 to Defendants. The money loaned belonged to Focus 15 subject to the terms of repayment of the notes.

71. Defendants were enriched by the loans at the expense of Focus 15.

72. Defendants have retained the enrichment after failing to make agreed upon payments under the express terms of the notes.

73. Focus 15 seeks to recover the amount loaned to Defendants plus eight percent (8%).

74. It is against the principles of equity and good conscience to permit Defendants to retain what Focus 15 seeks to recover.

## SIXTH CAUSE OF ACTION

## Violation of Business and Professions Code § 17200

## (Against All Defendants)

75. Focus 15 incorporates by reference the allegations in paragraphs 1-74 of this Complaint as though fully set forth here.

76. California Business & Professions Code section 17200 prohibits any unlawful, unfair, and fraudulent business practice.

77. Defendants violated section 17200 but engaging in the unlawful act or practice of defrauding at least eleven (11) creditors, including Focus 15, by obtaining loans with no intention of paying them back.

78. As a result of Defendants' conduct, Focus 15 suffered harm, as described above.

## **PRAYER FOR RELIEF**:

WHEREFORE, Focus 15 prays for judgment in its favor and against Defendants, jointly and severally, and requests that this Court award Focus 15 the following:

A. An award of compensatory damages in an amount to be determined at trial;

B. An award of threefold damages sustained by Focus 15 under RICO, 18 U.S.C. § 1964(c);

C. An award of costs and reasonable attorney fees and expenses incurred by Focus 15 in connection with this action under 18 U.S.C. § 1964(c);

D. Pre-judgment and post-judgment interest on the above damage awards;

E. An order adjudging all Defendants jointly and severally liable, as the law allows, under each cause of action asserted by Focus 15 and for all damages awarded against any Defendant;

F. Such other relief as this Court may deem just.

Dated:  April 4, 2022                                **FORD & DIULIO PC**

By: */s/ Brendan M. Ford*
Brendan M. Ford

Attorney for Plaintiff FOCUS 15, LLC and Third-Party Defendant MAURIZIO DONADI

## JURY TRIAL DEMAND

Plaintiff Focus 15, LLC demands a trial by jury.

Dated: April 4, 2022                     **FORD & DIULIO PC**

By: _/s/ Brendan M. Ford_
     Brendan M. Ford

Attorney for Plaintiff FOCUS 15, LLC and Third-Party Defendant MAURIZIO DONADI

# CERTIFICATE OF SERVICE

I, Eduardo Dominguez, hereby certify as follows:

I am employed in the County of Orange, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 650 Town Center Drive, Suite 760, Costa Mesa, California 92626. On April 4, 2022 I served the following:

## FIRST AMENDED COMPLAINT

on the interested parties in this action, by:

☒  **Service by Email:** by transmitting a true and correct copy electronically under Rule 2.251 of the California Rules of Court to the email addresses listed below. The email was sent from edominguez@forddiulio.com.

Marc R. Stimpert                    marc@lunskilaw.com
Andrew C. McClelland                andrew@lunskilaw.com
Lunski & Stimpert LLP
201 Spear Street, Suite 1100
San Francisco, California 94105

*Attorneys for Defendants and Third-Party Complainants NICO Corporation, Ian Matthew Hannula, and Joseph Philip Haller*

I certify under penalty of perjury that the foregoing is true and correct, and that this Certificate of Service was executed by me on April 4, 2022 at Costa Mesa, California.

/s/ *Eduardo Dominguez*
Eduardo Dominguez