**FORD & DIULIO PC**
Brendan M. Ford (Bar No. 224333)
BFord@FordDiulio.com
650 Town Center Drive, Suite 760
Costa Mesa, California 92626
Telephone: (714) 450-6830

Attorney for Plaintiff FOCUS 15, LLC
and Third-Party Defendant MAURIZIO
DONADI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NICO CORPORATION, a California Corporation; IAN MATTHEW HANNULA, an individual; JOSEPH PHILIP HALLER, an individual; and DOES 1 to 50, inclusive,<br><br>　　　　Defendants.<br><hr>NICO CORPORATION, a California Corporation, IAN MATTHEW HANNULA, an individual, and JOSEPH PHILLIP HALLER, an individual;<br><br>　　　　Third-Party Plaintiffs<br><br>vs.<br><br>DENISE CASSANO, an individual; MAURIZIO DONADI, an individual; ADVANCED ACCOUNTING SOLUTIONS, a Massachusetts Corporation; and ROES 1 -50, inclusive;<br><br>　　　　Third-Party Defendants. | Case No. 3:21-cv-01493-EMC<br><br>**FOCUS 15, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST, SECOND, AND SIXTH CAUSES OF ACTION OF FOCUS 15'S FIRST AMENDED COMPLAINT**<br><br>**Hearing**<br>Date:  June 3, 2022<br>Time: 1:30 PM<br>Department: 5<br>Judge: Hon. Edward M. Chen<br><br>Action Filed: March 3, 2021<br>Trial Date: Not Set |

**FOCUS 15'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.   INTRODUCTION ........................................................................................................ 1

II.  LEGAL STANDARD .................................................................................................. 1

III. RELEVANT FACTS .................................................................................................... 2

IV.  ARGUMENT ................................................................................................................ 5

  A. Focus 15 has Stated Causes of Action for Civil RICO and Civil RICO
     Conspiracy .................................................................................................................. 5

    (1) Conduct ................................................................................................................. 5

    (2) Enterprise .............................................................................................................. 7

    (3) Pattern of Racketeering Activity .......................................................................... 8

    (a) The Predicate Acts Plead by Focus 15 Satisfy Rule 9(b) .............................. 8

    (b) Contractual Disputes May Support a RICO Claim ..................................... 10

    (c) Focus 15 has Adequately Plead a Pattern of Racketeering Activity ............ 12

    (4) Injury to Plaintiff's "Business or Property" ..................................................... 13

  B. Focus 15 has Stated a Cause of Action for Violations of California Business &
     Professions Code § 17200 ........................................................................................ 13

V.   CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*All World Professional Travel Services, Inc. v. American Airlines, Inc.* 282 F. Supp. 2d 1161 (C.D. Cal. 2003) .................................................................................................................. 10

*Allwaste, Inc. v. Hecht*, 65 F. 3d 1523 (9th Cir. 1995) ........................................................... 12

*Arabian American Oil Co. v. Scarfone*, 939 F. 2d 1472 (11th Cir. 1991) ............................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 2

*Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir. 1984) ..................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 2

*Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774 (N.D. Cal. 2016) ................................. 9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F. 3d 990 (9th Cir. 2014) ............. 8

*Edwards v. Marin Park, Inc.*, 356 F. 3d 1058 (9th Cir. 2004) ................................................. 8

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .................................... 12

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005) ....... 5

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....................................................................... 2

*McGowan v. Weinstein*, 505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......................................... 12

*Odom v. Microsoft Corp.*, 486 F. 3d 541 (9th Cir. 2007) ........................................................ 8

*Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256 (N.D. Cal. 2014) ................................................. 13

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F. 2d 1393 (9th Cir. 1986). ............. 9

*Sedima, S.P.R. L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ................................................... 11

*Toranto v. Jaffurs*, 297 F. Supp. 3d 1073 (S. D. Cal. 2018) ............................................. 1, 2

*United States v. Green*, 745 F. 2d 1205 (9th Cir. 1984) ......................................................... 8

