MARC R. STIMPERT (SBN 283964)
ANDREW C. MCCLELLAND (SBN 361060)
LUNSKI & STIMPERT LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
TEL: (415) 426-3586
FAX: (415) 426-3424

Attorney for Defendants/Counter-Complainants/Third-Party Complainants
NICO CORPORATION, IAN MATTHEW HANNULA and JOSEPH PHILIP HALLER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC;<br><br>     Plaintiff,<br>v.<br><br>NICO CORPORATION, et al.;<br><br>     Defendants.<br><br>And Related Cross-Actions | Case No. 3:21-CV-01493<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST, SECOND, AND SIXTH CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br><u>HEARING</u><br>DATE: June 3, 2022<br>TIME: 1:30 p.m.<br>DEPT: 5<br>JUDGE: Hon. Edward M. Chen |

**I)    INTRODUCTION**

Defendants Nico Corporation ("Nico"), Ian Matthew Hannula ("Hannula"), and Joseph Philip Haller ("Haller") hereby submit the following Reply in support of their Motion to Dismiss the First, Second, and Sixth causes of action in Plaintiff's Complaint.

As explained fully in the underlying motion, Plaintiff's First and Second Causes of Action for civil RICO and civil RICO conspiracy should be dismissed because the First Amended Complaint does not plausibly plead facts which rise to the level of a "predicate act" underlying a RICO violation, nor does the First Amended Complaint properly alleged a "pattern" of racketeering activity. Using similar analysis, the Sixth Cause of Action should be dismissed because Plaintiff

does not plead conduct which rises to the level of a violation of California's Unfair Competition Law.

Plaintiff in this matter has gone to great lengths (and likely engaged in questionable conduct) to obtain private financial information of NICO, which it distorts and mischaracterizes in the First Amended Complaint in an attempt to create the impression that Defendants engaged in fraudulent activity against it. Despite these efforts, however, the First Amended Complaint alleges, at most, that Defendants breached several promissory notes executed with Plaintiff at a time when the business was failing and unable to fully pay back its debts. Allowing Plaintiff to allege RICO violations and unfair business practices based on garden variety breach of contract allegations would violate established legal precedent and run counter to public policy. Therefore, the Court should dismiss these causes of actions pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II) **LEGAL ANALYSIS**

### A) THE FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

#### 1) Defendants' Conduct Does Not Constitute Predicates Act Violating the RICO Statute

As explained fully in the underlying motion, Plaintiff's first and second causes of action fail because the First Amended Complaint does not allege conduct that could be plausibly interpreted as a pattern of racketeering activity within the meaning of the RICO statute. Plaintiff's First Amended Complaint alleges simple contractual breaches by Defendants, and further attempts to bolster its case by alleging (using improperly and fraudulently obtained corporate financial information) that Defendants may have also breached other agreements at approximately the same time when the business (Nico) was failing.

Courts have been very clear that the RICO statute is not meant to be applied to garden variety contractual breaches, as noted in multiple cases cited in the underlying motion. The RICO statute was enacted by Congress with a goal of "eradicat[ing] organized, long-term criminal activity". *Royce Int'l Broad. Corp. v. Field* (N.D. Cal. 2000) 2000 WL 236434, at *4 (citing *Midwest Grinding Co. v. Spitz* (7th Cir.1999) 976 F.2d 1016). Simple contractual disputes are "not

1  the types of activities that RICO was intended to eliminate. Any other interpretation would
2  indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises'
3  . . . to constitute 'racketeering activity.'" *Id*. As noted in the underlying motion, a contrary
4  interpretation of the breadth of the RICO statute would not only run against well-established legal
5  precedent, but it would be disastrous public policy to the extent that it would subject any failing
6  business to potential federal racketeering liability, including awards of treble damages, which would
7  arguably not be extinguished even in bankruptcy.  Simply stated, the case presently before the Court
8  is not remotely what Congress envisioned when it was drafting and passing the RICO statute, and
9  the statute has never been interpreted that way by the courts, for good reason.

