UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS 15, LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NICO CORPORATION, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-01493-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 68 |

### I.　　INTRODUCTION

Plaintiff Focus 15, LLC and Defendant NICO Corp. entered into four promissory notes between 2016 and 2017 for $225,000 in total. Defendants Ian Hannula and Joseph Haller have ownership of NICO Corp. under a partnership agreement. When NICO Corp. failed to repay its loans, Focus 15 sued NICO Corp., Hannula, and Haller ("Defendants"), asserting Civil RICO, breach of contract, money had and received, unjust enrichment, and unfair competition claims. For reasons stated below, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' RICO and unfair competition claims.

### II.　　FACTUAL & PROCEDURAL BACKGROUND

On January 28, 2022, the Court granted in part and denied in part Defendants' motion for judgment on the pleadings and Third-Party Defendants' motion to dismiss. Docket No. 61 (Order). The Court dismissed the RICO and unfair competition claims because Focus 15's allegations amounted to merely breaches of contracts rather than fraud, and did not meet RICO's continuity requirement. *Id.* at 12. In the First Amended Complaint ("FAC"), Focus 15 now lists ten other creditors that Defendants allegedly borrowed money from but never paid back. *See*

*generally* Docket No. 67 (FAC). The FAC alleges as follows:

NICO Corp. entered into four promissory notes in which Focus 15 loaned NICO Corp. a total of $225,000 between February 23, 2016 and February 15, 2017. *Id.* at 3–4. Monthly payments were to begin in 2016, with maturity dates between 2017 and 2020. *Id.* Hannula and Haller signed guarantees for each of the promissory notes. *Id.* NICO Corp. made interest-only payments between 2016 and 2017 totaling $8,000 but failed to pay back any of the principal amounts. *Id.* at 3. According to Focus 15, Defendants never intended to pay these loans back. *Id.* at 5. Focus 15, on information and belief, also identifies ten other creditors Defendants failed to pay back as listed below:

1. Payment to Hugo Ortega under a production agreement for $48,000. *Id.*
2. A $600,000 loan from Evan Williams on September 15, 2016, allegedly having told their employee not to worry about paying back the loan because it was not in writing. *Id.* Defendants later approached Williams again for a second loan. *Id.*
3. A loan for $20,000 on November 19, 2012, to be paid back by March 15, 2013. *Id.*
4. A $32,000 loan from David Pierce allegedly not intended to be repaid because "Defendants sought to determine their exposure to liability if there was no written agreement." *Id.* at 5–6.
5. A $22,000 loan from Sherri Lane (Defendants' own employee), originating from Defendants' failure to pay wages owed to her. *Id.* at 6.
6. A $5,000 fee for the work MH Architects did for Defendants. *Id*
7. A $150,000 promissory note with the Bank of the West on February 11, 2009, secured by a personal guaranty signed by Defendants. *Id.* Defendants changed the terms of the agreement to decrease their credit limit to $75,000 on or about August 28, 2014. *Id.* On information and belief, Bank of the West assigned its interest to Jonathan Neil & Associates, Inc., and Defendants were sued in the California Superior Court because for failure to pay back $73,000 owed. *Id.*
8. A $61,506.64 promissory note with the Bank of the West on August 28, 2014, secured by a personal guaranty signed by Defendants. *Id.* Defendants were sued in

1    the California Superior Court because Defendants failed to pay back the $18,000
2    owed. *Id.* at 6–7.
3       9.    A $50,000 loan from Wells Fargo Bank. *Id.* at 7.
4       10.   A $75,000 loan from Little Leo Ltd. *Id.*
5       11.   A $170,000 loan from First Tennessee. *Id.*

As listed above, Focus 15 alleges that Defendants borrowed approximately $1,300,000 from at least eleven creditors and failed to pay back a single penny. *Id.*

### III.     LEGAL STANDARD

A.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When considering plausibility, courts must also consider an "obvious alternative explanation" for defendant's behavior. *Eclectic Properties*

*E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (citing *Iqbal*, 556 U.S. at 682).

## IV. DISCUSSION

A. Judicial Notice

Defendants seek judicial notice of documents filed either in this Court or in the parties' prior action in San Francisco County Superior Court, entitled *Focus 15, LLC v. NICO Corporation, et al.* – CGC-17-562218. *See* Docket No. 68-1. "[Courts] may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts" without taking judicial notice of disputed facts contained in such public records. *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citations omitted); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Focus 15 does not dispute the introduction of these documents. As such, the Court **GRANTS** Defendants' request for judicial notice of all requested documents, but not for the truth of their contents.