**Statutes**

18 U.S.C § 1961(1) .................................................................................................................. 8

18 U.S.C. § 1961(4) ................................................................................................................. 8

18 U.S.C. § 1962(c) ............................................................................................................ 5, 12

Cal. Bus & Prof. Code § 17200 ............................................................................................. 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendants NICO Corporation ("NICO"), Ian Matthew Hannula ("Hannula"), and Joseph Phillip Haller ("Haller") (referred to collectively as "Defendants") engaged in scheme to defraud unsuspecting creditors by obtaining loans Defendants had no intention to pay back. Now that Defendants have been caught in their scheme, Defendants attempt to downplay their scheme as a simple failure to pay back their debts. However, Defendants actions show that their failure to payback those debts was intended because their actions were part of a pattern aimed at enticing unsuspecting creditors to make loans through false promises that Defendants knew they would not keep. Thus, Defendants' motion to dismiss should be denied for the following reasons:

*First,* Focus 15 has made a *prima-facie* showing for its Civil RICO and Civil RICO Conspiracy causes of action. Focus 15 has plead with particularity the underlying fraud that give rise to the RICO claims in compliance with Federal Rule of Civil Procedure 9(b). Contrary to Defendants' claim, case law makes clear that facts surrounding contractual disputes may support a RICO claim. This is especially true when Defendants knew that they did not intend to perform their contractual obligations at the time they entered into the agreements. In addition, Focus 15 has adequately plead a pattern on racketeering activity because Focus 15 has identified at least eleven (11) different victims of Defendants scheme.

*Second,* Focus 15 has made a *prima-facie* showing for violations of the California Business and Professions code § 17200 because Defendants defrauded at least eleven (11) different creditors which included Focus 15.

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1084 (S. D. Cal. 2018). A plaintiff need not allege specific facts "beyond those

1

**FOCUS 15, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

necessary to state his claim and the grounds showing entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court may not dismiss a complaint when plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face". *Id*. "When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, the documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice." *Toranto*, 297 F. Supp. 3d at 1084.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading has been made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000).

## III. RELEVANT FACTS

Between February 2016 and February 2017, Defendants took out four loans totaling $225,000. These loans were evidenced by four promissory notes[1]. *See* First Amended Complaint ("FAC") ¶¶ 18-22; *See also* Request for Judicial Notice ("RJN") Exh 1. Under the terms of the promissory notes, Defendants promised to make monthly principal payments on each of the notes by certain dates. *Id*. Defendants did not make a single payment on the principal of any of the promissory notes. FAC ¶¶ 23, 24. Defendants never intended to pay back Focus 15 because Defendants have a history of taking out loans and not paying them back. FAC ¶¶ 25-36. Defendants borrowed money and/or obtained services from at least ten other creditors whom Defendants did not pay back. FAC ¶¶ 25, 26.

---

[1] Defendants entered into three promissory notes with Focus 15. Defendants also entered into a promissory note with Golden Focus, LLC who assigned the note to Focus 15.

2
**FOCUS 15, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants entered into an agreement with an individual named Hugo Ortega to do production for NICO Corp.'s clothing. The production agreement was for $48,000. Hugo Ortega produced NICO Corp.'s clothing as agreed, however, sometime after Hugo produced and delivered the clothing to NICO Corp., one of Defendants employees named Sherri Lane, received a call from one of Hugo Ortega's employees indicating Hugo Ortega had not been paid. FAC ¶ 27. Defendants refused to pay Hugo Ortega. *Id*.

On or about September 15, 2016, Defendants obtained a $600,000 loan from an individual named Evan Williams. In exchange, Evan Williams was to obtain 3% equity in the company after a second round of loans. Defendants did not pay back the loan. Defendants told one of their employees not to worry about paying back the loan because it was allegedly not in writing. Subsequently, Defendants approached Evan Williams to obtain a second loan which Evan William's declined. FAC ¶ 28.