11             2)   <u>The Causes of Action do not Meet the Plausibility Standard Required by 12(b)(6)</u>
12         Plaintiff attempts to argue that the First Amended Complaint sufficiently alleges predicate
13  acts by Defendants because the allegations of contractual breaches "give rise to a reasonable
14  inference that Defendants failure to pay back those debts". See Opposition Brief at 5:25-26.  This
15  argument lacks merit and should be disregarded by the Court.  On this point, it is useful to consider
16  the two-pronged approach to determining plausibility of allegations under the *Twombly* and *Iqbal*
17  decisions.  First, the court must identify which statements in the complaint are factual allegations
18  and which are legal conclusions or mere conclusory allegations without factual support. Courts are
19  <u>not bound to accept as true</u> allegations that are legal conclusions or conclusory allegations, even if
20  cast in the form of factual allegations. See *Ashcroft v. Iqbal* (2009) 556 US 662, 681; see
21  also *Chaparro v. Carnival Corp.* (11th Cir. 2012) 693 F3d 1333, 1337 ("if allegations are indeed
22  more conclusory than factual, then the court does not have to assume their truth").
23         Secondly, the Court, drawing "on its judicial experience and common sense," must decide in
24  the specific context of the case whether the factual allegations, if assumed true, allege
25  a *plausible* claim. *Ashcroft v. Iqbal,* supra, 556 US at 679.  In undertaking this analysis, courts must
26  assume all inferences in favor of Plaintiff's allegations, provided that those inferences are plausible.
27  An inference of liability is not plausible when the allegations of the complaint give rise to an
28  "obvious alternative explanation" of the conduct alleged. *Ashcroft v. Iqbal,* supra, 556 US at 682.

In the present litigation, the Court must begin its analysis of the RICO claims by putting aside Plaintiff's conclusory legal allegations regarding Defendants' state of mind, and consider the alleged facts and what they might show. Plaintiff's Opposition Brief spends two full pages discussing Defendants' purported contractual breaches in an attempt to explain to the Court how they could possibly lead to an inference of coordinated fraud and racketeering activity. Opposition Brief at 6:4-8:11. As noted in the underlying motion, these allegations are nothing more than smears and deliberate distortions of Nico's private financial information which Plaintiff improperly obtained from its business associate (and Nico's former CFO) Denise Cassano.

That being said, Defendants agree that, for the purposes of this motion, the Court should consider Plaintiff's allegations as well as the plausible inferences that might flow from those allegations. In particular, Plaintiff fails, in its entire two page discussion, to point to any allegation of conduct that might demonstrate that Defendants went into any of these alleged agreements with the intent of defrauding the other side and never following through on contractual obligations. For all of the effort Plaintiff puts into its argument on this point, the actions alleged in the First Amended Complaint most plausibly describe the actions of a failing business and its owners who are unable, after the fact, the meet the obligations of agreements they previously made with lenders, vendors, etc. As noted in the underlying motion, this is entirely consistent with Plaintiff's allegations as to the contracts at issue in this litigation, i.e. Defendants allegedly made payments on the loans for a period of time.

In addition to the fact that Defendants' alleged actions are inconsistent with the claimed fraudulent intent, Plaintiff fundamentally fails to explain the purported "end game" for Defendants' alleged fraud. Plaintiff apparently believes that Defendants engaged in an elaborate scheme to defraud various lenders and vendors by contracting with them and then never paying them. However, Plaintiff fails to explain in its pleading or in its opposition brief how any benefit accrued, or even was meant to accrue, to Defendants through this conduct. As explained in the underlying motion, Nico is a failed business due in large part to disastrous loans and other financial decisions undertaken on the advice of Denise Cassano. Defendants certainly did not reap any great financial windfall through the actions described in the First Amended Complaint, and more to the point, the

1  First Amended Complaint does not explain, or even attempt to explain, what the contemplated
2  positive end result could have been for Defendants.
3       As explained fully above, the RICO violations alleged in the First Amended Complaint
4  require the Court to engage in inferences which are not supported by any of the factual allegations,
5  and beyond that, are simply not logical or plausible given the conduct alleged.  Indeed, the facts
6  alleged in the pleading give rise to an "obvious alternative explanation" (see supra, 556 US at 682)
7  for the alleged conduct: Nico was a failing business that was unable to meet its contractual
8  obligations.  Therefore, the Court should dismiss the First and Second causes of action because
9  these causes of action fail to meet the plausibility standard established by *Twombly* and *Iqbal*.