B. Motion to Dismiss

1. RICO (First and Second Causes of Action)

Focus 15 asserts RICO claims under 18 U.S.C. § 1962(c) and (d). Under § 1962(c), it is unlawful for a "person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Under § 1962(d), it is unlawful for a person to conspire to violate, e.g., subsection (c) above." *Id.* To recover under Section 1962(c), a plaintiff must prove: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

a. Racketeering Activity (Predicate Acts)

Focus 15 bases its RICO claims on mail and wire fraud under 18 U.S.C. §§ 1341, 1343. FAC at 6; 18 U.S.C. § 1961. Sections 1341 and 1343 prohibit "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. §§ 1341, 1343. "The mail and wire fraud statutes are

4

identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Properties East, LLC*, 751 F.3d at 997. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element," even if the mailing itself "contain[s] no false information." *Id.* at 715; *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *6 (S.D. Cal. Apr. 23, 2020) (citing *Schmuck v. United States*, 489 U.S. 705, 712 (1989) (internal quotation marks omitted)).

Further, predicate acts involving fraud for civil RICO claims must be pleaded with particularity as required by Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). However, a showing of the defendants' state of mind only requires general allegations, and specific intent can be established "by examining the scheme itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007); *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984). Therefore, "[t]he only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself[,]" and such allegations "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Odom*, 486 F.3d at 554; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (internal quotation marks and citations omitted).

Previously, this Court found that Focus 15 failed to establish a RICO activity because it failed to plausibly allege fraud as follows:

> Focus 15's allegations amount to a mere series of breaches of contracts and fail to allege fraud with particularity. *See Royce Int'l Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) ("[An alleged scheme to induce the plaintiff into entering a contract is] not the type[] of activit[y] that RICO was intended to eliminate. Any other interpretation would indefinitely expand the reach of the RICO statute by permitting all allegations of 'broken promises' . . . to constitute 'racketeering activity.'"); *River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1464–65 (9th Cir. 1992) ("a pattern of breach of contract activity . . . even when embellished by the familiar 'racketeering,' is not sufficient to establish a violation of RICO."). . . . This single assertion that Defendants loaned money with no intention of paying them back is conclusory and insufficient to alleged fraud with particularity, especially since the March 2016 and March 2017 loans

were [partially] paid back.

Order at 11–12.

Parties dispute whether adding eleven other instances of breach of contract and ten alleged victims elevates this case into a RICO case from a breach of contract case. Focus 15 cites four cases to argue that it has not merely alleged a "garden variety commercial breach of contract" case. *Id.* at 10–11 (quoting *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir. 1984)). However, these cases are inapposite as they merely discuss that as a general manner whether RICO cases may involve contract disputes, and each alleges specific facts beyond a simple breach of contract. *Sedima, S.P.R. L. v. Imrex Co., Inc.*, 473 U.S. 479, 484 (1985) (the plaintiff alleged that the defendant was presenting inflated bills rather than simply not paying them); *Arabian American Oil Co. v. Scarfone*, 939 F. 2d 1472, 1474 (11th Cir. 1991) (noting evidence of fraud such as forgery of documents and fraudulent billing); *All World Professional Travel Services, Inc. v. American Airlines, Inc.*, 282 F. Supp. 2d 1161, 1174–75 (C.D. Cal. 2003) (noting that RICO's predicate activities include extortion and finding that the plaintiffs have sufficiently alleged extortion not based on any contractual basis); *Swango*, 743 F.2d at 1062–63 (finding that the plaintiff sufficiently alleged a "pattern of harassment" amounting to extortion). In short, these cases involve non *ex contractu* conduct.