On or about November 19, 2012, Defendants obtained a $20,000 loan from an individual named Wendy Dewalt at an 8% interest. The loan was to be paid back by March 15, 2013. Defendants did not pay back the loan. Defendants knew that the loan had not been repaid and intentionally waited for the statute of limitations to run to avoid any liability to Wendy Dewalt. FAC ¶ 29.

Defendants obtained a $32,000 loan from an individual named David Pierce. Defendants did not pay back the loan. Defendants did not intend to pay back the loan because Defendants sought to determine their exposure to liability if there was no written agreement. FAC ¶ 30.

Defendants obtained a $22,000 loan from one of their employees named Sherri Lane. The loan originated from Defendants' failure to pay Sherri Lane wages owed to her. Defendants entered into an agreement with Sherri Lane to turn the wages owed to her into a loan. Defendants did not pay Sherri Lane. FAC ¶ 31.

1   Defendants entered into an agreement with a company named MH Architects to
2   do work at NICO Corp. MH Architects performed work totaling $5,000. Defendants
3   did not pay for the work performed. FAC ¶ 32.

4   Defendants obtained two loans from Bank of the West. On or about February
5   11, 2009, Defendants executed a promissory note with Bank of the West for $150,000
6   loan. The promissory note was secured by a personal guaranty signed by Defendants
7   and NICO Corps. property. Defendants agreed to make monthly payments on this loan.
8   On or about August 28, 2014, Defendants executed a change in terms of the February
9   agreement decreasing their credit limit to $75,000. Bank of the West assigned its
10  interest in the sums due to a company known as Jonathan Neil & Associates, Inc.
11  Defendants were sued in the San Francisco Superior Court because Defendants failed
12  and refused to pay back $73,000 owed. FAC ¶ 33(a).

13  On or about August 28, 2014, Defendants executed another promissory note
14  with Bank of the West in the amount of $61,506.64. The promissory note was also
15  secured by a personal guaranty signed by Defendants and NICO Corps. property.
16  Defendants again agreed to make monthly payments on the loan. Bank of the West
17  assigned its interest in the sums due to a company known as Jonathan Neil &
18  Associates, Inc. Defendants were sued in the San Francisco Superior Court because
19  Defendants failed and refused to pay back the $18,000 owed. FAC ¶ 33(b).

20  Defendants also obtained loans and did not repay those loans from other
21  institutions. The loans include but are not limited to a $50,000 from Wells Fargo Bank,
22  a $75,000 loan from an entity known as Little Leo Ltd, and a $170,000 loan from an
23  entity known as First Tennessee. FAC ¶ 34.

24  In total, Defendants obtained approximately $1,130,000 from at least eleven
25  creditors, including Focus 15, and did not pay back a single penny. FAC ¶ 35.

26  On October 2021, Defendants filed a motion on the pleadings on multiple causes
27  of action brought by Focus 15. On January 28, 2022, the Court granted Defendants'
28  motion in part. On February 24, 2022, Focus 15 filed a motion seeking leave to file a

first amended cross-complaint. The motion was scheduled to be heard on March 31, 2022. However, the Court granted Focus 15's motion without a hearing. RJN Exh. 2.

## IV.   ARGUMENT

### A.  Focus 15 has Stated Causes of Action for Civil RICO and Civil RICO Conspiracy

Under 18 U.S.C. § 1962(c) it is unlawful "for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering activity or collection of unlawful debt." The elements of a civil RICO claim are "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F. 3d 353, 361 (9th Cir. 2005).

Here, Focus 15 has stated causes of actions for its civil RICO claims because Focus 15 has plead sufficient factual allegations to make a *prima-facie* showing for its claims.

**(1) Conduct**

Focus 15 has plead sufficient factual allegations to establish Defendants' unlawful conduct because Focus 15 plead with particularity Defendants' scheme to defraud Focus 15 and at least ten other creditors. The factual allegations plead in Focus 15's first amended complaint establish that Defendants defrauded Focus 15 and at least ten other creditors by obtaining approximately $1,130,000 in loans that Defendants did not intend to pay back. FAC ¶¶ 18-36.