       3)   The Causes of Action do not Meet the Heightened Pleading Standard Required by 9(b)

12  As explained above, Plaintiff's First and Second Causes of Action should be dismissed
13  because they do not meet the plausibility standard required by 12(b)(6) under the *Twombly* and
14  *Iqbal* decisions.  In this case, however, the allegations of Plaintiff's First and Second Causes of
15  Action are actually subject to an even more restrictive pleading standard pursuant to Rule 9(b),
16  under which each factual allegation underpinning the fraud cause of actions must be pled with a
17  higher degree of notice than that required for other claims; claim must identify who, what, where,
18  when, and how.  *Odom v. Microsoft Corp.* (9th Cir. 2007) 486 F.3d 541, 554; *Schreiber Distrib. Co. v.
19  Serv-Well Furniture Co.* (9th Cir. 1986) 806 F.2d 1393, 1401.  Mere conclusory allegations that
20  conduct was "fraudulent", without more specificity, are not sufficient; facts must be alleged which,
21  if proven, would constitute fraud or lead clearly to conclusion that fraud has been committed.
22  *Goodall v. Columbia Ventures, Inc.* (S.D.N.Y.1974) 374 F.Supp. 1324.
23       In this regard, Plaintiff's First Amended Complaint runs into the same issues discussed fully
24  in the section above: Plaintiff repeatedly alleges, in conclusory fashion, that Defendants acted with
25  the intent to defraud Plaintiff, but the actual facts alleged do not in any way support this conclusion,
26  and certainly not with the specificity required by Rule 9(b).  Plaintiff again attempts to argue that
27  the Court should "infer" fraudulent intent from the facts alleged in the First Amended Complaint,
28  specifically regarding Defendants' purported failure to honor contractual agreements.  As discussed

fully above, the facts alleged in the First Amended Complaint in fact do not lead to a plausible inference of fraudulent intent by Defendants; instead, even if taken as true (which Defendants do not concede), the alleged facts lead to a reasonable and obvious alternative explanation that Defendants were trying to run a business which was in economic distress, and they ended up not being able to honor all of the contractual agreements they had made.  The fact that Plaintiff pleads these facts, and then "tacks on" allegations of fraudulent state of mind at the time the contracts were made, does not satisfy even the plausibility standard of Rule 12(b)(6), and it certainly does not satisfy the heightened pleading standard for fraud allegations under Rule 9(b).

      Plaintiff attempts to argue (as it did in its opposition to Defendants' prior motion to dismiss) that Defendants' payment of the loans for a period of time should not be taken as evidence of intent to honor the agreements, apparently because the payments were only "interest payments".  This argument did not make any sense the first time Plaintiff advanced it, nor does it make sense now.  It is simply not credible for Plaintiff to argue that the "facts" it alleges create a plausible inference that Defendants never intended to honor their contracts with Plaintiff, when Plaintiff also alleges facts showing exactly the opposite.  Defendants' payments on the loans, even without more, effectively nullify Plaintiff's arguments that there was an intent to defraud on the part of Defendants.

      Plaintiff attempts to oppose the motion to dismiss by citing to cases in which courts held that RICO claims were allowable in cases where the facts also supported a cause of action for breach of contract.  The cases cited by Plaintiff are clearly distinguishable from the case presently before the Court:

- In *All World Professional Travel Services, Inc., v. American Airlines, Inc.* (C.D. Cal. 2003) 282 F.Supp.2d 1161, the court allowed a RICO action to proceed against the defendant based on defendant's forcing the payment of penalties for processing refunds on behalf of passengers who were unable to use their airline tickets in days immediately following September 11, 2001.  In making this decision, the court noted that the plaintiff "alleges in the Complaint that '[defendant] has no enforceable contract or other legal basis that entitles it to collect the ... penalties'", and therefore, in the absence of any contractual provision, fraud and extortion had been properly

alleged. *Id*. at 1175.  This case is distinguishable from the case presently before the court because 1) the actions alleged in this case cannot fairly be described as a "garden variety" contractual dispute; and 2) the claimed RICO activity in the case (the collection of penalties) was in fact not related to a contractual provision (or breach) at all.