Focus 15 does not plead specific facts regarding the alleged fraud; nor do they allege any facts that raise a plausible claim that constitutes more than a breach of contract. Focus 15 merely contends that Defendants enticed it to make loans through false representations that the loans would be paid back and Defendants did not intend to pay them back. Opp'n at 11. Yet, Focus 15 does not specify how it was "enticed" to make loans nor plausibly allege intent to defraud; it alleges no facts other than failure to pay the loans back, indicating any such aforethought. As noted in the previous order, any inference of such intent is inconsistent with the fact that Defendants did make some payments and, more importantly, provided *personal* guarantees to back the loans. According to Focus 15, a reasonable inference of fraudulent intent can be made because "Defendants have a history of obtaining loans that they did not pay back." *Id.* at 9. But the asserted pattern of failure to pay obligations alleged in the SAC do not supply a reasonable

6

basis for any such inference. First, the alleged instances of non-repayments are disparate. Some involve simply an alleged failure to pay vendors or employees. They do not depict loans taken out by NICO, which were then not repaid. Moreover, as Focus 15 alleges, NICO has been in business since at least 2009. *See* SAC at 6. If it did not pay any of its obligations to vendors, employees, and lenders, surely it could not have maintained a business for such a duration. It thus appears that the catalog of alleged non-payments listed in the SAC may not be representative of any real pattern. For all we know, Focus 15 merely cherry-picked several instances of non-payment. Moreover, there are no facts alleged about each listed transaction. It is impossible to know whether, for instance, there was a legitimate dispute with a vendor. Nor is there any allegation of any adjudication that these were amounts that, in fact, were owed and not paid.

Defendants offer a more convincing alternate argument—that it was a failing business that could not pay back multiple creditors. Docket No. 71 (Reply) at 2. "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation." *Eclectic Properties*, 751 F.3d at 996–97. According to the Ninth Circuit, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." Therefore, "[Focus 15's] fraud theory requires them to show more than a business deal gone bad for economic and non-fraudulent reasons." *Id.* at 997.

This is especially true when the debt appears to have been incurred in the normal course of business. In *Eclectic Properties*, the Ninth Circuit found that the plaintiff's fraud theory was not plausible in light of the innocent explanation that the defendants' failure to make rental payments and abandonment of leases resulted from a national recession. *Id.* at 998. The Ninth Circuit explained:

> When companies engage in sale-leaseback transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, a *significant level of factual specificity* is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.

7

1   *Id.* at 997–98 (emphasis added).  Focus 15 has failed to offer a "significant level of factual

2   specificity" of fraud.

3         Indeed, like the loans at issue here, NICO appears to have made significant partial

4   payments for at least some of the loans alleged in the SAC.  For example, Focus 15 alleges that

5   Defendants had promissory notes worth $150,000 and $61,506.64 with the Bank of the West but

6   were later sued for failure to pay back $73,000 and $18,000, respectively.  FAC at 6–7.  These

7   allegations suggest that Defendants paid back significant portions of the loan amounts prior to that

8   lawsuit.  Defendants also made twelve interest payments of $666.66, totaling $8,000.  *Id.* at 3.

9         In sum, the new allegations do little to raise a reasonable and plausible inference of a

10  fraudulent scheme to involve Focus 15 and others to lend money to NICO with no intent to repay.

11  *Eclectic Properties*, 751 F.3d at 997 (finding that in order to render plaintiffs' allegations

12  plausible, the plaintiff must allege more facts, such as those tending to exclude the possibility that

13  the alternative explanation is true).  Accordingly, Focus 15's alleged RICO claims, predicated on a

14  pattern of wire fraud, fail.

15        b.    <u>California's Business and Professions Code § 17200 (Sixth Cause of

16            Action)</u>

17        California's Business and Professions Code § 17200 prohibits "any unlawful, unfair or

18  fraudulent business act or practice."  "The requirement of pleading fraud with particularity [under

19  Federal Rules of Civil Procedure 9(b)] applies to each of the three prongs, where the claims are

20  based on a unified course of fraudulent conduct."  *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256 (N.D.

21  Cal. 2014) (citations omitted); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

22  The parties' arguments for this cause of action are identical to the RICO claims of fraud.  As

23  discussed above, Focus 15 fails to plausibly allege fraud for its RICO claims.  Therefore, it also

24  fails to allege fraud under § 17200.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

25  1134, 1151, 63 P.3d 937 (2003) (reiterating that "the UCL is not an all-purpose substitute for a tort

26  or contract action") (internal quotation marks and citations omitted).

27        Accordingly, the Court **GRANTS** Defendants' motion to dismiss the unfair competition

28  claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss.

This order disposes of Docket No. 68.

**IT IS SO ORDERED**.

Dated: June 30, 2022

_____
EDWARD M. CHEN
United States District Judge