Defendants seek to downplay their scheme as a simple failure to pay back their debts. However, the factual allegations plead by Focus 15 give rise to a reasonable inference that Defendants failure to pay back those debts was intended because Defendants' actions show they made a conscious decision not to repay. The transactions described in Focus 15's first amended complaint establish that Defendants

either (1) refused to pay, (2) waited for the statute of limitations to run to avoid any liability for their failure to pay, or (3) claimed no repayment was necessary because the agreements were allegedly not in writing. Examples abound:

**Example 1 – Focus 15 Loans**

Defendants obtained four loans totaling $225,000. Under the terms of the promissory notes evidencing the loans, Defendants promised that they would begin making principal payments on the loans on certain dates. FAC ¶¶ 18-24; *See also* RJN Exh. 1. Defendants never made any payments towards the principal on any of the notes. *Id*. Defendants knew that they had an obligation to repay the loans because the terms of their repayment were expressly stated in each of those notes. *Id*. When Focus 15 attempted to negotiate a repayment of loans, Defendants *refused to pay back the loans*. FAC ¶ 43(a).

**Example 2 – Hugo Ortega Production Agreement:**

Defendants entered into a $48,000 production agreement with Hugo Ortega and did not pay Hugo Ortega for the clothing he produced for NICO Corp. FAC ¶ 27. Indeed, one of Hugo Ortega's employees called Defendants seeking payment but Defendants *refused to pay* Hugo Ortega. *Id*.

**Example 3 – Bank of the West Loans**

Defendants obtained two loans from Bank of the West which were assigned to Jonathan Neil & Associates, Inc. Defendants spent approximately $91,000 from the loans which Defendants did not pay back. Defendants were sued by Jonathan Neil & Associates, Inc. in San Francisco Superior Court because Defendants *refused to pay back the $91,000 owed*. FAC ¶ 33.

**Example 4 –Wendy Dewalt Loan**

Defendants obtained a $20,000 from Wendy Dewalt which was to be paid back by March 2013. Defendants did not pay back the loan. Instead, Defendants *intentionally waited for the statute of limitations to run to shield themselves from any*

*liability to Wendy Dewalt*. FAC ¶ 29. This was not an isolated incident because Defendants attempted to do the same to Focus 15.[2]

### Example 5 – Evan Williams Loan

Defendants obtained a $600,000 loan from Evan Williams by promising a 3% equity interest in the company after a second round of loans. Defendants did not pay back the loan. When Defendants were asked by an employee about repaying the loan, Defendants told the employee *not to worry about paying the loan back because the loan was allegedly not in writing*. FAC ¶ 28.

### Example 6 – David Pierce Loan

Defendants obtained a $32,000 loan from David Pierce. Defendants did not pay back the loan. Instead, Defendants *sought to determine their exposure to liability if there was no written agreement evidencing the loan*. FAC ¶ 30.

In short, the factual allegations establish that Defendants failure to repay every loan is no mere coincidence because Defendants actions show they knew none of the loans had been repaid and they made conscious decisions to avoid repayment. Therefore, this requirement has been met.

### (2) Enterprise

Focus 15 has also properly plead factual allegations of the enterprise. In its complaint Focus 15 alleged:

> "Defendants formed an enterprise, NICO Corp., an association-in-fact enterprise with the meaning of 18 U.S.C. § 1961(4) (the "Enterprise")."

FAC ¶ 38.

---

[2] As this Court is aware when this lawsuit was first filed Defendants attempted to avoid service of process which caused Focus 15 to seek Court intervention for orders allowing Focus 15 to serve Defendants via the secretary of state (NICO) and by publication (Hannula and Haller). Defendants also avoided service of process for over three years in the state court lawsuit filed by Focus 15 which was briefly discussed in Defendants opposition to Focus 15's motion for leave to file first amended complaint and in Focus 15's reply to the opposition.