- In *Sedima, S.P.R.L. v. Imrex Co., Inc.* (1985) 473 U.S. 47, the Court ruled that a RICO claim could proceed against a defendant based upon allegations in the complaint that plaintiff and defendant had a joint venture to provide parts to a Belgian firm, and further alleged that defendant was, over a period of time, presenting fraudulent inflated bills to plaintiff in order to pad its own profits. Therefore, this case is distinguishable in that the plaintiff in fact did allege specific fraudulent acts by the defendant separate and apart from the contractual relationship. Furthermore, it bears noting that the actual question of whether or not the complaint adequately alleged that defendants committed "predicate acts" was not before the Court in *Sedima*. The only issues that the Court decided in that case where 1) whether or not plaintiff was required to allege either an injury separate from the financial loss stemming from the alleged acts of mail and wire fraud, or prior convictions of the defendants in order to proceed with a RICO claim (which was required by the Second Circuit at that time). *Id*. at 500.  Therefore, the *Sedima* holding is not on point here.

- In *Arabian American Oil Co. v. Scarfone* (11th Cir.1991) 939 F.2d 1472, much like in the above *Sedima* case, the court held that a RICO claim could properly be made against a defendant who entered into a contractual agreement with a plaintiff, and then later engaged in a fraudulent scheme of "overcharged [plaintiff] by billing for time not spent, billing foreign workers at higher nationality rates, and billing for nonexistent employees." Again, the *Arabian American Oil* case is distinguishable from the present litigation to the extent that the plaintiff in fact did specifically allege

REPLY IN SUPPORT OF MOTION TO DISMISS

7

actions comprising a fraudulent scheme by the defendant separate and apart from the contractual relationship.

- In *Battlefield Builders, Inc. v. Swango* (4th Cir.1984) 743 F.2d 1060, the court allowed a RICO claim to proceed based on allegations that defendants had entered into a contract to convey back certain real property to plaintiff construction company, then later refused to actually convey the property unless plaintiff (who was already in contract to sell the same property to a third party) agreed to pay additional money to defendants, and then later engaged in a "pattern of harassment against plaintiff "for the sole purpose of extorting additional monies", including but not limited to contacting the third party repeatedly and asserting that it was on the premises unlawfully, initiating baseless eviction proceedings agains the third party, and then approaching plaintiff to demand even more money to stop harassing the third party.  Again, the *Battlefield Builders* case cannot fairly be described as a "garden variety" contract dispute, and it is distinguishable to the extent that plaintiff alleged specific actions comprising a pattern of extortion separate and apart from the contractual relationship.

Plaintiff's cited cases, taken in the aggregate, demonstrate that RICO violations may sometimes arise out of factual circumstances that would also support a cause of action for breach of contract.  It is also fair to say that all of the cited cases involve plaintiffs making <u>specific allegations</u> (which would meet the heightened pleading standards of Rule 9(b)) of actual actions taken by the defendants that comprise predicate acts under the RICO statute.  Plaintiff has not, and cannot, cite to any case where a court allowed a RICO claim to proceed based on allegations that a defendant entered into a contract with plaintiff, and then later failed to perform.  The facts alleged in the First Amended Complaint describe a common breach of contract dispute of the type which courts have repeatedly ruled do not support RICO allegations.  Plaintiff's attempts to "tack on" baseless allegations of fraudulent intent are not sufficient to support RICO claims, particularly under the

heightened pleading standards of Rule 9(b). Therefore, because Plaintiff has not properly alleged any predicate acts, the First and Second Causes of Action should be dismissed.

        4) <u>Defendants Did Not Engage in a Pattern of Conduct Sufficient to Trigger the RICO Statute</u>

In addition, as explained in the underlying motion, the first and second causes of action should still be dismissed because Plaintiff fails to plead a "pattern" of such activity as required by the RICO statute. The pattern element requires that there "be at least two acts of racketeering activity within ten years of one another." 18 U.S.C. § 1962(c). The predicate acts must: (1) be related, and (2) amount to or pose a threat of continued criminal activity. *Turner v. Cook* (9th Cir. 2004) 362 F.3d 1219, 1229. "A substantial period of time" for continuity is more than "a few weeks or months." *H.J. Inc. v. Northwestern Bell Telephone Co.* (1989) 492 U.S. 229, 241.