18 U.S.C. § 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity". There is no dispute that Defendant NICO is a corporation. As such this pleading requirement has been met.

**(3) Pattern of Racketeering Activity**

18 U.S.C § 1961(1) defines "racketeering activity" to mean, among other things, "any act which is indicatable under any of the following provisions of title 18, United States Code:… sections 1341(mail fraud) and 1343(wire fraud)."

Here, Focus 15 has plead sufficient factual allegations to establish a pattern of racketeering activity because Focus 15 has plead with particularity the predicate acts and the pattern that trigger the RICO claims.

**(a) The Predicate Acts Plead by Focus 15 Satisfy Rule 9(b)**

Predicate acts involving fraud for civil RICO claims must be pleaded with particularity as required by Rule 9(b). *Edwards v. Marin Park, Inc*., 356 F. 3d 1058, 1065–66 (9th Cir. 2004). The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F. 3d 990, 997 (9th Cir. 2014). The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," even if the mailing itself "contain[s] no false information." *Id*. at 715. However, a showing of the defendants' state of mind only requires general allegations, and specific intent can be established "by examining the scheme itself." *Odom v. Microsoft Corp.*, 486 F. 3d 541, 554 (9th Cir. 2007); *United States v. Green*, 745 F. 2d 1205, 1207 (9th Cir. 1984). Therefore, "[t]he only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself[,]" and such allegations "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Odom*, 486 F. 3d at 554;

8
**FOCUS 15, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F. 2d 1393, 1401 (9th Cir. 1986).

Here, Focus 15's RICO claims are based on the predicate acts of mail and wire fraud. FAC ¶ 41. Fraud contains the following elements "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Doe v. Uber Technologies, Inc.*, 184 F. Supp. 3d 774, 789 (N.D. Cal. 2016).

Focus 15 has met the pleading requirements of Rule 9(b) because Focus 15 has plead with particularity the underlying fraud that gave rise to the RICO claims. First, Focus 15 has adequately plead the misrepresentation because Focus 15 has plead the specific misrepresentation made by Defendants i.e. that the loans would be paid back. FAC ¶ 42.

Second, Focus 15 has adequately plead knowledge of falsity because Focus 15 has plead the specific factual allegations establishing Defendants knew that their representations were false. FAC ¶ 43. A reasonable inference can be made that Defendants did not intend to pay back the loans because Defendants have a history of obtaining loans that they did not pay back. FAC ¶¶ 26-36. The suggestion that the allegations that Defendants did not intend to pay back the loans cannot be true is meritless because the allegations establish that Defendants' failure to pay was intended. FAC ¶¶ 18-36. The factual allegations establish that in the transactions described in Focus 15's first amended complaint, Defendants: (1) borrowed money/obtained a service, (2) failed to repay, (3) knew the loan/service had not been paid, and (4) either: (a) refused to pay, (b) waited for the statute of limitations to run to avoid any liability, or (c) claimed payment was not necessary because the loan was not in writing. FAC ¶¶ 18-36, 43.

In addition, to suggest that twelve interest payments of $666.66 totaling $8,000 shows Defendants were paying back the loans is also meritless because Defendants did

not make a single payment towards the principal on any of the loans. FAC ¶ 24.[3] Defendants seek to downplay the distinction between an interest payment and a payment towards the principal on the loan by suggesting that the distinction is one "without a difference". To the contrary, this distinction is important because **an interest payment is a fee paid** to the lender that the borrower agrees to pay for borrowing the money i.e this is not a payment towards the outstanding balance on the loan. As Defendants concede they stopped making payments a month before their first payment on the principal became due. See Defendants Third Party Complaint ("DTPC") at ¶ 20; *See also* FAC ¶¶ 18-24. In short, Defendants cannot claim they were repaying the loans when they were merely paying fees for borrowing the money.