As noted in the underlying motion, the Court has already held that the allegations as to Defendants' actions with regarding to Plaintiff's promissory notes do not establish a "pattern" of racketeering activity. Plaintiff's First Amended Complaint attempts to establish a "pattern" by citing to other purported contractual breaches, but those allegations are too vague as to time for the Court to determine whether or not they occurred over a sufficient period of time to establish a pattern. Plaintiff does not address this fundamental pleading flaw in its Opposition Brief. Therefore, because it is impossible to determine when these purported contractual breaches occurred, the Court should dismiss the First and Second Causes of Action for failing to plead a pattern of racketeering activity.

    B) <u>THE SIXTH CAUSE OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)</u>

As explained fully in the underlying motion, the Court should also dismiss Plaintiff's sixth cause of action for violation of California Business and Professions Code Section 17200 because Plaintiff fails to plead the required elements of the cause of action. California courts have repeatedly held that conduct which merely creates non-statutory, common law civil liability is generally not sufficient to satisfy the unlawful prong of the UCL. See *Klein v. Earth*

REPLY IN SUPPORT OF MOTION TO DISMISS

9

*Elements* (1997) 59 Cal.App.4th 965.  Additionally, a breach of contract involving only private harm is not actionable. *Rosenbluth Int'l v. Superior Court* (2002) 101 Cal. App. 4th 1073.

As discussed above and in the underlying motion, Plaintiff's First Amended Complaint in the present litigation involves a simple breach of contract dispute based on purported nonpayment on certain promissory notes.  The actual facts alleged in the First Amended Complaint do not plausibly plead a fraud claim, nor do the lead to a plausible inference of fraudulent intent on the part of the Defendants.  Even when read in the light most favorable to Plaintiff and engaging in all reasonable inferences in its favor, the First Amended Complaint does not plausibly allege fraudulent conduct, or conduct that violates any state or federal statute which would apply to the UCL.  This case involves garden variety non-statutory, common law, civil breach of contract claims to which California's UCL does not apply pursuant to the cases cited above.  Therefore, the Court should dismiss this cause of action.

### III) CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the First, Second, and Sixth causes of action, and that the Court do so without leave to amend.

Dated: May 6, 2022                            LUNSKI & STIMPERT LLP

By:/s/ Andrew C. McClelland
    ANDREW C. MCCLELLAND
    Attorneys for Defendants NICO CORPORATION, IAN MATTHEW HANNULA, and JOSEPH PHILIP HALLER

**PROOF OF SERVICE**
*Focus 15, LLC v. NICO Corporation, et al.*
*Case No. 21-cv-01493-EMC*

I declare as follows:

I am employed by the law office of Lunski & Stimpert LLP, located at 201 Spear Street, Suite 1100, San Francisco, CA 94105, and am over the age of 18 years and am not a party to the within titled cause. On the date last appearing below, I served the following document(s):

1. NOTICE OF MOTION AND DEFENDANTS' MOTION TO DISMISS THE FIRST, SECOND, AND SIXTH CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT
2. REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST, SECOND, AND SIXTH CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT

on the parties, through their attorneys of record by placing true and correct copies thereof:

☐ **By First Class Mail.** I served the documents by enclosing them in a sealed envelope and:

1. **Depositing** the sealed envelope with the United States Postal Service, with the postage fully prepaid.
2. **Placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **By Facsimile transmission.** Based on an agreement of the parties to accept service by facsimile transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐ **By Overnight Delivery**. I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **By Messenger Service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and proving them to a professional messenger service for service. (A declaration by the messenger must accompany this Proof of Service.)

☒ **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

PROOF OF SERVICE                                              Case No. 21-cv-01493-EMC

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed this date, May 6, 2022, at San Francisco, California.

/s/ Andrew C. McClelland
Andrew C. McClelland

## SERVICE LIST

| | |
|---|---|
| Brendan M. Ford, Esq.<br>Eduardo Dominguez, Esq.<br>Ford & Diulio, P.C.<br>650 Town Center Dr., Suite 760<br>Costa Mesa, CA 92626<br><br>Tel:      714.450.6830<br>E-mail:  bford@forddiulio.com,<br>edominguez@forddiulio.com<br><br>***Attorneys for Plaintiff Focus 15, LLC*** | |