Third, Focus 15 has adequately plead intent to induce reliance because Defendants made false promises that Defendants knew they would not keep i.e. that Defendants would repay the loans. FAC ¶ 45.

Fourth, Focus 15 has adequately plead justifiable reliance because the loans were made in good faith and there was no reason to suspect Defendants would not pay back the loans. FAC ¶ 44.

Finally, Focus 15 has adequately plead resulting damage for Defendants fraudulent scheme because Focus 15 suffered a loss of $225,000 from the loans made to Defendants which Defendants did not pay back. FAC ¶ 52.

**(b) Contractual Disputes May Support a RICO Claim**

Here, Defendants claim that Focus 15 cannot alleged a RICO claim based on a contractual dispute is meritless because "it is well settled that facts surrounding a contractual dispute may support a RICO claim." *All World Professional Travel Services, Inc. v. American Airlines, Inc*. 282 F. Supp. 2d 1161, 1174 (C.D. Cal. 2003).

---

[3] As discussed in Denise Cassano's Motion to Dismiss Defendants Third-Party Complaint at pg. 4 lines 23-27, Denise Cassano made twelve interest payments of 666.66 according to the terms of the first promissory note totaling $8,000 (or 8% of the $100,000). FAC ¶ 18; See also RJN Exh. 1.

Indeed, in *Sedima, S.P.R. L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) the United States Supreme Court reversed the dismissal of a RICO complaint arising out of a contractual dispute.

Other courts have done the same. In *Arabian American Oil Co. v. Scarfone*, 939 F. 2d 1472 (11th Cir. 1991) the 11th Circuit Court held that a Plaintiff was not prohibited from bringing a federal RICO action merely because a breach of contract claim existed for the same conduct. In *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir. 1984) the 4th Circuit Court reversed the dismissal of a RICO claim and rejected a district court's determination that the complaint stated "at best-garden variety commercial breach of contract". In reversing the dismissal, the Circuit Court reasoned:

> "This is not a case in which a party, recognizing the need of another for something that the party can provide, exacts a price in excess of what would otherwise be considered fair and reasonable. *This is a case in which ...defendants 'knew at the time of entering into the contract that they ... had no intention [of performance]'...* and in reliance on defendants' false representations and their contract, plaintiff exposed itself to economic peril on which defendants seized for their own economic benefit."

*Id*. at 1063 (emphasis added).

Like cases cited above this is not a "garden variety breach of contract" case because the factual allegations establish that Defendants engaged in a scheme to defraud unsuspecting creditors, including Focus 15, by enticing them to make loans through false representations that the loans would be paid back when Defendants knew at the time they entered into those agreements that they did not intend to pay them back. FAC ¶¶ 18-36; 30-52. In reliance on the false representations by Defendants (i.e. that the loans would be paid back), Focus 15 exposed itself to economic peril in which Defendants seized for their own economic benefit (the $225,000). *Id*.

**(c) Focus 15 has Adequately Plead a Pattern of Racketeering Activity**

The pattern element requires that there "*be at least two acts* of racketeering activity within ten years of one another." 18 U.S.C. § 1962(c). "A substantial period of time" for closed-ended continuity is more than "a few weeks or months." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989). While duration is an important factor in determining whether closed-ended continuity is satisfied, the Ninth Circuit has declined to adopt bright-line rules based on the temporal length of a scheme. *Allwaste, Inc. v. Hecht*, 65 F. 3d 1523, 1528 (9th Cir. 1995).

Here, Focus 15 has adequately plead a pattern of racketeering activity because the allegations establish that Defendants engaged in a scheme to defraud at least eleven (11) different creditors, including Focus 15, from 2012 through present. FAC ¶¶ 18-36, 39. In determining closed-ended continuity, "courts in this Circuit often consider: (1) the number and variety of predicate acts; (2) the presence of separate schemes; (3) the number of victims; and (4) the occurrence of distinct injuries." *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1012 (C.D. Cal. 2020). Here, these factors weigh in favor of Focus 15 for the following reasons.

First, Focus 15 has sufficiently established that Defendants committed at least two predicate acts because Defendants defrauded at least eleven (11) different creditors including Focus 15. FAC ¶¶ 18-36. Further, the predicate acts were committed within ten years of one another because Defendants committed these acts from 2012 through the present. FAC ¶ 40.

Second, Focus 15 has sufficiently established the presence of separate schemes because the factual allegations show at least eleven (11) different instances in which Defendants defrauded creditors. *Id*.

Third, Focus 15 has sufficiently established that there is more than one victim because Defendants defrauded at least eleven (11) different creditors including Focus 15. *Id*.

Finally, each victim suffered injuries as a result because they suffered financial losses as a result of Defendants failure to pay back the loans and/or pay for the services rendered. For example, Focus 15 suffered $225,000 in losses because Defendants failed to pay back the loans.  FAC ¶ 52.

### (4) Injury to Plaintiff's "Business or Property"

Focus 15 has also properly plead factual allegations of injury to its "business or property." In its complaint Focus 15 alleged:

> "Defendants' pattern of racketeering activity damaged Focus 15 in the amount of $225,000 of improperly obtained loan proceeds that Defendants have not paid back and in an amount to be proven at trial for legal costs associated with Defendants' fraudulent scheme to accept funds with no intention of paying them back."

FAC ¶ 52.

The injury to Focus 15's business is the loss of $225,000 which Defendants have failed to pay back. As such, this requirement has been met.

Therefore, Focus 15 has established a *prima-facie* showing for civil RICO and civil RICO Conspiracy, and Defendants Motion to Dismiss these causes of action should be denied.

### B.  Focus 15 has Stated a Cause of Action for Violations of California Business & Professions Code § 17200

California's Business and Professions Code prohibits "any unlawful, unfair or fraudulent business act or practice." *See* Cal. Bus & Prof. Code § 17200 "The requirement of pleading fraud with particularity [under Federal Rules of Civil Procedure 9(b)] applies to each of the three prongs, where the claims are based on a unified course of fraudulent conduct." *Rosado v. eBay Inc*., 53 F. Supp. 3d 1256 (N.D. Cal. 2014).

Here, as discussed above, Focus 15 has met the pleading requirements under Rule 9 (b) because Focus 15 has plead with particularity the underlying fraud that gave

rise to the RICO claims. FAC ¶¶ 18-36; 39-52. Defendants defrauded at least eleven (11) different creditors, including Focus 15, by obtaining at approximately $1,130,000 through false promises that the creditors would be paid back. *Id*. As is made clear by the allegations in Focus 15's complaint, Defendants never intended to pay back those loans because Defendants either (1) refused to pay back the creditor, (2) waited for the statute of limitations to run to avoid any liability for failing to pay back the creditor, or (3) claimed repayment was not necessary because the agreement was not in writing. *Id*.

Defendants seek to downplay scheme as mere failure to pay outstanding debts, however, that is not so because the allegations establish that Defendants failure to pay was intentional. *Id*.

Therefore, Focus 15 has stated a cause of action for violations of the California Business & Professions Code § 17200.

## V. CONCLUSION

Defendants defrauded at least eleven (11) creditors, including Focus 15, of approximately $1,130,000. Defendants seek to downplay their scheme as a simple failure to pay back their debts. However, the factual allegations plead in Focus 15's first amended complaint establish that Defendants failure to repay each of those debts is no mere coincidence because their failure to repay was intended. Therefore, for the reasons discussed above, Focus 15 respectfully requests that this Court deny Defendants' Motion to Dismiss Focus 15's First, Second, and Sixth causes of action.

Dated:  April 29, 2022                    **FORD & DIULIO PC**

By: /s/*Brendan M. Ford*
Brendan M. Ford

Attorney for Plaintiff FOCUS 15, LLC
and Third-Party Defendant MAURIZIO
DONADI